## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFF WESKE, JO ANNA FRAGER, and DARRYL MYHRE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG ELECTRONICS CO., LTD.,<br><br>Defendants. | Civil Action No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>Jury Trial Demanded |

Plaintiffs Jeff Weske, Jo Anna Frager and Darryl Myhre, individually and on behalf of all others similarly situated, make the following allegations on personal knowledge and on information and belief.

### I.  Identification of Parties (Local Rule 10.1)

1.    The names and addresses of the named parties to this action are as follows: (i) Plaintiff Jeff Weske, 915 12th Street, Cloquet, Minnesota, 55720; (ii) Plaintiff Jo Anna Frager, 17646 Whitney Road, Montville, Ohio, 44064; (iii) Plaintiff Darryl Myhre, 6201 122nd Avenue NE, Bellevue, Washington, 98006; (iv) Defendant Samsung Electronics America, Inc. ("SEA"), 105 Challenger Road, Ridgefield Park, New Jersey, 07660; (v) Defendant Samsung Electronics Co., Ltd. ("SEC"), 250 Taepyeongo 2-Ga, Jung-gu, Seoul 100-742, Republic of Korea.

## II.    Introduction

2.    Plaintiffs bring this action for actual damages, equitable relief (including restitution, injunctive relief, and disgorgement of profits), and all other relief available on behalf of themselves and all similarly-situated individuals and entities who own or have owned refrigerators sold by the Defendants (collectively, "Samsung") containing a defect that causes the refrigerators' coils to freeze over, resulting in the failure of the refrigerator to cool, which has caused consumers to suffer damages for lost groceries and repairs.  The defective refrigerators do not perform their essential function of keeping food cool, rendering the refrigerators useless or of significantly diminished value long before the end of their reasonably expected useful life.  The defect also presents risks to the safety of consumers due to food spoilage.  Upon information and belief, the defect exists in all three varieties of refrigerators Samsung manufactures, including model numbers RF266AASH, RS263BBWP, RB1955SH, RS2533SW, RS267LASH, RS267TDRS, RS2630WW (the "Refrigerators"). All of the claims asserted herein arise out of Samsung's design, manufacture, warranting, advertising and selling of the Refrigerators.

3.    On information and belief, Samsung began designing, manufacturing, warranting, marketing, advertising and selling the Refrigerators to thousands of consumers throughout the United States, commencing in or around 2005.

4.    The Refrigerators are designed and manufactured with a uniform and inherent design defect that causes the coils to ice over and results in the failure of

the Refrigerator to cool.  As a result of the defect, the Refrigerators do not stay cool, allowing food to spoil.

5.     Samsung knew, or was reckless in not knowing, at or before the time it sold the first unit, that the Refrigerators contained the defect and that the Refrigerators would fail prematurely due to the defect. Samsung had sole and exclusive possession of this knowledge.

6.     Notwithstanding this knowledge, Samsung made uniform and material misrepresentations and uniformly concealed material information in its marketing, advertising, and sale of the Refrigerators, which Samsung knew to be defective, both at the time of sale and on an ongoing basis.

7.     At all times, in every communication, Samsung made uniform written misrepresentations to and/or uniformly concealed from Plaintiffs and everyone in the chain of distribution the defects in the Refrigerators, and failed to remove the Refrigerators from the marketplace or take adequate remedial action.  Rather, Samsung sold and serviced the Refrigerators even though it knew, or was reckless in not knowing, that the Refrigerators were defectively designed, would fail prematurely, and would ultimately result in Plaintiffs' inability to use their refrigerators for their intended purpose during the time Plaintiffs reasonably expected they would have use of the Refrigerators.

8.     The Refrigerators have in fact failed prematurely, whether within or outside of applicable warranty periods.

9.    As a consequence of Samsung's false and misleading statements and active and ongoing concealment of the defect, Plaintiffs and the Class purchased and currently own defective refrigerators and have incurred damages.

10.    Plaintiffs assert claims on behalf of themselves and the Class under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2, *et seq.* ("CFA").  Plaintiffs also assert claims on behalf of themselves and the Class for breach of implied warranties, negligent misrepresentation, and unjust enrichment under New Jersey law.

11.    Plaintiffs seek actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class.

### III.    Parties

12.    Plaintiff Jeff Weske resides in Cloquet, Minnesota.  He purchased a new Samsung Side-by-Side Refrigerator (model number RS263BBWP) containing the defect in December 2006 from a Best Buy store in Duluth, Minnesota for approximately $1300.  Weske set the refrigerator's temperature at 38 degrees, as recommended by Samsung.  In the spring of 2009, Weske's refrigerator stopped cooling.  As a temporary fix, Weske unplugged his refrigerator to defrost the coils.  Over the summer and fall of 2009, Weske's refrigerator continued to stop cooling, and each time that happened he continued to unplug the appliance to defrost the coils.  Weske paid a local service company to repair the refrigerator, but the repairs had no effect and the refrigerator stopped cooling again 45 days after the repair.

4

Samsung customer service told Weske that his appliance was out of warranty and nothing could be done.  Weske has suffered approximately $1,100 in damages for lost groceries as a result of the defect alleged herein and Samsung's misrepresentations and/or concealment regarding the defect. In addition, Weske has lost the value of his refrigerator, which does not perform its essential and only function.

13.    Plaintiff Jo Anna Frager resides in Montville, Ohio.  She purchased a new Samsung French Door Refrigerator (model number RF266AASH) containing the defect on February 14, 2008, at a Lowe's store in Mentor, Ohio.  In June 2010, the refrigerator stopped cooling and Frager contacted a local repairperson who advised her to defrost the refrigerator.   Roughly one month later, the refrigerator stopped cooling again.   Frager noticed that the ice buildup was touching her refrigerator's fan, which had been making an unusual noise.   Frager again attempted to defrost the refrigerator by unplugging it for several days.  As a result of Samsung's refrigerator design defect, and failure to inform consumers of this problem or to recall its refrigerators, Frager suffered approximately $360 in lost groceries.  In addition, Frager is without a fully functional refrigerator and has lost the value of her refrigerator, which does not perform its essential and only function.

