# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFF WESKE, JO ANNA FRAGER, and DARRYL MYHRE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG ELECTRONICS CO., LTD.,<br><br>Defendants | Civil Action No. 2:10-cv-04811 (WJM)<br><br>Motion Return Date:  May 2, 2011<br><br>ORAL ARGUMENT REQUESTED |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 9(b)

GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
Post Office Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

Attorneys for Defendants
Samsung Electronics America, Inc.
and Samsung Electronics Co., Ltd.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................iii

PRELIMINARY STATEMENT ............................................................ 1

STATEMENT OF FACTS ................................................................ 4

ARGUMENT ............................................................................ 12

I.   LEGAL STANDARD ON MOTION TO DISMISS ................................... 12

II.  PLAINTIFFS' CLAIM UNDER THE NJCFA SHOULD BE
     DISMISSED..................................................................... 13

     A. CHOICE OF LAW ANALYSIS AT THE MOTION TO DISMISS
        PHASE IS APPROPRIATE IN THIS CASE........................................... 13

     B. UNDER THE MOST SIGNIFICANT RELATIONSHIP TEST, THE
        LAW OF THE PLAINTIFFS' HOME STATES SHOULD APPLY........ 15

        i.   Prong 1 – Actual conflicts exist between New Jersey law and the
             laws of each plaintiff's home state......................................... 17

        ii.  Prong 2 – Each plaintiff's home state has the most significant
             interest in having its laws apply to that plaintiff's consumer fraud
             claims ................................................................. 20

             a.   Section 148(1) Analysis..................................... 21

             b.   Section 148(2) Analysis..................................... 24

III. THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE
     CONSUMER PROTECTION STATUTES OF EACH PLAINTIFF'S
     HOME STATE................................................................. 26

     A. Weske (Minnesota)...................................................... 26

     B. Frager (Ohio) ............................................................ 27

     C. Myhre (Washington)..................................................... 27

IV.  EVEN IF PLAINTIFFS COULD BRING A CLAIM UNDER THE
     NJCFA, THE CLAIM SHOULD BE DISMISSED PURSUANT TO
     FED. R. CIV. P. 12(b)(6) AND FED. R. CIV. P. 9(b) .................................. 28

     A. DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6)........................ 28

     B. DISMISSAL PURSUANT TO FED. R. CIV. P. 9(b) .............................. 32

V.   PLAINTIFFS' CLAIM FOR FRAUDULENT CONCEALMENT
     SHOULD ALSO BE DISMISSED PURSUANT TO FED. R. CIV. P.
     9(b) ........................................................................................................... 36

VI.  PLAINTIFFS' CLAIM FOR BREACH OF IMPLIED  WARRANTY
     SHOULD BE DISMISSED........................................................................... 37

VII. PLAINTIFFS' CAUSE OF ACTION FOR UNJUST  ENRICHMENT
     FAILS AS A MATTER OF LAW ................................................................ 43

CONCLUSION ..................................................................................................... 47

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                      <u>Page</u>

<u>Abraham v. Volkswagen of Am., Inc.</u>,
    795 F.2d 238 (2d Cir. 1986)......................................................................42-43

<u>Adamson v. Ortho-McNeil Pharmaceutical, Inc.</u>,
    463 F. Supp. 2d 496 (D.N.J. 2006) ........................................................ 43 n.10

<u>Agostino v. Quest Diagnostics, Inc.</u>,
    256 F.R.D. 437 (D.N.J. 2009)................................................. 15-16, 21-25, 38

<u>Agostino v. Quest Diagnostics Inc.</u>,
    2010 U.S. Dist. LEXIS 135310 (D.N.J. Dec. 22, 2010)........................... 23, 26

<u>Alban v. BMW of N. Am., LLC</u>,
    2010 U.S. Dist. LEXIS 94038 (D.N.J. Sept. 8, 2010) .................................... 45

<u>Alban v. BMW of N. Am., LLC</u>,
    2011 U.S. Dist. LEXIS 26754 (D.N.J. Mar. 15, 2011)...................... 34, 41 n.8

<u>Anhold v. Daniels</u>,
    614 P.2d 184 (Wash. 1980)............................................................................ 28

<u>Arcand v. Brother Int'l Corp.</u>,
    673 F. Supp. 2d 282 (D.N.J. 2009) ................................................................ 17

<u>Ashcroft v. Iqbal</u>,
    __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)................................. 12

<u>Bell Atl. Corp. v. Twombly</u>,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)........................ 12-13

<u>Berry v. Budget Rent A Car Systems, Inc.</u>,
    497 F. Supp. 2d 1361 (S.D. Fla. 2007) .................................................14-15 n.3

<u>Blystra v. Fiber Tech Group, Inc.</u>,
    407 F. Supp. 2d 636 (D.N.J. 2005) ........................................................ 46 n.11

Board of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,
   296 F.3d 164 (3d Cir. 2002)........................................................................ 32

Bosland v. Warnock Dodge, Inc.,
   197 N.J. 543, 964 A.2d 741 (N.J. 2009) ...................................................28-29

Certified Question United States Dist. Court Order v. Philip Morris,
   621 N.W.2d 2 (Minn. 2001).................................................................... 17, 26

Christopher v. Hanson,
   2010 U.S. Dist. LEXIS 77056 (D. Minn. May 24, 2010)..................... 43 n.10

Cooper v. Samsung Elecs., Am., Inc.,
   2008 U.S. Dist. LEXIS 75810 (D.N.J. Sept. 30, 2008),
   aff'd, 374 F. App'x 250 (3d Cir. 2010)........................ 13-14, 24-25, 41, 45-46

Cooper v. Samsung Elecs., Am., Inc.,
   374 F. App'x 250 (3d Cir. 2010) ............................................................ 8 n.2

Cox v. Sears Roebuck & Co.,
   138 N.J. 2, 647 A.2d 454 (N.J. 1994) ........................................................ 29

Crete v. Resort Condominiums, Int'l, LLC,
   2011 U.S. Dist. LEXIS 14719 (D.N.J. Feb. 14, 2011) ................ 13-14, 25-26

Debrah F. Fink, D.M.D., MS, PC v. Ricoh Corp.,
   365 N.J. Super. 520, 839 A.2d 942 (N.J. Law Div. 2003)............................ 20

Dewey v. Volkswagen AG,
   558 F. Supp. 2d 505 (D.N.J. 2008) ............................................................ 14

Duffy v. Samsung Elecs. Am., Inc.,
   2007 U.S. Dist. LEXIS 14792 (D.N.J. Mar. 2, 2007)...............................30-31

Duquesne v. Westinghouse Elec. Corp.,
   66 F.3d 604 (3d Cir. 1995)......................................................................... 42

Elias v. Ungar's Food Prods., Inc.,
   252 F.R.D. 233 (D.N.J. 2008)................................................................43-44

Elvig v. Nintendo of Am., Inc.,
    696 F. Supp. 2d. 1207 (D. Col. 2010)....................................................... 15 n.3

Erny v. Estate of Merola,
    171 N.J. 86, 792 A.2d 1208 (N.J. 2002) .................................................. 22 n.6

Frederico v. Home Depot,
    507 F.3d 188 (3d Cir. 2007).......................................................................... 32

Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co.,
    960 F.2d 377 (3d Cir. 1992).......................................................................... 15

Hambleton v. R.G. Barry Corp.,
    465 N.E.2d 1298 (Ohio 1984)................................................................ 44 n.10

Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,
    719 P.2d 531 (Wash. 1986)................................................................ 19, 27-28

Harlow v. Fitzgerald,
    457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).............................. 12

Harper v. LG Elec. USA, Inc.,
    595 F. Supp. 2d 486 (D.N.J. 2009) ............................................................... 38

Hummel v. Hummel,
    14 N.E.2d 923 (Ohio 1938).................................................................... 44 n.10

In re Tele Aid,
    257 F.R.D. 46 (D.N.J. Apr. 27, 2009).......................................................25-26

In re Toshiba Am. HD DVD Marketing and Sales Practices Litig.,
    2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept. 11, 2009) ................................. 44

Interboro Packaging Corp. v. City of Minneapolis,
    2009 Minn. App. Unpub. LEXIS 1061 (Minn. App. Sept. 15, 2009).. 43 n.10

Johnson v. Microsoft,
    802 N.E.2d 712 (Ohio App. 2003),
    aff'd, 834 N.E.2d 791 (Ohio 2005) ......................................................... 18, 27

Klaxon Co. v. Stentor Elec. Mfg. Co.,
 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941).....................................15

Knox v. Samsung Elecs. America, Inc.,
 2009 U.S. Dist. LEXIS 53685 (D.N.J. June 24, 2009)................ 13-14, 25-26

Laney v. Am. Standard Co.,
 2010 U.S. Dist. LEXIS 100129 (D.N.J. Sept. 23, 2010) ........................ 21, 26

Lum v. Bank of Am.,
 361 F.3d 217 (3d Cir. 2004)..........................................................................32

Ly v. Nystrom,
 615 N.W.2d 302 (Minn. 2000)................................................................ 18, 27

Mack v. Revicki,
 47 N.J. Super. 185, 135 A.2d 569 (N.J. App. Div. 1957).............................41

Maniscalco v. Brother Int'l Corp. (USA),
 627 F. Supp. 2d 494 (D.N.J. 2009) .....................................................32-33, 45

Mason v. Coca-Cola Co.,
 2010 U.S. Dist. LEXIS 65107 (D.N.J. June 30, 2010) .......................... 46 n.11

Meshinsky v. Nichols Yacht Sales, Inc.,
 110 N.J. 464, 541 A.2d 1063 (N.J. 1988) .....................................................31