14.    Plaintiff Darryl Myhre resides in Bellevue, Washington.  He purchased a new Samsung Side-by-Side Refrigerator (model number RS2630WW) containing the defect in November 2007 at a Best Buy store in Tukwila, Washington.  In early 2010, the refrigerator stopped cooling.   Myhre contacted a repairperson and

explained that he had a Samsung refrigerator that had stopped cooling. The repairperson examined the refrigerator but could not identify the problem. Myhre then defrosted the refrigerator and ordered a new defrost heater for the refrigerator, based on research he conducted on the Internet, and replaced the part. The refrigerator began cooling again, until it ceased cooling again in early September 2010. As a result of Samsung's refrigerator design defect, and failure to inform consumers of this problem or to recall its refrigerators, Myhre suffered approximately $250 in lost groceries, $130 for the repair call, and $130 for the defrost heater. In addition, Myhre has lost the value of his refrigerator, which does not perform its essential and only function. Myhre replaced his refrigerator on or about September 18, 2010, at a cost of approximately $1100.

15.    SEA is incorporated in New York, with its principal place of business in Ridgefield Park, New Jersey. SEA also conducts business from offices in Mount Arlington, New Jersey and Piscataway, New Jersey. SEA manufactures and sells consumer appliances, including the defective Refrigerators that are the subject of this action.

16.    Defendant SEC is a corporation formed under the laws of the Republic of Korea, with its principal offices in Seoul, South Korea. SEC conducts substantial business operations from the SEA offices in Ridgefield Park, New Jersey, Mount Arlington, New Jersey and Piscataway, New Jersey.

6

### IV.                    Jurisdiction and Venue

17.    This court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from the Defendants; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.  This Court also has personal jurisdiction over the parties because Defendants each conduct substantial business in this State, have had systematic and continuous contacts with this State, and have agents and representatives that can be found in this State.

18.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred and emanated out of this District, and Defendants' conduct has injured Class members residing in this District.  Defendant SEA transacts business and maintains its headquarters and principal place of business within this District.  Accordingly, this Court has jurisdiction over this action and venue is proper in this Judicial District.

19.    The Federal Courthouse located in Newark, New Jersey is the proper vicinage for this matter because SEA has its principal place of business in Ridgefield Park, New Jersey.

### V.    Factual Background

20.    On information and belief, Samsung has been engaged in the business of designing, manufacturing, warranting, marketing, advertising, and selling Samsung-brand refrigerators and other appliances in the United States since 2005.

7

21.    Samsung is one of the world's leading manufacturers of refrigerators and other appliances.  Samsung has designed, manufactured, warranted, marketed, advertised and sold several product lines of refrigerators. Samsung sells high-end refrigerators through major retail stores such as Best Buy and Home Depot to consumers throughout the United States.  Samsung refrigerators are available in three varieties: (1) french door, (2) side-by-side, and (3) bottom freezer, with retail prices ranging from $900 to $3,000.

22.    Samsung uniformly markets its refrigerators as highly-rated, top-of-the-line appliances. For example, Samsung describes its refrigerators as featuring a unique patented "TWIN Cooling System"tm that offers "advanced cooling technology" that "delivers uncompromised freshness in both the freezer and refrigerator compartments by circulating cold air with individual fans," and offers "professional-grade" cooling.  *See* [Online Marketing Brochure], Exhibit A, attached.

## The Defect

23.    The Refrigerators fail to perform as advertised, because their coils ice over and cause the Refrigerators to stop cooling, leading to spoiled food. The Refrigerators are designed and manufactured with heated coils that are intended to prevent excess frost from developing in the back of the machine.  Instead of preventing frost, however, the coils allow frost and ice to build up in the Refrigerators until the ice clogs and/or disables the machine's fans, making it impossible for the fans to work to keep the machine cool.

24.     The defect renders the Refrigerators unusable because they are unable to keep food cool.  A refrigerator that unexpectedly rises to room temperature poses significant health risks to consumers, as groceries that are not kept cool can cause food-borne illnesses.  The defect also poses dangerous risks for those customers who rely on medications that must be kept cool in their refrigerators.

25.     Even after the Refrigerators' internal temperature rises to room temperature, according to consumer complaints, any exterior temperature display nonetheless indicates that the machine is at a standard cool temperature, which further enhances the risk of illness for those customers who are misled to believe that the food or medications within the Refrigerators has been kept cool and is safe to eat or ingest.

26.     Samsung failed to adequately design, manufacture, and/or test the Refrigerators to ensure they were free from defects at the time of sale.

27.     At all relevant times, Plaintiffs have used their Samsung refrigerators in a foreseeable manner and in the manner in which they were intended to be used.

28.     The defect, which manifests during the expected useful life of the Refrigerators, both within and outside applicable warranty periods, is substantially likely to prevent the Refrigerators from performing their essential function, and it makes it impossible for Plaintiffs to use the Refrigerators as intended during their expected useful lives.

29.     Had the defect been known to consumers, the Refrigerators would not have been merchantable.

30.    The defect rendered the Refrigerators unfit for the ordinary purpose for which refrigerators are sold at the time they were sold to Plaintiffs and members of the Class.

31.    The defect has necessitated and will continue to necessitate replacement of and/or costly repairs to the Refrigerators.

32.    The Refrigerators have a uniform design defect that causes the appliances to stop cooling and become unusable.  Defrosting the Refrigerators provides a temporary fix that lasts only until ice builds up again weeks or months later.

**Plaintiffs' and Class Members' Reasonable Expectations**

33.    In purchasing the Refrigerators, Plaintiffs legitimately expected the refrigerators to operate in accordance with to their intended purpose – to keep food cool.

34.    Consumers reasonably expect that refrigerators like the Refrigerators at issue here will function properly for at least 10 years.  The Association of Home Appliance Manufacturers has found that the life expectancy of refrigerators is 14 years for side-by-side models, and 17 years for bottom freezer models.

35.    Plaintiffs and members of the Class reasonably expected the Refrigerators to effectively refrigerate perishable food items during the Refrigerators' expected useful lives.

36.    Plaintiffs and members of the Class reasonably expected Samsung to disclose the existence of a defect that was known to Samsung at the time of sale and that would prevent the Refrigerators from refrigerating food.