Nafar v. Hollywood Tanning Sys.,
 339 F. App'x 216 (3d Cir. 2009)..................................................15-16, 22, 25

Naporano Iron & Metal Co. v. Am. Crane Co.,
 79 F. Supp. 2d 494 (D.N.J. 2000) ............................................................32-33

Nikolin v. Samsung Elecs. America, Inc.,
 2010 U.S. Dist. LEXIS 110942 (D.N.J. Oct. 18, 2010)........................... 13-14

N.J. Transit Corp. v. Harsco,
 497 F.3d 323 (3d Cir. 2007).........................................................................40

Nobile v. Ford Motor Co.,
    2011 U.S. Dist. LEXIS 26766 (D.N.J. Mar. 14, 2011).......... 30-31, 40, 42-43

Noble v. Porsche Cars N. Am.,
    694 F. Supp. 2d 333 (D.N.J. 2010) ..........................................................30-31

Pagan v. Stroh Brewery Co.,
    1991 Ohio App. LEXIS 2466 (7th Dist. 1991)........................................38-39

Payne v. FujiFilm U.S.A., Inc.,
    2010 U.S. Dist. LEXIS 52808 (D.N.J. May 28, 2010) .............................38-39

Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc.,
    710 F. Supp. 2d 458 (D. Del. May 6, 2010) .......................................... 14 n.3

Perkins v. DaimlerChrysler Corp.,
    383 N.J. Super. 99, 890 A.2d 997 (N.J. App. Div. 2006).........................29-30

Pryor v. Nat'l Collegiate Athletic Ass'n,
    288 F. 3d 548 (3d Cir. 2002)........................................................................ 8 n.2

P.V. v. Camp Jaycee,
    197 N.J. 132, 962 A.2d 453 (N.J. 2008) ................................................. 15, 43

Robinson v. Avis Rent a Car Sys.,
    22 P.3d 818 (Wash. App. 2001)...........................................................18-19, 27

Rodio v. Smith,
    123 N.J. 345, 587 A.2d 621 (N.J. 1991) ................................................. 21 n.5

Scheuer v. Rhodes,
    416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).................................. 12

Schnall v. AT&T Wireless Servs., Inc.,
    225 P.3d 929 (Wash. 2010)........................................................................... 19

Seville Ind. Mach. Corp. v. Southmost Mach. Corp.,
    742 F.2d 786 (3d Cir. 1984)......................................................................... 37

Sitogum Holdings, Inc. v. Ropes,
    352 N.J. Super. 555, 800 A.2d 915 (N.J. Ch. Div. 2002) ....................... 41 n.8

Spring Motors Distribs. v. Ford Motor Co.,
    98 N.J. 555, 489 A.2d 660 (N.J. 1985) .......................................................... 38

State Farm Mut. Auto. Ins. Co. v. Estate of Simmons,
    84 N.J. 28, 417 A.2d 488 (1980) ............................................................... 37-38

Swift & Co. v. Elias Farms, Inc.,
    539 F.3d 849 (8th Cir. 2008) .................................................................. 18, 26

Tex Enters. v. Brockway Standard, Inc.,
    66 P.3d 625 (Wash. 2003) ....................................................................... 38, 40

Thiedemann v. Mercedes-Benz USA LLC,
    183 N.J. 234, 872 A.2d 783 (N.J. 2005) ....................................................... 31

Torres-Hernandez v. CVT Prepaid Solutions, Inc.,
    2008 U.S. Dist. LEXIS 105413 (D.N.J. Dec. 9, 2008) ........................ 46 n.11

Tuttle v. Lorillard Tobacco Co.,
    377 F.3d 917 (8th Cir. 2004) ................................................................... 17-18

VRG Corp. v. GKN Realty Corp.,
    135 N.J. 539, 641 A.2d 519 (N.J. 1994) ....................................................... 44

Wanaque Borough Sewerage Auth. v. Twp. of West Milford,
    144 N.J. 564, 677 A.2d 747 (N.J. 1996) ............................................... 43 n.10

Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.,
    2009 U.S. Dist. LEXIS 112773 (D.N.J. December 3, 2009)................ 46 n.11

Young v. Young,
    191 P.3d 1258 (Wash. 2008)................................................................ 44 n.10

COURT RULES                                                      Page

Fed. R. Civ. P. 9(b) ....................................................................... 2-3, 36-37

Fed. R. Civ. P. 12(b)(6) ....................................................................... passim


STATUTES                                                        Page

N.J.S.A. 12A:2-317 ....................................................................................... 40

N.S.J.A. 56:8-1 ......................................................................................... 1-2

N.J.S.A. 56:8-2 ..................................................................................... 19, 29

Minn. Stat. §325F.69 ................................................................................. 17

O.R.C. Ann. §1345.01 ............................................................................... 18

O.R.C. Ann. §1345.09(B) ..................................................................... 18, 27

Rev. Code Wash. §19.86 ........................................................................ 18-19

Rev. Code Wash. §19.86.090 ..................................................................... 19


OTHER SOURCES                                                   Page

62 Fed. Proc. L. Ed. § 62:508 ............................................................... 8 n.2

Restatement (Second) of Conflict of Laws § 148. ............... 16-17 n.4, 20-22, 24-25

Restatement (Second) of Conflict of Laws § 188 ............................................ 38-39

## PRELIMINARY STATEMENT

This matter involves three putative class representatives, one from Minnesota, one from Ohio and one from Washington, who raise claims based on the New Jersey Consumer Fraud Act even though none of them are New Jersey residents or purchased an allegedly defective product in New Jersey.  Rather, each of the named plaintiffs purchased a Samsung refrigerator in his/her home state, from a retail vendor in his/her home state, for use in his/her home state, and allege that the refrigerators began to exhibit a defective condition in his/her home state. Importantly, in each case the allegedly defective condition arose outside the product warranty period.

The three non-New Jersey plaintiffs allege the refrigerators, each of which is a different Samsung model, contain an "inherent defect" that causes the refrigerators' coils to freeze over and results in a failure of the refrigerators to cool. The Complaint further alleges, without any factual substantiation, that Samsung knew, or was reckless in not knowing, that the refrigerators would fail prematurely and made material misrepresentations and concealed information in its marketing, advertising and sale of the refrigerators.  Based upon these general and unsubstantiated allegations, plaintiffs bring this action seeking class certification against Samsung Electronics America, Inc. ("SEA") and Samsung Electronics Co., Ltd. ("SEC") (collectively "Samsung") principally alleging violations of the New

Jersey Consumer Fraud Act ("NJCFA"), N.S.J.A. 56:8-1 et seq., and also adding claims for fraudulent concealment/nondisclosure, breach of implied warranties and unjust enrichment.

Accordingly, this Court once again faces a class action pleading by non-New Jersey residents attempting to invoke the NJCFA in connection with consumer transactions that occurred outside the state and have no significant relationship to the state. In fact, the only tenuous contact with New Jersey alleged in the Complaint is that SEA, a New York corporation, maintains its corporate headquarters in New Jersey. Given this one and only contact with New Jersey, the plaintiffs are left to merely speculate, without support of specific allegations, that Samsung's alleged misconduct emanated from New Jersey. Contrary to applicable law and despite the fact that the entire consumer transaction and use of the product occurred outside of New Jersey, plaintiffs attempt to justify their choice of law based solely on the location of SEA's offices.

Samsung moves herein for dismissal of plaintiffs' putative Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b). Plaintiffs' claims alleging violations of the NJCFA must be dismissed because under New Jersey's choice of law analysis, New Jersey does not have the most significant relationship to the claims asserted by plaintiffs. Rather, each plaintiff's home state has the most significant relationship to his/her claim. Yet, even if the plaintiffs

were able to bring their claims under the NJCFA, the cause of action should be dismissed in any regard pursuant to Fed. R. Civ. P. 12(b)(6) and/or Fed. R. Civ. P. 9(b). Inasmuch as the product parts at issue outperformed the warranty provided, plaintiffs cannot demonstrate an "ascertainable loss" and therefore fail to state a claim under the NJCFA. Additionally, the cause of action also fails due to an utter lack of specificity. For example, even as to the basic issue of whether Samsung had any notice of an alleged inherent defect with the refrigerators at issue, all plaintiffs muster in support are (1) a 2008 BBC news report about a model of Samsung refrigerator only sold outside the United States, and (2) 11 random posts to a consumer affairs website in 2009 and 2010 containing vague and inconsistent complaints about many different models of Samsung refrigerators. Further, while alleging false advertising, plaintiffs also fail to claim that the Samsung advertising referenced in the Complaint was specifically fraudulent, only that "the refrigerators did not perform as advertised." Similarly, plaintiffs' cause of action for fraudulent concealment should also be dismissed pursuant to Fed. R. Civ. P. 9(b) because plaintiffs fail to set forth with the requisite specificity allegations to support this claim.

Furthermore, plaintiffs' breach of implied warranty and unjust enrichment causes of action are also ripe for dismissal. Under Ohio and Washington law, plaintiffs Frager and Myhre have no claims for breach of implied warranties

- 3 -

because they lack the requisite privity with Samsung. Regardless of whether Minnesota or New Jersey law is applied, plaintiff Weske's implied warranty claim must also fail because the alleged defect occurred outside the warranty period and the pleaded facts fail to underpin the claim that Samsung's conduct was unconscionable. Finally, plaintiffs' cause of action for unjust enrichment fails under the laws of each plaintiff's home state and New Jersey because plaintiffs cannot show that they expected remuneration from Samsung or that they conferred a benefit directly upon Samsung.