37.    Because of the defect, Plaintiffs' refrigerators failed during their expected useful lives, within or outside applicable warranty periods.

38.    As a result of the defect alleged herein, Plaintiffs have experienced failure of their refrigerators, did not get what they paid for, and have incurred actual damages.

**Samsung was Aware of the Defect**

39.    Before it sold the Refrigerators, Samsung knew, or was reckless in not knowing, that the Refrigerators contained a defect that would cause the coils of the refrigerators to ice over and thereby render the refrigerators unable to perform their cooling function.

40.    Samsung did not implement a plan to address the defect and instead manufactured and sold subsequent models that contained the same defect.

41.    Samsung customers have indicated that beginning as early as 2006 they notified and complained to Samsung that their Refrigerator's interiors were warm and the food inside had become spoiled.

42.    On information and belief, the defect was a known issue to Samsung at or about the time it began distributing refrigerators with the components containing the defect.

43.     Consumers, including Plaintiffs, have complained repeatedly to Samsung about this defect, but Samsung refuses to address and rectify the problem or reimburse customers for lost groceries or repairs, citing expired warranty periods.

44.     Samsung was or should have been aware at the time it sold the Refrigerators that they were defective.  Indeed, A BBC television program called "Watchdog" reported on the very same defect in 2008 as to a Samsung refrigerator sold in the United Kingdom, model RS21.   In the report consumers were interviewed about the defect, their efforts to have the problem corrected and Samsung's refusal to offer any assistance when their refrigerators were out of warranty. The program featured an interview with a refrigeration expert who examined a Samsung RS21 model refrigerator and determined that the problem was a result of a design defect that caused the coils to freeze over with ice, which caused the refrigerator's fan to stop running.  Once the fan stopped running, the refrigerator stopped cooling.  This BBC Watchdog program is available on YouTube at: http://www.youtube.com/watch?v=V467FBmK6QQ.

45.     As a result of the Watchdog episode, Samsung apologized to U.K. consumers and offered them an extended 5-year warranty as to all claims related to the defect.  *Id.*  Nonetheless, Samsung has refused to provide relief to United States consumers for the same defect on the ground that warranty periods have elapsed. In so doing, Samsung continues to profit from its misrepresentations and omissions regarding the Refrigerators.  The following is a small sample of recent consumer

complaints regarding the defect and Samsung's refusal to address it, as detailed on

www.consumeraffaris.com:

a) **Richard of MACON, GA March 16, 2010**.    Bought samsung
RS253BASB/XAA on 11/18/2006 at Best Buy. After 2 years 3 months
the water stopped working and then the refrigerator side got around
50 degrees even though temp said 34..Authorized repairman came and
charged us 79.00 service call to tell us the defrost coil was faulty and
only way for him to fix was to replace the whole coil with defrosted
that was built in it. I did this at cost of about 60.00 and the unit ran for
about 5 months Ok until now in March 2010 it is all happening
again....We had to throw food out a couple of times and I believe we got
food poisoning eating food that we did not know was bad when we were
relying on the temp. that the refrigerator said that it was.

b) **Annette of Pacifica, CA January 3, 2010**.  I am thorougly disgusted
with my 3-year old Samsung Refrigerator Model number RB215LASH.
I have had it serviced 5 times in the past 9 months due to the coils
FREEZING UP! Each time the repairman comes to my home, it costs
me 185.00 to have him DEFROST my 3 year old FROST-FREE
refrigerator that cost me over 1000.00!!!! I have almost doubled the
cost of my refrigerator with the 5 service calls at 185.00 each!!!
Perhaps Samsung should consider refunding me for this lemon of a
refrigerator, since I can no longer afford to pay to have it
DEFROSTED. I will NEVER purchase another SAMSUNG product
again, and will advise everyone I know to stay avoid this brand.

c) **Ashley of Wanette, OK December 8, 2009**.  On 07/01/2007 we
purchased a Samsung RS2530BSH/XAA refrigerator from Best Buy.
06/25/2008 I noticed a loud whining noise coming from the back freezer
side. On 07/10/2007 I contacted Samsung who sent out a service
technician. The service technician took off the inside back [sic] panel of
the freezer and used my hair dryer to melt the block of ice that had
frozen over the fan. After that the fridge worked fine....for 5 weeks.
After spending 100 on a service call for someone to "blow-dry" my
freezer fan I decided to investigate the matter myself. Sure enough the
freezer fan was frozen over. So about every 4-6 weeks I have to get out
the hair dryer and melt the ice away from the fan.  On 11/04/2009 the
refrigerator and freezer both stopped cooling.

d) **Kathleen of Los Angels, CA August 22, 2009**.  I purchased the
Samsung refrigerator on 12/20/2004 from Best Buy. I have had no

13

complaints until the refrigerator side recently stopped cooling. When I went online to Samsung repair I submitted a repair order and got the name of a local repair service … He seemed to know exactly what was wrong and told me that the back coil which was designed with the heating system within the coils had to be replaced at a cost of 500 and it was not covered under the 5 year parts warranty. When I asked him if he had encountered this problem before he said that all the Samsung refrigerators had the same problem sooner or later because of this bad coil design. When I asked him if the refrigerator was worth the 500 to fix he asked why I would buy a Samsung in the first place. He said that Samsungs were basically very nice looking pieces of junk

e)  **Pat of Whitesboro, NY July 2, 2010**. Samsung French door refrig. 16 months old and refrigerator only cools to 50 degrees. … Samsung basically told me too bad… I think it is the heating coils freezing up, and it sounds like it can be a reoccuring problem, so buying another unit may be our only recourse. Lost all food in fridge, 1500 for the fridge, 35 for ice, constant water leaks on floor

f)  **Fatima of Farmington, CT June 22, 2010.** I bought a Samsung side by side refrigerator Model # RS267LABP in Ocotober of 2006. In the 2nd year (10/08) after warranty was gone the cooling in the refrigerator side stopped working. The Techcame out, removed panel and defrosted all the ice that had built up. It worked until January of 2009, then same problem plus ice maker and water dispenser stopped working. Same procedure was done.