## STATEMENT OF FACTS

On September 20, 2010, plaintiffs Jeff Weske, Jo Anna Frager and Darryl Myhre filed this putative Class Action Complaint ("Complaint") against SEA and SEC alleging that each purchased a Samsung refrigerator that contained a defect that causes the refrigerator's coils to freeze over resulting in a failure of the refrigerators to cool. Complaint at ¶¶1, 12, 13, 14. According to the Complaint, Mr. Weske resides in Cloquet, Minnesota, Ms. Frager resides in Montville, Ohio, and Mr. Myhre resides in Bellevue, Washington. Id. at ¶¶12-14. Although the plaintiffs generally allege the occurrence of the same condition, the Complaint indicates that each plaintiff purchased a different model of Samsung refrigerator. Id. The Complaint identifies SEA as a New York corporation with headquarters in Ridgefield Park, New Jersey, Id. at ¶¶1, 15, and SEC as a Korean corporation with

a principal place of business in Seoul, South Korea, Id. at ¶¶1, 16. The Complaint's factual basis for naming SEC as a defendant is that "SEC conducts substantial business operations from SEA's offices in Ridgefield Park, New Jersey, Mount Arlington, New Jersey and Piscataway, New Jersey." Id. at ¶16.

The Complaint generally alleges that "[t]he refrigerators are designed and manufactured with a uniform and inherent design defect that causes the coils to ice over and results in the failure of the Refrigerator to cool." Id. at ¶4. The Complaint further alleges that "Samsung knew, or was reckless in not knowing, at or before the time it sold the first unit, that the Refrigerators contained the defect and that the Refrigerators would fail prematurely due to the defect." Id. at ¶5. Additionally, it is generally pled that "Samsung made material misrepresentations and uniformly concealed material in its marketing, advertising and sale of the Refrigerators." Id. at ¶6. Further, the Complaint states that "Samsung has made uniform written misrepresentations to and/or uniformly concealed from the Plaintiffs and everyone in the chain of distribution the defects in the Refrigerators, and failed to remove the Refrigerators from the marketplace or take adequate remedial action." Id. at ¶6. The Complaint claims that "[t]he Refrigerators have failed prematurely, whether within or outside of the applicable warranty period," although the three putative class representatives acknowledge that the alleged

defective condition with their refrigerators arose outside the warranty period. Id. at ¶¶12, 13, 14.

Weske alleges that he purchased a Samsung side-by-side refrigerator, model number RS263BBWP, from a Best Buy store in Duluth, Minnesota in December 2006. Id. at ¶12. There is no allegation that Weske reviewed and/or relied upon any Samsung marketing or advertising material in connection with the purchase. Weske further claims that an issue with his refrigerator first arose in "the spring of 2009," more than two years after its purchase, when it allegedly "stopped cooling." Id. Weske temporarily resolved this condition by defrosting the refrigerator, but the refrigerator "stopped cooling" again in the "summer and fall of 2009." Id. Thereafter, Weske had the refrigerator repaired by a local service company. However, the refrigerator "stopped cooling again 45 days after the repair." Id. Next, Weske alleges that he contacted Samsung customer service. Although a date for this contact is not given, Weske acknowledges in the Complaint that the refrigerator was out of warranty by the time the contact occurred.[1] Id. Weske alleges to have suffered damages for lost groceries in the amount of $1,100.00. Id.

---

[1] As discussed herein, Weske's Samsung refrigerator came with a limited warranty of one year for parts and labor and five years for parts and labor for sealed portions of the refrigerator systems (compressor, evaporator, condenser, drier, connecting tubing). Neither Weske, Frager nor Myhre claim that a sealed portion of the refrigerator system failed.

Frager alleges that she purchased a Samsung French door refrigerator, model number RF266AASH, from a Lowe's store in Mentor, Ohio in February 2008. Id. at ¶13.   There is no allegation that Frager reviewed and/or relied upon any Samsung marketing or advertising material in connection with the purchase. Frager alleges that an issue with her refrigerator first arose in June 2010, more than two years after its purchase, when it "stopped cooling." Id. Frager contacted a local repairperson, who advised her to defrost the refrigerator. Id. Frager alleges that the refrigerator then functioned for approximately one month until "the refrigerator stopped cooling again." Id. There is no allegation that Frager ever contacted and/or registered a complaint related to this issue with Samsung. Frager claims to have suffered damages for lost groceries in the amount of $360.00. Id.

Myhre alleges that he purchased a Samsung side-by-side refrigerator, model number RD2630WW, from a Best Buy store in Tukwila, Washington in November 2007. Id. at ¶14. There is no allegation that Myhre reviewed and/or relied upon any Samsung marketing or advertising material in connection with the purchase. Myhre alleges that an issue with his refrigerator first arose in "early 2010," more than two years after its purchase, when he claims it "stopped cooling." Id. Myhre contacted a repairperson who could not identify any problem with the refrigerator. Id. Thereafter, Myhre alleges that he conducted internet research and, as a result, replaced the refrigerator's defrost heater. Id. After replacing the defrost heater,

Myhre did not experience additional issues with the refrigerator until September 2010, when it again ceased cooling. Id. There is no allegation that Myhre ever contacted and/or registered a complaint with Samsung. Myhre claims damages of $250.00 for lost groceries, $130.00 in repair bills and $130.00 for his purchase of the defrost heater. Id.

Although referencing the warranty period for the refrigerators, the Complaint does not provide information about the warranty that accompanies the subject refrigerators. The Samsung refrigerators referenced in the Complaint come with a limited warranty of "one (1) year for parts and labor" and "five (5) years parts and labor on sealed refrigeration system only* (*Compressor, evaporator, condenser, drier, connecting tubing)." See Warranty, attached as Exhibit A to the Affirmation of James J. O'Hara ("O'Hara Aff.").[2] The warranty prominently disclaims any warranties other than those listed and described, and further specifies that no warranties, including, but not limited to, any implied warranties of merchantability or fitness for a particular purpose shall apply after the express warranty periods expire.

---

[2] "In general, when ruling on a motion to dismiss pursuant to 12(b)(6), a court may only consider the contents of the pleadings." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F. 3d 548, 560 (3d Cir. 2002) (quoting 62 Fed. Proc. L. Ed. § 62:508). However, "[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim . . . ." Cooper v. Samsung Elecs., Am., Inc., 374 F. App'x 250, 253 n.3 (3d Cir. 2010).

The Complaint also alleges that although the internal temperature rises to room temperature, the exterior temperature display nonetheless indicates that the machine is at a standard cool temperature. Id. at ¶ 25. Once again, no attempt is made to explain the specific alleged defect that may be causing this condition. Furthermore, none of the putative class representatives allege to have experienced this condition.

Notwithstanding the fact that none of the putative class representatives alleges that he or she reviewed and/or relied upon marketing and advertising material generated by Samsung in connection with the purchase of their refrigerators, the Complaint focuses on a 2010 Samsung online marketing brochure that states that certain Samsung refrigerators feature "a unique patented 'TWIN Cooling System'™ that offers advanced cooling technology" that "delivers uncompromised freshness in both the freezer and refrigerator compartments by circulating cold air with individual fans," and offers "professional grade cooling." Id. at ¶¶22, 55. The Complaint does not specify when this brochure first came into circulation and fails to correlate the brochure to any of the Samsung refrigerators that the plaintiffs purchased. The Complaint also fails to allege that any of the statements made in the brochure are false.

The Complaint also alleges that Samsung knew about the alleged defect with the refrigerators and did not implement a plan to address the defect and instead

- 9 -

manufactured and sold subsequent models that contained the defect.  Id. at ¶¶39, 40.  However, the Complaint is devoid of any specific facts to support this claim. Instead, the Complaint generally alleges, without any particularization, that "Samsung customers have indicated that beginning as early as 2006 they notified and complained to Samsung that their Refrigerators' interiors were warm and the food inside had become spoiled."  Id. at ¶42.  In addition to this generalized complaint that does not state any particular defect, there are no specific facts in the Complaint supporting the claim that such notice was given to Samsung beginning as early as 2006.

The Complaint next points to a BBC television program that aired in 2008 and focused upon a model of Samsung refrigerator that was sold in the United Kingdom but not in North America, model RS21.  Id. at ¶44.  The Complaint does not allege, however, that the RS21 was ever sold in the United States, nor does the Complaint allege that the design of the RS21 is identical or even similar to the refrigerators purchased by the plaintiffs or to the other models referenced in the Complaint.  Id.  Additionally, the BBC program was first broadcast after the plaintiffs purchased their refrigerators.  Id.

Finally, the Complaint points to 11 random posts to a consumer affairs website.  These posts were made in 2009 and 2010, well after each putative class representative purchased his or her refrigerator.  Id. at ¶45.  Only one of the 11

posts (Kenneth of Memphis) involves one of the models specifically referenced in the Complaint.  Id.  Five of the posts (Richard of Macon, Annette of Pacifica, Fatima of Farmington, Cynthia of Visalia and Charles of Ozark) do not reflect that a complaint was actually made to Samsung.  One of the posts (Ashley of Wanette) claims that a contact was made to Samsung, but the alleged contact date (7/10/2007) predates when the customer allegedly noticed a problem (6/25/2008). Another post (Cynthia of Visalia) does not even reference Samsung or a Samsung refrigerator.  All of the complaints appear to have occurred after the sale of the refrigerators to the putative class members.  Not one of the complainants is a New Jersey resident.  Id.