g)  **Cynthia of Visalia, CA May 11, 2010.** We bought our side by side refrigerator 3 years ago the cooling unit in the back freezes up and then the whole refrigerator quits working. the repairman told us that the cooling unit will continue to be a problem. if they are aware of it, why can't it be fixed. I should have know the first time i called (2 mos after buying it) when they asked which brand it was and was told "i'm sorry."

h)  **Amanda of Mount Wolf, PA March 26, 2010.** I purchased my Samsung fridge (RB215LABP) four and a half years ago. I loved it until the fridge started leaking water and not staying cold… it was 40-50 degrees in the frige but the LCD screen on the front said 34 degrees. I called Samsung and they told me I was out of warranty and to call a local service tech. Well after calling 8 different techs, they all said they would not touch Samsung because they were junk and ridicuously expensive to repair. … I do not understand how a company makes a

14

product that they do not stand behind. I am really disappointed with the service I received. Samsung didn't even care that I had this issue. DO NOT BUY SAMSUNG!!!!

i)  **Kenneth of Memphis, TN March 12, 2010**.  I purchased our Samsung RS267LASH 26.1 Cu. Ft. Side by Side June 26, 2006 at Lowe's. … I spent the entire day yesterday defrosting the coils behind the panel in the refrigerator. It took me 5 hours with a blow dryer to resolve the issue. I received no help from Samsung other than a referral to a local service agency….

j)  **Wallace of Lake Worth, FL January 29, 2010**.  Called and advised that my new samsung refrigerator indicated proper temperatures, -4 in freezer and 38 in frigerator, but the real temperature was like 50 and the food was ruined.

k)  **Charles of Ozark, MO September 27, 2009**. I purchased my Samsung side by side refrigerator model number RS2534WWW in September of 2004. ...the frig the coils freeze up so I have to take a hair dryer and defrost them myself and put the thing back together. … Now, I am left with a 1200 dollar piece of junk. I am thawing it again as I am writing this complaint. I feel sorry for anyone who purchased this product.

46.    As this small sampling of just the most recent complaints makes clear, Samsung is aware of the defect in the Refrigerators and has done nothing to address it.

47.    For those refrigerators that have failed within the applicable warranty period, Samsung has provided repairs that do not address the underlying defect and do nothing to prevent subsequent failure.  Instead, Samsung has merely replaced one coil with another coil.  Samsung was aware, had reason to know, or was reckless in not knowing that its warranty repairs would not cure or rectify the defect but would instead merely delay the impact of the defect which caused reoccuring failures.  By providing such ineffective warranty repairs, Samsung

15

merely postponed the failure of the refrigerators until after the expiration of applicable warranties.

48.   When Refrigerators have failed outside the warranty period, Samsung has recommended that Plaintiffs incur out-of-pocket expenses to repair or replace components or the Refrigerators as a whole.

49.   The repairs that Samsung recommends do not address the underlying defect and do nothing to prevent subsequent failure in the Refrigerators.

50.   Samsung knew that the repairs it recommended would not cure the defect.  Nonetheless, it advised customers to incur the related expenses.

## Samsung's Omissions and Misrepresentations

51.   Samsung failed to adequately design, manufacture, and/or test the Refrigerators to ensure that they were free from the defect, and/or knew, had reason to know, or was reckless in not knowing of the defect when it uniformly warranted, advertised, marketed and sold the Refrigerators to Plaintiffs and the Class.

52.   Samsung did not disclose to its customers the fact that the defect existed at the time of sale and that the defect would render the Refrigerators unable to perform their essential function well before the end of their expected useful lives. Nor did Samsung disclose that warranty or the recommended post-warranty repairs would not cure or rectify the defect and would only, at best, briefly delay the impact of the defect and thereby postpone failure in the Refrigerators.

53.   Instead, in its uniform marketing and advertising, Samsung falsely represented that the Refrigerators were free from defects and that they would

perform their essential function; namely, to keep food cool. Samsung uniformly markets its refrigerators as featuring a unique patented "TWIN Cooling System"tm that offers "advanced cooling technology" that "delivers uncompromised freshness in both the freezer and refrigerator compartments by circulating cold air with individual fans," and offers "professional-grade" cooling.

54. Samsung knew that consumers were unaware of the latent defect and that they reasonably expected the Refrigerators to effectively refrigerate perishable food items. Samsung also knew that customers expected Samsung to disclose a defect that would prevent the Refrigerators from performing their function long before the end of their expected useful lives, and that such disclosure would impact consumers' decision whether to purchase the Refrigerators. Samsung knew and intended for consumers to rely on its material omissions with regard to the defect when purchasing the Refrigerators.

55. As a result of Samsung's uniform omissions and misrepresentations in its marketing and advertising, Plaintiffs believed that the Refrigerators would operate without defects to keep food cool, and Plaintiffs purchased Samsung refrigerators in reliance on that belief.

56. Samsung's representations that the Refrigerators were free of defects and would adequately refrigerate perishable food items were not true. Samsung knew or was reckless in not knowing when it sold the Refrigerators that the defect would manifest long before the end of the Refrigerators' expected useful lives, rendering the Refrigerators unable to keep food cool.

17

57.    Samsung had the capacity to, and did, deceive consumers into believing that they were purchasing refrigerators that were free from defects and could be used safely and practically to store and cool food.

58.    Samsung actively concealed from and/or failed to disclose to Plaintiffs, the Class, and everyone, the true defective nature of the Refrigerators, and failed to remove the Refrigerators from the marketplace or take adequate remedial action. Samsung represented that the Refrigerators were free of defects even though it knew or was reckless in not knowing when it sold the Refrigerators that they contained a defect that would render the Refrigerators unable to keep food cool. Furthermore, Samsung sold and serviced the Refrigerators even though it knew, or was reckless in not knowing, that the Refrigerators were defective and that Plaintiffs and Class members would be unable to use the Refrigerators for their intended purpose for the duration of their expected useful life.

59.    To this day, Samsung continues to misrepresent and/or conceal material information from Plaintiffs, the Class and the public about the defect in the Refrigerators.