In addition to making the unsubstantiated claim that Samsung was aware of the alleged defect, the Complaint then alleges that Samsung failed to disclose to its customers that the alleged defect existed and misrepresented that the refrigerators were free from defects.  Id. at ¶¶52, 53.  Here again, the Complaint provides no factual support for these allegations.  Similarly, the Complaint also alleges that Samsung fraudulently concealed the defect from the plaintiffs and its other customers, but fails to provide particular facts to support this claim.  In fact, the Complaint highlights its own shortcomings through its inability to particularize the "when, where, how and why" of the allegations.  Id. at ¶61.

Lastly, the Complaint makes the bald allegation that "New Jersey is the State from which SEA's misconduct emanated," and further claims that a "nondisclosure scheme was orchestrated from the location of its present headquarters in New Jersey." Id. at ¶66(h). However, similar to other allegations in the Complaint, there is absolutely no factual support for these allegations.

## ARGUMENT

### I.    LEGAL STANDARD ON MOTION TO DISMISS

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) when a plaintiff does not allege facts sufficient to prove a "plausible claim for relief." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868, 884-85 (2009). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) may be granted if, after accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which its rests. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929, 940 (2007). Also, while "courts must accept all well-pleaded allegations in a complaint as true and draw all reasonable inferences in favor of the non-moving party," Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90, 96 (1974), abrogated on other grounds, Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982), they are not required to credit bald

assertions or legal conclusions improperly alleged in the complaint. Ashcroft, 129 S. Ct. at 1950, 173 L. Ed. 2d at 884-85 ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, a complaint must set forth sufficiently detailed factual allegations which "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65, 167 L. Ed. 2d at 940.

## II.   PLAINTIFFS' CLAIM UNDER THE NJCFA SHOULD BE DISMISSED

Plaintiffs' NJCFA claim must fail because under New Jersey's choice of law principles, New Jersey does not have the most significant relationship to the claims asserted by the plaintiffs. Instead, the state in which each plaintiff resides has the most significant relationship and holds the most significant interest in that plaintiff's consumer protection claims. Therefore, the consumer protection statute of each plaintiff's home state should govern his or her particular claim.

### A.   CHOICE OF LAW ANALYSIS AT THE MOTION TO DISMISS PHASE IS APPROPRIATE IN THIS CASE

Courts in this District have found it appropriate to perform a choice of law analysis at the motion to dismiss stage. See, e.g., Cooper v. Samsung Elecs. Am., Inc., 2008 U.S. Dist. LEXIS 75810, 67 U.C.C. Rep. Serv. 2d (Callaghan) 167 (D.N.J. Sept. 30, 2008), aff'd, 374 F. App'x 250 (3d Cir 2010); Crete v. Resort Condominiums, Int'l, LLC, 2011 U.S. Dist. LEXIS 14719, *15-16 (D.N.J. Feb. 14,

- 13 -

2011); Nikolin v. Samsung Elecs. America, Inc., 2010 U.S. Dist. LEXIS 110942 (D.N.J. Oct. 18, 2010); Knox v. Samsung Elecs. America, Inc., 2009 U.S. Dist. LEXIS 53685 (D.N.J. June 24, 2009). Inasmuch as all allegations will be viewed in the light most favorable to the plaintiffs, there is no reason to delay such a determination until after discovery is conducted. See Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 512 (D.N.J. 2008). The facts set forth in the Complaint provide sufficient basis to make the determination presently. Indeed, in Cooper, the United States Court of Appeals for the Third Circuit specifically rejected the argument that a choice of law analysis had to await discovery and the class certification stage of litigation. 374 F. App'x at 255 n.5. Furthermore, as a practical matter, conducting this analysis at the outset of the litigation will potentially result in the dismissal of improper claims without forcing the parties and the court to devote significant resources to these claims.[3] Accordingly, there is

---

[3] Although the foregoing cases have generally involved circumstances in which there was one out-of-state plaintiff, there is no reason not to perform the same analysis at the motion to dismiss stage in this case where there are three out-of-state plaintiffs who have alleged no significant relationship to New Jersey. In fact, courts in other Districts have done just that. For instance, in Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc., 710 F. Supp. 2d 458 (D. Del. May 6, 2010), the District Court of Delaware conducted a choice of law analysis at the motion to dismiss stage of a class action when plaintiffs from Pennsylvania, New York and Michigan made claims against a Delaware defendant; see also Berry v. Budget Rent A Car Systems, Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (granting motion to dismiss and holding that, with regard to NJCFA claim brought by Florida and North Carolina residents who rented vehicles in their own states, the law of each plaintiff's home state applied, as "[n]o additional evidence is

no reason for the court to delay making such a determination at the motion to dismiss stage.

**B.    UNDER THE MOST SIGNIFICANT RELATIONSHIP TEST, THE LAW OF THE PLAINTIFFS' HOME STATES SHOULD APPLY**

It is well accepted that a federal district court sitting in diversity must apply the forum state's choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97, 61 S. Ct. 1020, 1021-22, 85 L. Ed. 1477, 1480-81 (1941); Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co., 960 F.2d 377, 379 (3d Cir. 1992). In conducting a choice of law analysis, New Jersey now employs the "most significant relationship" test. P.V. v. Camp Jaycee, 197 N.J. 132, 155, 962 A.2d 453, 467-68 (N.J. 2008) ("In balancing the relevant elements of the most significant relationship test, we seek to apply the law of the state that has the strongest connection to the case.").

The most significant relationship test consists of two prongs. The first prong is to determine whether an "actual conflict" exists between New Jersey law and the law of the plaintiff's home state. If no actual conflict exists, the inquiry is over and New Jersey law would apply. If, however, an actual conflict exists, the second

_____

necessary to answer this choice of law question, so additional discovery will not be of assistance to the parties."); Elvig v. Nintendo of Am., Inc., 696 F. Supp. 2d. 1207 (D. Col. 2010) (conducting a choice of law analysis at the motion to dismiss stage in a case involving plaintiffs who are from multiple states and concluding that the law of each plaintiff's home state applies).

prong requires a court to weigh the factors enumerated in the Restatement section corresponding to the plaintiff's causes of action.  See, e.g., Nafar v. Hollywood Tanning Sys., 339 F. App'x 216, 220 (3d Cir. 2009) (citing Agostino v. Quest Diagnostics, Inc., 256 F.R.D. 437, 461-62 (D.N.J. 2009) ("Agostino I").  Where tort claims such as consumer fraud are involved, a court must look to § 148 of the Restatement  (Second) Conflict of Laws for the second prong of the choice of law analysis.[4]  See Agostino I, 256 F.R.D. at 462 (§ 148 of the Restatement governs

---

[4] § 148 provides the following:

(1)  When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

(2)  When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider each of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

   a.  the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
   b.  the place where the plaintiff received the representations,
   c.  the place where the defendant made the representations,

choice of law analysis for consumer fraud claims); <u>Arcand v. Brother Int'l Corp.</u>, 673 F. Supp. 2d 282, 293-94 (D.N.J. 2009) (Restatement § 148 applies to knowing omissions under the NJCFA).

      i.    **Prong 1 – Actual conflicts exist between New Jersey law and the laws of each plaintiff's home state**

Weske alleges that he is a resident of Minnesota. Minnesota's consumer protection statute is the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. §325F.69, <u>et seq.</u> Under the MCFA, a plaintiff must show reliance in order to state a cause of action. <u>Certified Question United States Dist. Court Order v. Philip Morris</u>, 621 N.W.2d 2, 13 (Minn. 2001) (requiring reliance where "the plaintiffs allege that their damages were caused by deceptive, misleading, or fraudulent statements or conduct in violation of the misrepresentation in sales laws"); <u>see also</u> <u>Tuttle v. Lorillard Tobacco Co.</u>, 377 F.3d 917, 927 (8th Cir. 2004) (applying Minnesota law) (holding that a plaintiff must "establish some proof that the [defendants' conduct] caused consumers to continue using smokeless tobacco and to sustain physical injury in reliance on the defendants' conduct."). Intent is also

---

      d.  the domicil, residence, nationality, place of incorporation and place of business of the parties,

      e.  the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

      f.  the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148.

required under the MCFA.  Swift & Co. v. Elias Farms, Inc., 539 F.3d 849, 855-856 (8th Cir. 2008) (applying Minnesota law) (MCFA requires "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise.").  The MCFA has no provision for treble damages, but does require all claims brought by private individuals to be brought for a public purpose under a "private attorneys general" theory.  Ly v. Nystrom, 615 N.W.2d 302, 311 (Minn. 2000).

Frager alleges that she is a resident of Ohio.  Under the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. Ann. §1345.01, et seq., a plaintiff may only bring a class action if the complained of act was previously declared deceptive or unconscionable by rule or by a state court prior to the commission of the act.  O.R.C. Ann. §1345.09(B).  Failure to plead that an act was previously declared deceptive is fatal to a class action brought under the OCSPA.  Johnson v. Microsoft, 802 N.E.2d 712, 720 (Ohio App. 2003), aff'd, 834 N.E.2d 791 (Ohio 2005).  Treble damages are not available in class actions brought under the OCSPA.  O.R.C. Ann. §1345.09(B).

Myhre alleges that he is a resident of Washington.  Similar to the Minnesota statute, a plaintiff must show reliance in order to bring a claim under the Washington Consumer Protection Act ("WCPA"), Rev. Code Wash. §19.86, et seq.

Robinson v. Avis Rent a Car Sys., 22 P.3d 818, 823 (Wash. App. 2001).
Washington will not apply the WCPA to claims brought by out-of-state plaintiffs
against an entity based in Washington. Schnall v. AT&T Wireless Servs., Inc., 225
P.3d 929, 939 (Wash. 2010) (stating that "[s]tate consumer fraud acts are designed
to either protect state residents or protect consumers engaged in transactions within
the state."). Treble damages and attorneys' fees are discretionary under the WCPA,
and the WCPA also caps damages in private actions at $25,000. Rev. Code Wash.
§19.86.090. The WCPA also views plaintiffs as "private attorneys general" who
only have standing to bring suit if the action has a "public interest impact."
Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 719 P.2d 531, 535
(Wash. 1986).