### Fraudulent Concealment Allegations

60.    Plaintiffs' claims arise in part out of Samsung's fraudulent concealment of the defect.    To the extent that Plaintiffs' claims arise from Samsung's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims.  They allege that at all relevant times, including specifically at the time they purchased their

18

refrigerators, Samsung knew, had reason to know, or was reckless in not knowing, of the defect; Samsung was under a duty to disclose the defect based upon its exclusive knowledge of it, its representations about its products, and its concealment of the defect; and Samsung never disclosed the defect to the Plaintiffs or anyone at any time or place or in any manner.

61.    Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Samsung:

a)    Who:  Samsung concealed the defect from Plaintiffs, the Class, and everyone in the chain of distribution.  Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those individuals at Samsung responsible for such decisions.

b)    What: Samsung knew, or had reason to know, at the time it sold the Refrigerators, or was reckless in not knowing, the fact that an existing defect in the Refrigerators would cause the coils to freeze up and thereby render the Refrigerators unable to perform their essential purpose of keeping food cool long before the end of their expected useful lives, within or outside the applicable warranty periods.

c)    When:  Beginning no later than 2006, Samsung concealed this material information at all times with respect to the Refrigerators, including before the time of sale, on an ongoing basis, and continuing to this day.

19

d)  Where:   Samsung concealed this material information in every communication it had with Plaintiffs, the Class, and everyone in the chain of distribution.   Plaintiffs are aware of no document, communication, or other place or thing, in which Samsung disclosed this material information to anyone outside of Samsung.   Such information appears in no sales documents, no displays, no advertisements, no warranties, no owner's manual, nor on Samsung's website.

e)  How:  Samsung concealed this material information by not disclosing it to Plaintiffs, the Class, or anyone in the chain of distribution at any time or place or in any manner, even though it knew this information and knew that it would be important to a reasonable consumer, and even though its omissions with regard to the defect and consequent premature failures of the Refrigerators were contrary to its representations about the Refrigerators.

f)  Why:  Samsung concealed this material information for the purpose of inducing Plaintiffs and Class members to purchase the defective Refrigerators at full price rather than purchasing competitors' refrigerators or paying Samsung less for the Refrigerators, given their limited utility.   Had Samsung disclosed the truth, Plaintiffs (and reasonable consumers) would not have bought the Refrigerators, or would have paid less for them.

20

## VI.    New Jersey's Substantive Law Applies To the Proposed Nationwide Class

62.    New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

63.    The application of New Jersey's laws to each of the claims alleged by the Class is also appropriate under New Jersey's choice of law rules.  In particular, New Jersey law applies to the CFA claim under the most significant relationship test, and New Jersey law applies to the remaining claims under either the most significant relationship test or the government interest test.

64.    New Jersey has significant contacts and/or a significant aggregation of contacts to the claims asserted by Plaintiffs and all Class members.

65.    New Jersey has a materially greater interest than any other State in enforcing its laws with respect to the conduct of corporations located in and doing business principally in New Jersey.  The application of New Jersey law to the conduct of corporations based in New Jersey furthers strong fundamental public policies of the State of New Jersey.

66.    Specifically, New Jersey's interest in this case and in regulating conduct under its laws arise from, among other things, the following:

a) SEA's headquarters and principal place of business are located in New Jersey;

b) SEA owns property and conducts substantial business in New Jersey;

c) upon information and belief, SEA pays corporate income taxes to the State of New Jersey, giving New Jersey an interest (among other interests) in potential judgments affecting its revenue;

d) SEA receives in New Jersey the revenues generated by the sale of the Refrigerators;

e) New Jersey has an interest in deterring unlawful conduct on the part of its resident corporations;

f) the justified expectations of the parties would be best served by applying New Jersey law, since SEA is based in New Jersey;

g) some members of the proposed Class reside and/or purchased Refrigerators in New Jersey;

h) New Jersey is the State from which SEA's misconduct emanated. Upon information and belief, SEA became aware of the defect in, and its nondisclosure scheme was orchestrated from, the location of its present headquarters in New Jersey. SEA's marketing efforts relating to the Refrigerators were created and orchestrated from its headquarters in New Jersey. SEA also disseminated from its New Jersey headquarters the marketing materials relating to the Refrigerators; and

22

i)      Upon information and belief, SEA's warranty and customer affairs departments are located at its New Jersey headquarters, and SEA's correspondence with consumers regarding the defect alleged herein and its decision to refuse to correct the defect in Refrigerators occurred from its New Jersey headquarters.

## VII.   Tolling

67.    **Discovery Rule:**  The causes of action alleged herein accrued upon discovery of the defective nature of the Refrigerators.  Because the defect is latent, and Samsung took steps to actively misrepresent and conceal it, among other reasons, Plaintiffs and members of the Class did not discover and could not have discovered the defect through reasonable and diligent investigation.  Moreover, reasonable and diligent investigation into the cause of the freezing coils did not and could not reveal a factual basis for a cause of action based on Samsung's misrepresentation and concealment of the defect.

68.    **Fraudulent Concealment Tolling:**   Any applicable statutes of limitation have been tolled by Samsung's knowing and active misrepresentation, concealment and denial of the facts as alleged herein, which concealment is ongoing. Plaintiffs and the Class have been kept ignorant by Samsung of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.  Plaintiff and members of the Class could not reasonably have discovered the true, latently defective nature of the Refrigerators.

69.    **Estoppel:**  Samsung was and is under a continuous duty to disclose to the Plaintiffs and the Class the true character, quality, and nature of the Refrigerators.  Samsung knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Refrigerators, which concealment is ongoing. Plaintiffs reasonably relied upon Samsung's knowing, affirmative, and/or active and ongoing concealment.  Based on the foregoing, Samsung is estopped from relying on any statues of limitation in defense of this action.

## VIII.  Class Action Allegations

70.    Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

71.    The Class that Plaintiffs seek to represent is defined as follows:

> All persons or entities residing in the United States who own, or have owned, Samsung refrigerator models RF266AASH, RS263BBWP, RB1955SH, RS2533SW, RS267LASH, RS267TDRS, RS2630WW and/or any other Samsung refrigerator model containing a defect that causes the refrigerator's coils to ice over and the refrigerator to stop cooling.