New Jersey does not require reliance to bring a claim under the NJCFA,
placing New Jersey law squarely at odds with Minnesota and Washington law.
New Jersey also has no intent element, which is required in Minnesota. Treble
damages are mandatory under New Jersey law unlike each of plaintiffs' home
states. N.J.S.A. 56:8-2. New Jersey places no cap on recovery under the NJCFA
in contrast to Washington law and has no requirement that an action be previously
declared deceptive or unconscionable in contrast to Ohio law. Finally, unlike
Minnesota and Washington law, New Jersey law does not require that an action
brought under the NJCFA be shown to have a public interest impact.

Inasmuch as actual conflicts exist between the NJCFA and the consumer protection statutes of each plaintiff's home state, the court must proceed to the second prong of the most significant relationship test. <u>See generally</u> <u>Debrah F. Fink, D.M.D., MS, PC v. Ricoh Corp.</u>, 365 N.J. Super. 520, 574-84, 839 A.2d 942, 977-82 (N.J. Law Div. 2003) (discussing the "numerous" differences between NJCFA and consumer fraud statutes of twenty-four (24) states).

> **ii.   Prong 2 – Each plaintiff's home state has the most significant interest in having its laws apply to that plaintiff's consumer fraud claims**

For consumer fraud claims, the second prong of the most significant interest test requires the court to weigh the factors enumerated in the Restatement § 148, which includes, among other things, where the false representations were made and where each plaintiff's actions in reliance on such false representations took place. Restatement (Second) Conflict of Laws § 148. In this case, the Complaint is clear that each plaintiff purchased his or her refrigerator in his or her home state, from a retailer in his or her home state, for use in his or her home state. Complaint at ¶¶12-14. Additionally, the alleged defect manifested itself in the state where each plaintiff resides. <u>Id.</u> Furthermore, although the Complaint identifies allegedly false advertising,[5] it is glaring that none of the plaintiffs allege that he or she

---

[5] Again, the Complaint refers to the following Samsung advertising: "a unique patented 'TWIN Cooling System'$^{TM}$ that offers advanced cooling technology" that "delivers uncompromised freshness in both the freezer and refrigerator

reviewed and/or relied upon the marketing material referenced in the Complaint or any other advertising or written material concerning the products. In fact, they could not have, since the marketing materials attached to the Complaint did not become available until 2010.

Thus, the alleged false representation is limited to Samsung's purported failure to disclose the alleged defect at the point of sale, which act occurred in each plaintiff's home state. Each plaintiff's actions in reliance on this alleged false representation also took place in his or her home state. Under such circumstances, § 148(1) applies. See, e.g., Laney v. Am. Standard Co., 2010 U.S. Dist. LEXIS 100129 (D.N.J. Sept. 23, 2010) (applying § 148(1) when plaintiff purchased a toilet in Texas for use in Texas and the manufacturer of the toilet was headquartered in New Jersey); Agostino I, 256 F.R.D. at 463 (applying § 148(1) when plaintiffs received bills and dunning demands in their home states, but the conduct emanated from the defendant's office in New Jersey).

### a.    Section 148(1) Analysis

Initially, under § 148(1), if the alleged fraudulent statement and plaintiff's reliance thereon occur in the same state, then a presumption arises in favor of that

---

compartments by circulating cold air with individual fans," and offers "professional grade cooling." However, the Complaint fails to specifically explain how the advertising is, in fact, false. Further, other than being descriptive of how parts function, the identified advertising is at most an example of classic non-actionable opinion or sales talk ("puffery"). See Rodio v. Smith, 123 N.J. 345, 352, 587 A.2d 621, 624 (N.J. 1991).

state's law.  See Agostino I, 256 F.R.D. at 463; see also Nafar, 339 F. App'x at 221

(citing Agostino I with approval); Restatement (Second) of Conflicts of Law §

148(1), cmt. d ("the state selected by application of the rule of subsection (1) will

usually be the state of dominant interest, since the two principal elements of the

tort, namely, conduct and loss, occurred within its territory.").  This presumption

can only be overcome if it is outweighed by the five principles outlined in § 6 of

the Restatement (Second) of Conflicts of Law.[6]  The application of these principles

was explained in Agostino I, which determined that the presumption was not

overcome under circumstances similar to this matter.  256 F.R.D. at 463.

In Agostino I, the court found a strong presumption that the law of each

plaintiff's home state should apply despite the fact that the defendant was

headquartered in New Jersey.  In so doing, the court relied on the fact that the

alleged illegal billing practices were directed at each plaintiff's home state, each

plaintiff received bills and dunning demands in his or her home state, and each

plaintiff made payment from his or her respective home state.   Under these

circumstances, the court found that "none of the [§ 6] factors suffice to rebut the

presumption that the state in which each plaintiff resides has the most significant

---

[6] The five principles set forth in § 6 are "(1) interstate comity, (2) the interests of
the parties, (3) the interests underlying the substantive body of law, (4) the interests
of judicial administration, and (5) the competing interest of the states."  Agostino I,
256 F.R.D. at 463 (quoting Erny v. Estate of Merola, 171 N.J. 86, 101-02, 792
A.2d 1208, 1217 (N.J. 2002)).

- 22 -

relationship with the parties and the issues related to each plaintiff's consumer fraud claims" and thus applied the consumer fraud statutes of each plaintiff's home state. Id.

Here, as described above, each plaintiff purchased his or her Samsung refrigerator in his or her home state from a local retailer for use in his or her home state. Even viewing the facts in a light most favorable to the plaintiffs, they have merely alleged that material information was withheld from them at the time and point of purchase in their home states. All facts related to where the alleged misrepresentations or nondisclosures were made, received and relied upon point to plaintiffs' respective home states. So too, in this case, even assuming the far-fetched and unsupported claim that Samsung made the decision in New Jersey not to disclose information about the alleged defect with the refrigerators, the actual failure to disclose the information occurred in each of the states in which the sale occurred. As such, a presumption arises in favor of applying the law of each plaintiff's home state. See Agostino I, 256 F.R.D. at 463; Agostino v. Quest Diagnostics Inc., 2010 U.S. Dist. LEXIS 135310, *18 (D.N.J. Dec. 22, 2010) ("Agostino II") (reaffirming the holding of Agostino I and clarifying that, even if emanating from New Jersey, "the allegedly false representations were made in each destination state.").

Moreover, as was the case in <u>Agostino I</u>, none of the § 6 factors overcomes the presumption that the state of each plaintiff's residence and where the alleged misrepresentation took place is the state with the most significant interest in the outcome of the matter. 256 F.R.D. at 463; <u>see also</u> <u>Cooper</u>, 2008 U.S. Dist. LEXIS 75810 at *22 (finding that "all of the consumer contacts . . . demonstrate a firm connection to applying the consumer-protection policies" of the plaintiff's home state). Based on the foregoing, the laws of each plaintiff's home state should apply.

### b.    Section 148(2) Analysis

While Samsung believes that a § 148(2) analysis is unnecessary here, such analysis yields the same result -- the laws of each plaintiff's home state should apply.  First, "[t]he domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant." Restatement (Second) Conflict of Laws § 148, cmt. i.  Second, the state in which a plaintiff acted in reliance "will usually be the state of the applicable law, with respect to most issues, if (a) the defendant's representations were received by the plaintiff in this state, or (b) this state is the state of the plaintiff's domicil or principal place of business."  <u>Id.</u> at cmt. j.  As outlined above, plaintiffs have merely alleged that SEA's corporate headquarters is located in New Jersey and, without alleging any factual basis to support such a claim, allege that concealment of information by Samsung occurred in New Jersey.  Every other contact is

centered in the home state of each plaintiff.    Accordingly, the law of each plaintiff's home state should apply to his or her claims under a § 148(2) analysis as well.

Plaintiffs may urge this Court to follow In re Tele Aid, 257 F.R.D. 46 (D.N.J. Apr. 27, 2009), to find that business and marketing decisions emanating from a corporation's New Jersey headquarters dominate a § 148 analysis. However, the majority of recent decisions have eschewed this notion and suggest that In re Tele Aid stands alone and overstates New Jersey's interest in applying the NJCFA to protect out-of-state plaintiffs in cases involving out-of-state consumer transactions.    See, e.g., Cooper, 374 Fed. App'x at 255 ("The transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters"); Nafar, 339 F. App'x at 220 (citing favorably to the choice of law analysis conducted in Agostino I and holding that the law of each plaintiff's home state should apply when the only contact to New Jersey was the allegation that deceptive billing practices emanated from New Jersey); Crete, 2011 U.S. Dist. LEXIS 14719 at *15-16 (dismissing NJCFA claim where only New Jersey nexus was defendant's place of business and interpreting Cooper as "explicitly rul[ing] that a claim should not survive where its only connection to a state is the location of a defendant"); Knox, 2009 U.S. Dist. LEXIS 53685 at *10-11 ("Although it is true that New Jersey seeks to prevent its corporations from defrauding out-of-state

consumers, it is not clear to this Court that New Jersey intended out-of-state consumers to engage in end runs around local law in order to avail themselves of collective and class remedies that those states deny"); Laney, 2010 U.S. Dist. LEXIS 100129 at *68 (declining to follow In re Tele Aid in finding that "New Jersey has no interest in compensating residents that live in other states for consumer fraud"); see also Agostino II, 2010 U.S. Dist. LEXIS 135310 at *29 ("In short, the Court is not satisfied that New Jersey's interest in deterring certain conduct by its home state businesses, as reflected in the enactment of the Consumer Fraud Act, warrants a practically willy nilly imposition of New Jersey law nationwide in disregard of the laws of other jurisdictions and the potential consequences of the blanket application of one state's laws to individual claimants.").