Excluded from the Class are (a) Samsung, any entity in which Samsung has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors, (b) the United States government and any agency or instrumentality thereof; (c) the judge to whom this case is assigned and any member of the judge's immediate family; and (d) claims for personal injury, wrongful death and/or emotional distress.

72.    **Numerosity/Impracticability of Joinder**:    The members of the Class are so numerous that joinder of all members would be impracticable.    The proposed Class includes tens of thousands of members.    The Class is composed of an easily ascertainable, self-identifying set of individuals and entities that own or owned the Refrigerators.    The precise number of Class members can be ascertained by reviewing documents in Defendants' possession, custody, and control.

73.    **Commonality and Predominance**:    There are common questions of law and fact that predominate over any questions affecting only individual members of the Class.    These common legal and factual questions, include, but are not limited to, the following:

a)    Whether the Refrigerators contain common design and/or manufacturing defects;

b)    Whether the Refrigerators are substantially certain to fail before the end of their reasonable expected life;

c)    Whether the Refrigerators are not of merchantable quality;

d)    Whether the existence of the defect in the Refrigerators is a material fact reasonable purchasers would have considered in deciding whether to purchase a refrigerator;

e)    Whether Samsung knew or was reckless in not knowing of the defect in the Refrigerators;

f)    Whether Samsung engaged in a pattern of fraudulent, deceptive, and misleading conduct involving the marketing and sale of the

Refrigerators;

g)   Whether Samsung consciously concealed or failed to disclose material facts to Plaintiffs and other members of the Class with respect to the defect in the Refrigerators;

h)   Whether Samsung knew that consumers were unaware of the defect and that they expected the refrigerators to be free from defects at the time of sale;

i)   Whether Samsung knew that consumers would expect their refrigerators to effectively cool perishable food items;

j)   Whether Samsung knew that customers would expect it to disclose the existence of a known defect that would prevent the refrigerators from keeping food items cool, and that such disclosure would impact consumers' decision as to whether to purchase the Refrigerators;

k)   Whether Samsung intended that Plaintiffs and the other members of the Class rely on its acts of concealment and omissions when purchasing the Refrigerators;

l)   Whether, as a result of the foregoing acts, omissions, and practices, Plaintiffs and other members of the Class have suffered an ascertainable loss by purchasing defective refrigerators that are unable to perform their essential function of keeping food cool, and that present a risk to the safety of Plaintiffs and members of the Class, including the risk of food-borne illness;

26

m)   Whether Samsung's false and misleading statements of facts and concealment of material facts regarding the defect in the Refrigerators were likely to deceive the public;

n)   Whether Samsung's acts and omissions violated the New Jersey CFA;

o)   Whether Samsung fraudulently concealed from and/or failed to disclose to Plaintiffs and the Class the defect in the Refrigerators;

p)   Whether Samsung's conduct breached implied warranties;

q)   Whether Samsung has been unjustly enriched at the expense of Plaintiffs and Class members;

r)   Whether Plaintiffs and Class members suffered any ascertainable loss of money or property as a result of the false promise or misrepresentation, or concealment, suppression or omission of material fact;

s)   Whether Samsung should be declared financially responsible for notifying all Class members of the defective Refrigerators and for the costs and expenses of repair and replacement of all such defective components therein;

t)   Whether Plaintiffs and Class members are entitled to recover damages, and if so, the amount of those damages;

u)   Whether, as a result of Samsung's misconduct, Plaintiffs and the Class are entitled to equitable relief and other relief, and, if so, the nature of such relief;

v)      Whether New Jersey law can be applied to the claims of Plaintiffs and the Class; and

w)      Whether Samsung's actions were willful and malicious, or manifested knowing and reckless indifference and disregard toward the rights of Plaintiffs and the Class.

74.     **Typicality**:  Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs and all Class members have been injured by the same wrongful practices by Samsung.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal and remedial theories.

75.     **Adequacy**:  Plaintiffs will fully and adequately assert and protect the interests of the Class, and they have retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiffs nor their attorneys have any interests that are contrary to or conflicting with the Class.

76.     **Superiority**:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is not economically feasible and is procedurally impracticable.  While the aggregate damages sustained by the Class are in the millions of dollars, and are no less than five million dollars upon information and belief, the individual damages incurred by each Class member resulting from Samsung's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate

claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Samsung has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## IX.    CLAIMS FOR RELIEF

### FIRST COUNT
### (Violations Of New Jersey Consumer Fraud Act ("CFA") (N.J.S.A. § 56:8-2 *et seq.*))

77.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

78.    Plaintiffs and other members of the Class are "consumers" within the meaning of the CFA.

79.    The Refrigerators are "goods" within the meaning of the CFA.

80.    At all relevant times material hereto, Samsung conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

81.    The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under other remedies.

82.    Samsung has engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the marketing and sale of refrigerators it knew to be defective.

83.    Samsung had exclusive knowledge of the defect at the time of sale. The defect is latent and not something that Plaintiffs or Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

84.    Samsung represented that its goods, merchandise or services had characteristics, uses, benefits, or quantities that they did not have, and that its goods, merchandise and services were of a particular standard, quality or grade that they were not.

85.    In its marketing and sale of the Refrigerators, Samsung undertook active and ongoing steps to conceal the defects and has consciously withheld material facts from Plaintiffs and other members of the Class with respect to the defect in the Refrigerators.  Plaintiffs are aware of nothing in Samsung's advertising, publicity, or marketing materials that discloses the truth about the defect, despite Samsung's awareness, or reckless unawareness, of the problem.

86.    Samsung's conduct was objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances.  The fact that a defect in

the Refrigerators would cause the Refrigerators' coils to ice over and prevent the Refrigerators' fans from working to keep the machines cool, thereby posing safety risks to consumers, was a material fact that a reasonable and/or unsophisticated consumer would attach importance to at the time of purchase. This fact would influence a reasonable consumers' choice of action during the purchase of their refrigerators.

87.    Samsung intended that Plaintiffs and the other members of the Class rely on its acts of concealment and omissions by purchasing the Refrigerators at full price rather than paying less for them or purchasing competitors' refrigerators.