### III. THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE CONSUMER PROTECTION STATUTES OF EACH PLAINTIFF'S HOME STATE

#### A. Weske (Minnesota)

As set forth above, the MCFA requires that a plaintiff allege reliance upon an alleged misrepresentation. Philip Morris, 621 N.W.2d at 13. Intent is also a necessary element of a claim under the MCFA. Swift, 539 F.3d at 855-56. Further, the MCFA treats plaintiffs as "private attorneys general" and requires that a plaintiff allege a MCFA claim is brought for a "public purpose" to have standing

to sue under that statute. <u>Ly</u>, 615 N.W.2d at 311-13. Here, Weske fails to allege in the Complaint that he relied upon any of the alleged misrepresentations by Samsung in purchasing his refrigerator or that Samsung intended to misrepresent facts. Additionally, Weske does not allege that he has brought this suit for a "public purpose." Accordingly, Weske has failed to state a claim under the MCFA and dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate.

### B.    Frager (Ohio)

To bring a class action under the OCSPA, a plaintiff must plead that the complained of act was previously declared deceptive or unconscionable by rule or by a state court prior to the commission of the act. O.R.C. Ann. §1345.09(B); <u>Johnson</u>, 802 N.E.2d at 720. Here, Frager does not allege (nor can he) that any act by Samsung was previously declared deceptive or unconscionable. As such an allegation is a prerequisite to class action treatment under the OCSPA, its absence requires dismissal under Fed. R. Civ. P. 12(b)(6).

### C.    Myhre (Washington)

The WCPA also requires that a plaintiff plead reliance upon an alleged misrepresentation. <u>Robinson</u>, 22 P.3d at 823. Like the MCFA, the WCPA views private plaintiffs as "private attorneys general" and provides that private individuals can only bring a cause of action under the WCPA if it has a "public interest impact." <u>Hangman Ridge</u>, 719 P.2d at 535. In order to show that an action

has a "public interest impact" a plaintiff must allege "1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition." Anhold v. Daniels, 614 P.2d 184, 188 (Wash. 1980).    Here, Myhre has failed to allege reliance upon any alleged misrepresentation by Samsung in purchasing his refrigerator.  Likewise, Myhre has not alleged facts sufficient to show the "public interest impact" required for bringing a claim under the WCPA as explained in Anhold.  Without alleging facts sufficient to establish these two elements, Myhre has failed to state a cause of action under the WCPA.  Dismissal under Fed. R. Civ. P. 12(b)(6) is therefore warranted.

## IV.   EVEN IF PLAINTIFFS COULD BRING A CLAIM UNDER THE NJCFA, THE CLAIM SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6) AND FED. R. CIV. P. 9(b)

### A.   DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6)

Even if this Court were to determine that the NJCFA applies, plaintiffs' cause of action still warrants dismissal pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiffs cannot demonstrate an "ascertainable loss" under the NJCFA.    See Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557, 964 A.2d 741, 749 (N.J. 2009).  Plaintiffs' NJCFA claim is principally premised upon Samsung's purported

- 28 -

failure to disclose, or its alleged suppression or omission of, the "fact" that parts in the refrigerators may breakdown after the warranty period. New Jersey has specifically rejected this theory as a basis for recovery under the NJCFA.

The New Jersey Consumer Fraud Act makes it unlawful for any person to employ an "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intention that others rely upon such concealment, suppression, or omission in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. 56:8-2. Under the NJCFA, a plaintiff must allege "1) unlawful conduct by the defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland, 197 N.J. at 557, 964 A.2d at 749. Unlawful conduct or practices fall into three general categories: affirmative acts, knowing omissions and regulatory violations. Cox v. Sears Roebuck & Co., 138 N.J. 2, 17, 647 A.2d 454, 462 (N.J. 1994).

In Perkins v. DaimlerChrysler Corp., 383 N.J. Super. 99, 890 A.2d 997 (N.J. App. Div. 2006), the plaintiff alleged that the defendant motor vehicle manufacturer violated the NJCFA because it manufactured the subject vehicle with a tubular steel exhaust manifold allegedly susceptible to cracking and premature failure. The allegation was not that the part failed within the warranty, but that it

was unlikely to last for the purported industry standard of 250,000 miles, which was well beyond the warranty period.  The Appellate Division affirmed the trial court's dismissal, holding that to adopt plaintiff's theory would be tantamount to allowing the application of the NJCFA to prolong a product's warranty.  383 N.J. Super. at 113, 890 A.2d at 1005.  The Perkins court specifically stated that "[a] defendant cannot be found to have violated the CFA when it provided a part -- alleged to be substandard -- that outperforms the warranty provided."  383 N.J. Super. at 112, 890 A.2d at 1004.

Similarly, other "[c]ourts in New Jersey have held that where a [product] component has outperformed the warranty period, the plaintiff cannot meet the pleading requirements for an 'ascertainable loss.'"  Nobile v. Ford Motor Co., 2011 U.S. Dist. LEXIS 26766, *15-16 (D.N.J. Mar. 14, 2011); see also Noble v. Porsche Cars N. Am., 694 F. Supp. 2d 333, 337 (D.N.J. 2010); Duffy v. Samsung Elecs. Am., Inc., 2007 U.S. Dist. LEXIS 14792, *23 (D.N.J. Mar. 2, 2007) ("[B]ecause plaintiff's microwave continued to perform beyond the period in which Samsung was contractually bound to repair or replace any defective part, Plaintiff cannot maintain a CFA claim.  To recognize Plaintiff's claim would essentially extend the warranty period beyond that to which the parties agreed.").  Further, an allegation that a defendant concealed defects does not help to establish an ascertainable loss.

- 30 -

See Nobile, 2011 U.S. Dist. LEXIS 26766 at *16; Noble, 694 F. Supp. 2d at 337; Duffy, 2007 U.S. Dist. LEXIS 14792 at *23.

Here, (as discussed in greater detail below), the alleged defect in plaintiffs' refrigerators did not manifest itself until after the one year limited warranty period. Since the refrigerators "outperformed the warranty period, plaintiffs cannot meet the pleading requirements for an 'ascertainable loss.'" Nobile, 2011 U.S. Dist. LEXIS 26766 at *15-16; Noble, 694 F. Supp. 2d at 337; Duffy, 2007 U.S. Dist. LEXIS 14792 at *21-23. As such, dismissal of plaintiffs' NJCFA claim is appropriate.

Additionally, the fact that none of the putative class representatives reviewed or relied on the marketing material referenced in the Complaint means that they cannot show that the allegedly false advertising proximately caused their alleged loss. Even under the NJCFA, a plaintiff must demonstrate that his or her ascertainable loss was "attributable to conduct made unlawful by the [Act]." Thiedemann v. Mercedes-Benz USA LLC, 183 N.J. 234, 246, 872 A.2d 783, 791 (N.J. 2005) (citing Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 472-73, 541 A.2d 1063, 1067 (N.J. 1988)).

Accordingly, since plaintiffs' refrigerators outperformed the warranty period, plaintiffs cannot demonstrate an ascertainable loss under the NJCFA. Similarly, because plaintiffs cannot show that the allegedly false advertising proximately

caused their alleged loss, they cannot show that an ascertainable loss was attributable to the allegedly unlawful conduct. As a result, their claim is subject to immediate dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## B.   DISMISSAL PURSUANT TO FED. R. CIV. P. 9(b)

Alternatively, the Complaint is further subject to dismissal pursuant to Federal Rule of Civil Procedure 9(b), which imposes a heightened pleading requirement with respect to allegations of fraud, independent of the standard applicable to a Rule 12(b)(6) motion. Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007); see also Board of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 173 n.10 (3d Cir. 2002). Additionally, the allegations must state "who made a misrepresentation to whom and the general content of the misrepresentation." Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004). It is well settled that the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to claims under the NJCFA as well as claims of common law fraud. Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 500 (D.N.J.

2009); see also Naporano Iron & Metal Co. v. Am. Crane Co., 79 F. Supp. 2d 494, 510 (D.N.J. 2000).

Plaintiffs' Complaint purports to allege unlawful conduct on the part of Samsung, but in actuality provides nothing more than conclusory and self-serving statements in a transparent attempt to satisfy Rule 9(b)'s heightened pleading requirements. The Complaint fails to provide facts to support the allegations that Samsung "made uniform and material misrepresentations and uniformly concealed material information in its marketing, advertising and sale of the Refrigerators" or otherwise "made uniform written misrepresentations to and/or uniformly concealed from Plaintiffs and everyone in the chain of distribution the defects in the Refrigerators." Complaint at ¶6. The Complaint offers absolutely no factual basis for the particularly inflammatory allegation found in paragraph 66(h) that SEA engaged in a "nondisclosure scheme" that "was orchestrated from the location of its present headquarters in New Jersey." Id. at ¶66(h).