88.    Had Samsung disclosed all material information regarding the defect to Plaintiffs and other members of the Class, they would not have purchased the Refrigerators, or they would have paid less for them.

89.    Samsung's conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

90.    As a result of the foregoing acts, omissions, and practices, Plaintiffs and other members of the Class have suffered an ascertainable loss by purchasing defective refrigerators that are unable to perform their essential function of keeping food cool for their expected useful life and that present a risk to the safety of Plaintiffs and members of the Class, including through risk of food-borne illness. Plaintiffs have also incurred additional costs to repair and/or replace the Refrigerators, and/or losses and damages from food spoilage. Plaintiffs are entitled

to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees, and costs of suit.

91.    Application of the CFA to all Class members, regardless of their state of residence, is appropriate as described herein and because, *inter alia*:

a) Samsung controlled and directed its nationwide sales operations and support operations from New Jersey;

b)    Samsung's United States marketing and customer support operations and decisions were made in New Jersey, Samsung's United States headquarters;

c)    Samsung's principal place of business in the United States is located in New Jersey;

d)    A significant percentage of Samsung's key United States employees are based in New Jersey; and

e)    The facts and circumstances of this case reflect numerous contacts with the State of New Jersey so as to create a state interest in applying the CFA to Samsung, thereby making application of New Jersey law to the entire Class appropriate.

## SECOND COUNT
### (Fraudulent Concealment/Nondisclosure)

92.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

93.    Samsung knew or was reckless in not knowing at the time of sale that the Refrigerators are defective in that they are substantially certain to fail well in advance of their anticipated useful life.

94.    Samsung fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs, the Class, and all others in the chain of distribution the true defective nature of the Refrigerators.

95.    Samsung had exclusive knowledge of the defect at the time of sale. The defect is latent and not something that Plaintiffs or Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

96.    Samsung had the capacity to, and did, deceive consumers into believing that they were purchasing refrigerators that could be used safely and practically to store and cool food.

97.    Samsung undertook active and ongoing steps to conceal the defect. Plaintiffs are aware of nothing in Samsung's advertising, publicity, or marketing materials that discloses the truth about the defect, despite Samsung's awareness of the problem.

98.    The facts concealed and/or not disclosed by Samsung to Plaintiffs and the Class are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) a refrigerator.

99.    Samsung had a duty to disclose the fact that a defect existed at the time of sale by virtue of the fact that consumers would reasonably expect disclosure of the defect.

100.    Samsung intentionally concealed and/or failed to disclose the problems with the Refrigerators for the purpose of inducing Plaintiffs and the Class to act thereon.

101.    Plaintiffs and the Class justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of the Refrigerators and/or replacement parts for the Refrigerators.

102.    Had Plaintiffs and the Class known of the defect they would not have purchased (or would have paid less for) the Refrigerators.

103.    As a direct and proximate cause of Samsung's misconduct, Plaintiffs and Class members have suffered actual damages in that they bought and own refrigerators that contain an inherent defect and that have prematurely failed or are substantially certain to prematurely fail within and outside applicable warranty periods, and they will be required to incur costs to repair and/or replace the defective components or the Refrigerators as a whole.

104.    Samsung's conduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

105.    Samsung has acted with malice by engaging in conduct that was and is intended by Samsung to cause injury to the Plaintiffs and the Class.

106.    Samsung has committed fraud through its concealment of material facts known to Samsung with the intent to cause injury to the Plaintiffs and the Class.

107.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Samsung for actual and punitive damages for themselves and each member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

### THIRD COUNT
### <u>(Breach of Implied Warranties)</u>

108.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

109.    At all times relevant herein, Samsung was in the business of manufacturing and selling refrigerators.

110.    Samsung has brought itself into privity with Plaintiffs and the Class members by warranting the Refrigerators to them directly and/or through the agency doctrine.

111.    At all times relevant herein, Samsung impliedly warranted in a uniform manner to Plaintiffs and the proposed Class that the Refrigerators were of the same or greater quality as generally accepted for refrigerators, and were safe and fit for their intended use as refrigerators.

112.    Contrary to Samsung's implied warranties, the Refrigerators were not of merchantable quality at the time of sale, as they were not fit for the ordinary purposes for which such goods are used, and/or do not conform to the promises or

affirmations of fact made in the promotional literature. The Refrigerators contained an inherent defect at the time of sale that was substantially certain to result in malfunction during the useful life of the product such that the refrigerators would be unable to keep food cool.

113. Samsung knew or was reckless in not knowing of this defect, but sold the Refrigerators without disclosing the defect to Plaintiffs.

114. At the times that Samsung marketed and sold the Refrigerators for use by Plaintiffs and the proposed Class, Samsung had actual or constructive knowledge of the particular purposes for which the Refrigerators would be used.

115. At the times that Samsung marketed and sold the Refrigerators for use by Plaintiff and the proposed Class, Samsung had actual or constructive knowledge that Plaintiffs and the proposed Class would and did rely upon the skill and judgment of Samsung to select and furnish refrigerators that were suitable for the purpose of keeping food cool.

116. Contrary to Samsung's implied warranty, the Refrigerators were not fit for their intended and known use by Plaintiff and the proposed Class. The Refrigerators contain an inherent defect that is substantially certain to result in malfunction during the useful life of the product.

117. Samsung knew or was reckless in not knowing of the defect in the Refrigerators and did not act on that knowledge. Samsung continued to actively conceal from customers that the Refrigerators they purchased were defective at the time of sale.

118.   Had the defect that existed at the time of sale been known, the Refrigerators could not have been sold, or could not have been sold at the same price.

119.   Had Plaintiffs been aware of the defect that existed at the time of sale, they would not have purchased the Refrigerators, or would have paid less for them.

120.   Samsung has received timely notice of the breach of implied warranties alleged herein.  Samsung has been put on notice by the Class as a whole by reason of its own knowledge of the defect, and by warranty claims and other complaints made by Plaintiffs and Class members.

121.   Any express limitation or negation of Samsung's implied warranties that the Refrigerators were fit to perform their essential purpose, when such was not the case, would be unreasonable and unconscionable and, accordingly, is unenforceable.