In fact, the Complaint does not even set forth facts that show that Samsung was aware of the alleged defect so as to even raise an inference that Samsung could have concealed information. Again, while plaintiffs attempt to imply that Samsung became aware of the alleged defect as early as 2006, this allegation is not factually supported anywhere in the Complaint. There is no specificity as to who allegedly contacted Samsung, how the contacts were made, when the contacts occurred,

which Samsung refrigerators were identified or whether there was a complaint about frost and ice build up. Furthermore, plaintiffs' attempt to imply notice as early as 2006 is a sleight of hand. The Complaint merely states that "Samsung customers have indicated that beginning as early as 2006 they notified and complained to Samsung that their Refrigerator's interiors were warm and the food inside had become spoiled." Complaint at ¶41. Even accepting that such contacts occurred, this by no means is adequate to place Samsung on notice of an alleged defect. See Alban v. BMW of N. Am., LLC, 2011 U.S. Dist. LEXIS 26754, *31-32 (D.N.J. Mar. 15, 2011) ("Alban II") (noting that a plaintiff must sufficiently allege that a "manufacturer *knew with certainty* that the product at issue or one of its components was going to fail" and finding that allegations that "merely indicate that [the manufacturer] *might* have known of the defect" are insufficient to state a claim under the NJCFA) (emphasis in original).

The only other "facts" to which plaintiffs point are the 2008 BBC news report concerning RS21 (a different model sold in the United Kingdom) and 11 random posts to a consumer affairs website in 2009 and 2010. But these occurrences, when examined in context, fall well short of establishing any kind of notice. The Complaint does not allege that the RS21 was ever sold in the United States, nor does the Complaint allege that the design of the RS21 is identical or even similar to the refrigerators purchased by the plaintiffs or to the other models

referenced in the Complaint.  Additionally, the BBC television program aired *after* each plaintiff purchased his or her refrigerators, thereby also eliminating it as a source of prior notice of an alleged defect.  All 11 internet posts were made in 2009 and 2010, well after each plaintiff purchased his or her refrigerator.  Id. at ¶45.  Only one of these posts involves a model referenced in the Complaint.  Id. Indeed, the majority of the complaints do not allege that the customers actually contacted Samsung and, of the few that do, just one contact allegedly occurred after August 2009.  Furthermore, all of the online complaints appear to postdate the sale of the plaintiffs' refrigerators.

The Complaint also fails to set forth how Samsung's marketing and advertising was false and/or misleading.  The Complaint merely references a Samsung online brochure, which none of the plaintiffs claim to have seen and/or relied upon.  The Complaint does not correlate the online brochure to the particular Samsung refrigerators that the plaintiffs purchased.  The Complaint also fails to allege that any statements made in the online brochure are actually false.

In sum, plaintiffs have failed to allege with requisite specificity that Samsung violated the NJCFA.  The Complaint fails to provide legitimate factual support for the generalized allegations that Samsung knew, or had reason to know, or was even reckless in not knowing of an alleged defect with the plaintiffs' refrigerators.  Further, the Complaint fails to allege facts that support the

allegations that Samsung concealed, failed to disclose or misrepresented information. Dismissal pursuant to Fed. R. Civ. P. 9(b) is therefore warranted.

## V. PLAINTIFFS' CLAIM FOR FRAUDULENT CONCEALMENT SHOULD ALSO BE DISMISSED PURSUANT TO FED. R. CIV. P. 9(b)

Plaintiffs' cause of action for fraudulent concealment is ripe for dismissal pursuant to Rule 9(b) for the same reason. As with the NJCFA, a cause of action for fraudulent concealment requires that a plaintiff plead with heightened specificity. Fed. R. Civ. P. 9(b).

Plaintiffs' attempt to meet the requirements of Rule 9(b) with regard to their fraudulent concealment claim is nothing short of embarrassing. While making the pretense that plaintiffs are providing the "who, what, when, where, how and why," plaintiffs in fact provide no particulars whatsoever. Plaintiffs merely identify "Samsung" as the party responsible for the alleged fraudulent concealment and acknowledge that they have no names of persons responsible for the fraudulent concealment, no specific information explaining the alleged defect other than what generally may occur, no facts to support when Samsung first learned of the alleged defect, and no documentation showing where or how Samsung concealed information. Indeed, plaintiffs merely claim that "in every communication it had with Plaintiffs . . . Samsung concealed this material information by not disclosing

it to Plaintiffs," but have alleged nothing identifying any specific communication or even exactly what information was concealed.

Such allegations make no attempt whatsoever to comply with Rule 9(b)'s mandate that plaintiffs inject some measure of precision and substantiation into this claim. Seville Ind. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). Accordingly, plaintiffs' cause of action for fraudulent concealment also warrants dismissal.

## VI. PLAINTIFFS' CLAIM FOR BREACH OF IMPLIED WARRANTY SHOULD BE DISMISSED

Plaintiffs' cause of action for breach of implied warranty also fails to state a claim for which relief may be granted. In the case of plaintiffs Frager and Myhre, New Jersey's most significant relationship test results in the application of Ohio and Washington law. Inasmuch as both Ohio and Washington require privity in order to bring an implied warranty claim, Frager's and Myhre's claims must be dismissed because they lack such privity with Samsung. As for plaintiff Weske, whether Minnesota or New Jersey law is applied to his breach of implied warranty claim, the claim must fail because it is not alleged that the product failed within the warranty period as well as due to the stark absence of unconscionability.

As with the other causes of action, New Jersey's most significant relationship test must be applied to a choice of law analysis for breach of warranty. See Agostino I, 256 F.R.D. at 463; State Farm Mut. Auto. Ins. Co. v. Estate of

Simmons, 84 N.J. 28, 34, 417 A.2d 488, 491 (1980). Applying the first prong of the most significant relationship test, New Jersey law differs from Ohio and Washington law in that New Jersey law does not require privity of contract in breach of implied warranty claims. Compare Spring Motors Distribs. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660, 663 (N.J. 1985), with Pagan v. Stroh Brewery Co., 1991 Ohio App. LEXIS 2466, *5 (7th Dist. 1991), and Tex Enters. v. Brockway Standard, Inc., 66 P.3d 625, 630 (Wash. 2003).

Since there is a conflict between New Jersey law and the laws of Ohio and Washington, the second prong of the most significant relationship test requires the court to apply § 188 of the Restatement (Second) of Conflict of Laws. Harper v. LG Elec. USA, Inc., 595 F. Supp. 2d 486, 489 (D.N.J. 2009). In determining which state's law has the most significant relationship, the analysis under § 188 requires the court to consider: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties." Agostino I, 256 F.R.D. at 464; Restatement (Second) of Conflict of Laws § 188. Where plaintiffs allege that a defendant sold a product that was inherently defective, "the first four factors of the Section 188 analysis weigh heavily in applying the law of each plaintiff's home

state." Payne v. FujiFilm U.S.A., Inc., 2010 U.S. Dist. LEXIS 52808, *30 (D.N.J. May 28, 2010).

An application of the § 188 factors here points to an application of Ohio and Washington law. The place of contracting occurred at the point of sale -- Ohio for Frager and Washington for Myhre.   Complaint at ¶¶13, 14.   Likewise, any negotiation regarding the contract occurred at the point of sale. Id. Presumably, Frager and Myhre used their refrigerators in their residences, which means that factors 3 and 4 also point to the application of Ohio and Washington law. Id. The fifth factor also points to Ohio and Washington law, on the one hand, and to New Jersey law on the other.   Id. at ¶¶13-16.   However, the fact that a corporate defendant's headquarters are in one state has been found insufficient, without more, to establish that the state of the defendant's headquarters has the most significant relationship to every prospective class member's contract claims. See Payne, 2010 U.S. Dist. LEXIS 52808 at *30.  Accordingly, an application of the § 188 factors here requires the application of Ohio and Washington law as to Frager and Myhre's claims, respectively.

Since Frager purchased her refrigerator from a local retailer in Ohio, she was not in privity of contract with Samsung.   Accordingly, her breach of implied warranty claim must be dismissed under Fed. R. Civ. P. 12(b)(6). See Pagan, 1991 Ohio App. LEXIS 2466 at *5. Similarly, since Washington also requires privity of

contract to state a claim and Myhre purchased his refrigerator from a local retailer, his claim for breach of implied warranty must be dismissed under Fed. R. Civ. P. 12(b)(6). See Tex Enters., 66 P.3d at 630.

Since there is no actual conflict between New Jersey and Minnesota law, New Jersey law applies to Weske's claim of breach of implied warranty. Under New Jersey law, "[w]arranties whether express or implied shall be construed as consistent with each other." N.J.S.A. 12A:2-317; see also N.J. Transit Corp. v. Harsco, 497 F.3d 323, 330 (3d Cir. 2007) (holding that the petitioner could not "rely on the implied warranties of merchantability and fitness for a particular purpose to recover damages, where the contract's one-year express warranty had expired at the time of the loss."); Nobile, 2011 U.S. Dist. LEXIS 26766 at *11 (holding that N.J.S.A. 12A:2-317 limits any implied warranty to the terms of an express warranty). Accordingly, any implied warranties are coterminous with the express warranty on the product. Id. Here, the express warranty accompanying Weske's refrigerator was for one year. Weske purchased his refrigerator in December 2006 and did not experience the alleged defect until "the spring of 2009" -- approximately 2½ years later.[7]  Complaint at ¶12.  As the express warranty expired prior to Weske experiencing any alleged defect, any implied

---

[7] Although the warranty claims of Myhre and Frager should be disposed of under the laws of their home states, it is important to note that they also experienced the alleged defect outside of the warranty period.