122.   As a direct and legal result of the breach of implied warranties by Samsung, Plaintiffs and the members of the proposed Class sustained actual and consequential damages in an amount to be determined according to proof at time of trial.

## FOURTH COUNT
### (Unjust Enrichment)

123.   Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

124.   Samsung has been unjustly enriched by the sale of the Refrigerators to Plaintiffs and the Class members.

37

125. Plaintiffs seek to recover for Samsung's unjust enrichment under New Jersey State law.

126. Plaintiffs and the Class members conferred a benefit on Samsung, but Samsung failed to disclose its knowledge that Plaintiffs did not receive what they paid for and misled Plaintiffs and the Class regarding the qualities of the Refrigerators while profiting from this deception.

127. The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Samsung to retain the benefit of these profits that it unfairly has obtained from Plaintiffs and the Class members.

128. Plaintiffs and the Class members, having been injured by Samsung's conduct, are entitled to restitution or disgorgement of profits as a result of the unjust enrichment of Samsung to their detriment.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the Class, pray for judgment against Samsung granting the following relief:

1.    An order certifying this case as a class action and appointing Plaintiffs to represent the Class and Plaintiffs' counsel as Class counsel;

2.    Restitution and disgorgement of all amounts obtained by Samsung as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

3.    All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

38

4.     Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class in the maximum amount permitted by applicable law, including mandatory treble damages pursuant to the New Jersey Consumer Fraud Act;

5.     An order (1) requiring Samsung to immediately cease its wrongful conduct as set forth above; (2) enjoining Samsung from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; and (3) requiring Samsung to refund to Plaintiffs and all members of the Class the funds necessary to repair or replace the Refrigerators as appropriate;

6.     Statutory pre-judgment and post-judgment interest on the Class damages;

7.     Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

8.     Such other relief as the Court may deem just and proper.

## XI.    DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all causes of action so triable.


DATED:  September 20, 2010

_____/s/  Michael Coren_____
Christopher M. Placitella
Michael Coren
**COHEN, PLACITELLA & ROTH, PC**
127 Maple Avenue
Red Bank, NJ 07701
Telephone:  215.567.3500
Fax:  215.567.6019
Mcoren@cprlaw.com


J. Gordon Rudd, Jr.
David M. Cialkowski
Kirsten D. Hedberg
**ZIMMERMAN REED, PLLP**
651 Nicollet Mall, Suite 501
Minneapolis, MN  55402
Telephone:  612.341.0400
Fax:  612.341.0844
Gordon.Rudd@zimmreed.com
David.Cialkowski@zimmreed.com
Kirsten.Hedberg@zimmreed.com


Jonathan D. Selbin
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudon St, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Fax:  212.355.9592
jselbin@lchb.com

Kristen L. Sagafi
Alison M. Stocking
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  415.956.1000
Fax:  415.956.1008
ksagafi@lchb.com

*Attorneys for Plaintiffs*

Exhibit "A"



View all

French Door Refrigerators

Side by Side Refrigerators

Bottom Freezer Refrigerators

Refrigerator Accessories

Use our product advisor

# Seriously Cool Refrigerators

## The freshest food, and even fresher designs

Samsung refrigerators are huge on style, and even larger when it comes to space. Throw in advanced cooling technology and adjustable storage, and your refrigerator could be the most elegant appliance in your home.



### French Door

Massive storage capacity on the inside, with a slim profile on the outside and the most advanced conveniences built in, Samsung French Door refrigerators raise the bar on style, efficiency and modern living.

### Bottom Freezer

Don't sacrifice storage for space with Samsung Bottom Freezer refrigerators. All your favorite foods are at eye level, so you can spend more time finding what you're after and less time cooling your kitchen.

### Side by Side

All the space you need to stock up on family favorites, throw a party, or prepare a full-blown catered affair. Plus elegant design and efficient Twin Cooling Plus® make Samsung Side by Side refrigerators a fresh choice.

## Learning Resources



twin cooling plus

### Twin Cooling for double the effectiveness

Samsung's unique Twin Cooling System® delivers uncompromised freshness in both the freezer and the refrigerator compartments by circulating cold air with individual fans.



Find Appliance Rebates ►

### Bonus Visa® Gift Card

Buy Samsung Kitchen Appliances and receive a prepaid Visa® card ranging in value from $100 to $400

For a limited time only!



Samsung's French Door Refrigerator

### Best-in-Class French Door Fridges

Our French Door refrigerators boast the largest capacity in their class with up to 14% more storage. Plus, adjustable shelves and freezer doors that glide open with the slightest tug make them among the most convenient too.

Learn more

Click for more details ►



**Conserves energy and your cash**
A refrigerator is usually the most energy-consuming appliance in your home, but this one is ENERGY STAR® approved and has a door alarm to alert you when a door is ajar. This kind of conscious cooling is good for your wallet and the environment.



5 Years in a Row

**Ranked the "Highest in Customer Satisfaction with Refrigerators".**
- J.D. Power and Associates*

### Support



Download drivers, manuals, software, and firmware

Follow our how-to guide for setting up your product

View FAQs

Search for service policy or warranty

## Video Resources



VIEW SAMSUNG'S FULL KITCHEN SUITE

SEE HOW OUR LARGER CAPACITY REFRIGERATORS CAN HELP YOU >>



TWIN COOLING KEEPS YOUR FOOD FRESHER >>



*Disclaimer: Samsung received the highest numerical score for refrigerators in the proprietary J.D. Power and Associates 2005-2007 Major Appliance Study and 2008-2009 Kitchen Appliance Study℠ (2007-2008 received award for satisfaction with side-by-side/French door refrigerators) Study based on 11,701 total responses measuring 13 brands and measures opinions of consumers who purchased refrigerators from a retailer store, their new-home builder during the previous 24 months. Proprietary study results are based on experiences and perceptions of consumers surveyed in March-April 2009. Your experiences may vary. Visit jdpower.com

## News

SAMSUNG Launches New 2010 Home Appliance Line Up

Read more

🇺🇸 USA /English    View low bandwidth version      RSS   Newsletter   Feedback

Affiliated companies   Investor relations   Careers   Environment   Privacy   Legal   Contact us   Sitemap    Copyright © 1995-2010 SAMSUNG. All rights reserved.