warranties accompanying the refrigerator also expired. Moreover, the express warranty specifically disclaimed any implied warranties beyond the term of the express warranty. See Warranty, Ex. A to the O'Hara Aff. "It is fundamental that the court will not make a better contract for the parties than they have voluntarily made for themselves, nor will it alter their contract for the benefit or detriment of either, but will endeavor to give effect to their intention." Mack v. Revicki, 47 N.J. Super. 185, 193, 135 A.2d 569, 573 (N.J. App. Div. 1957); Cooper, 2008 U.S. Dist. LEXIS 75810 at *12 (court will apply plain meaning to the unambiguous language of a contract). Accordingly, Weske's breach of implied warranty claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs seek to avoid this result by alleging that the limitations of any implied warranty should not operate because it would be unreasonable and unconscionable.[8]  Complaint ¶ 121.  In this regard, there is no factual support in the Complaint for the claim that the one year warranty that accompanies Samsung's refrigerators is unreasonable or unconscionable and, therefore, unenforceable. Plaintiffs' attempt to predicate their claim of "unconscionability" on their

---

[8] Under New Jersey law, in determining whether a warranty is unconscionable, courts look to two factors: "1) unfairness in the formation of the contract, or procedural unconscionability, and 2) excessively disproportionate terms, or substantive unconscionability." Alban II, 2011 U.S. Dist. LEXIS 26754 at *25 (quoting Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564, 800 A.2d 915, 921 (N.J. Ch. Div. 2002)). Here, plaintiffs have not plead facts that would satisfy either factor.

allegations of fraudulent concealment.[9]  In other words, the plaintiffs seek to avoid

the one year limitation by alleging that Samsung failed to disclose information

about the potential defect at the time of sale.  A manufacturer's general awareness

that a machine part may fail at some point does not mean that the failure renders

the limitation of the warranty unconscionable.  In Abraham v. Volkswagen of Am.,

Inc., 795 F.2d 238 (2d Cir. 1986), the court addressed the assertion that an

automobile manufacturer's knowledge of the effective life of certain parts made the

warranty unreasonable.   The court noted that "[m]anufacturers always have

knowledge regarding the effective life of particular parts . . . A rule that would

make failure of a part actionable based on such 'knowledge' would render

meaningless . . . limitations in warranty coverage."  Id. at 250; see also Duquesne

v. Westinghouse Elec. Corp., 66 F.3d 604, 616 (3d Cir. 1995) (stating the "general

rule" that "an express warranty does not cover repairs made after the applicable

time has elapsed," regardless of whether the defect existed prior to the expiration

of the warranty).  Accordingly, even if Samsung knew that certain parts could fail

not long after the expiration of the warranty (which Samsung denies), the one year

limitation period is not unconscionable and should be enforced.   Id.; see also

---

[9] As previously discussed, plaintiffs' cause of action for fraudulent concealment
fails to meet the particularity requirements of Fed. R. Civ. P. 9(b).  Since the
plaintiffs' cause of action for breach of implied warranty is premised upon the
unsupported fraudulent concealment, this claim must also be dismissed as a matter
of law.

Nobile, 2011 U.S. Dist. LEXIS at *8-10 (dismissing breach of express and implied warranty claims because alleged defects occurred after the expiration of the manufacturer's warranty).

## VII.   PLAINTIFFS' CAUSE OF ACTION FOR UNJUST ENRICHMENT FAILS AS A MATTER OF LAW

In the Fourth Count of the Complaint, plaintiffs assert a cause of action for unjust enrichment.  Regardless of whether New Jersey law or the law of each plaintiff's home state applies, this cause of action should also be dismissed in accordance with Fed. R. Civ. P. 12(b)(6).

In the same manner as the other causes of action, plaintiffs' unjust enrichment claim is subject to a choice of law analysis under the Restatement's "most significant relationship" test. Camp Jaycee, 197 N.J. at 155, 962 A.2d at 467-68.  A review of the unjust enrichment laws of the relevant states reveals that there is very little distinction among them.[10]  Since the laws of the four states are

---

[10] In New Jersey, a plaintiff must allege: "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." Adamson v. Ortho-McNeil Pharmaceutical, Inc., 463 F. Supp. 2d 496, 504 (D.N.J. 2006); see also Wanaque Borough Sewerage Auth. v. Twp. of West Milford, 144 N.J. 564, 575, 677 A.2d 747, 752 (N.J. 1996).  Under Minnesota law, a plaintiff must allege "(1) a benefit conferred by the plaintiff on the defendant; (2) the defendant's knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit where it would be inequitable to retain it without paying for it." Christopher v. Hanson, 2010 U.S. Dist. LEXIS 77056 (D. Minn. May 24, 2010) (quoting Interboro Packaging Corp. v. City of Minneapolis, 2009 Minn. App. Unpub. LEXIS 1061 at *8 (Minn. App. Sept. 15, 2009).  Similarly, in Ohio, a plaintiff must claim that "(1)

indistinguishable, the Court can apply the law of the forum state, New Jersey. <u>See</u> <u>Elias v. Ungar's Food Prods., Inc.</u>, 252 F.R.D. 233, 246 (D.N.J. 2008).

Applying New Jersey law, it is clear that plaintiffs cannot maintain a claim based upon unjust enrichment. None of the plaintiffs can "show that [they] expected remuneration from the defendant at the time [they] performed or conferred a benefit on defendant and that failure of remuneration enriched defendant beyond its contractual rights." <u>VRG Corp. v. GKN Realty Corp.</u>, 135 N.J. 539, 554, 641 A.2d 519, 526 (N.J. 1994). Indeed, plaintiffs do not (nor could they reasonably) allege that they expected to receive remuneration as a result of purchasing a refrigerator. <u>See id.</u>; <u>In re Toshiba Am. HD DVD Marketing and</u> <u>Sales Practices Litig.</u>, 2009 U.S. Dist. LEXIS 82833, *14 (D.N.J. Sept. 11, 2009) (dismissing unjust enrichment claim where "[p]laintiffs paid for HD DVD Players capable of playing HD DVDs and that is exactly what they received."). Further, plaintiffs also cannot allege that Samsung was enriched beyond its contract rights. Since the alleged defects in plaintiffs' refrigerators did not manifest themselves

---

a benefit conferred by the plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." <u>Hambleton v.</u> <u>R.G. Barry Corp.</u>, 465 N.E.2d 1298, 1302 (Ohio 1984) (quoting <u>Hummel v.</u> <u>Hummel</u>, 14 N.E.2d 923, 925 (Ohio 1938)). Finally, Washington law requires that a plaintiff plead "(1) the defendant received a benefit; (2) the received benefit is at plaintiff's expense; and (3) the circumstances make it unjust for the defendant to retain a benefit without payment." <u>Young v. Young</u>, 191 P.3d 1258, 1262 (Wash. 2008).

until after the warranty expired, Samsung did not exceed its rights under the warranty and thus was not unjustly enriched. See Alban v. BMW of N. Am., LLC, 2010 U.S. Dist. LEXIS 94038, *38-39 (D.N.J. Sept. 8, 2010) ("Alban I") (dismissing unjust enrichment claim because, since plaintiff did not discover alleged defect during the warranty period, "BMW did not exceed its rights under the contract by refusing those repairs and was not unjustly enriched."). As such, plaintiffs' unjust enrichment claim must be dismissed.

Moreover, since none of the plaintiffs purchased their refrigerators directly from Samsung, plaintiffs cannot establish that they conferred a benefit directly on Samsung that Samsung retained.  In Cooper, the court held that although the plaintiff alleged that Samsung was unjustly enriched through the purchase of a Samsung television, since the plaintiff purchased the television from a retailer, "there was no relationship conferring any direct benefit on Samsung." Cooper, 2008 U.S. Dist. LEXIS 75810 at *30.  As a result, the court dismissed plaintiff's unjust enrichment claim. Id. at *30-31; see also Maniscalco, 627 F. Supp. 2d at 505-06 (dismissing unjust enrichment claim because plaintiff did not purchase product directly from defendant and thus did not directly confer a benefit upon defendant); Knox, 2009 U.S. Dist. LEXIS 53685 at *12-13 (finding that "[i]n the absence of a direct commercial relationship between Plaintiff and Defendant, this Court dismisses Plaintiff's unjust enrichment claim.").  Here, since the plaintiffs

- 45 -

did not purchase their refrigerators directly from Samsung, they did not confer a benefit on Samsung. Accordingly, plaintiffs' cause of action for unjust enrichment should be dismissed for this reason as well.[11]

---

[11] Samsung further notes that plaintiffs cannot maintain their unjust enrichment claim because New Jersey law does not recognize unjust enrichment as an independent tort cause of action. Mason v. Coca-Cola Co., 2010 U.S. Dist. LEXIS 65107, *23 (D.N.J. June 30, 2010); Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc., 2009 U.S. Dist. LEXIS 112773, *26-27 (D.N.J. December 3, 2009). As explained by the court in Mason, "where a plaintiff asserts an unjust enrichment cause of action along with tort claims and there appear to be no allegations that the plaintiff expected or anticipated remuneration from the defendant, the unjust enrichment claim should be dismissed." 2010 U.S. Dist. LEXIS 65107 at *23 (quoting Torres-Hernandez v. CVT Prepaid Solutions, Inc., 2008 U.S. Dist. LEXIS 105413, *25 (D.N.J. Dec. 9, 2008)). Since plaintiffs here assert tort claims along with their unjust enrichment claim, the latter is superfluous and should be dismissed. See id.; Blystra v. Fiber Tech Group, Inc., 407 F. Supp. 2d 636, 644 n.11 (D.N.J. 2005) (construing plaintiff's unjust enrichment claim "as subsumed by their other tort claims, and not as an independent cause of action.").

## CONCLUSION

For the foregoing reasons, defendants Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. respectfully request that their motion to dismiss plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b) be granted in its entirety.

Dated: April 4, 2011

/s/ James J. O'Hara
James J. O'Hara
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

Attorneys for Defendants
Samsung Electronics America, Inc.
and Samsung Electronics Company, Ltd.