James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
973.994.1700

J. Gordon Rudd, Jr.
David M. Cialkowski
**ZIMMERMAN REED, PLLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
612.341.0844

Jonathan D. Selbin
Jason L. Lichtman
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
212.355.9500

Christopher M. Placitella
Michael Coren
**COHEN PLACITELLAED ROTH, PC**
2001 Market Street, Suite 2900
Philadelphia, PA 19103
215.567.3500

Kristen Law Sagafi
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94114
415.956.1000

*Counsel for Plaintiffs*
(Additional Counsel on Signature Page)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JEFF WESKE, JO ANNA FRAGER, DARRYL MYHRE on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG ELECTRONICS CO., LTD., <br><br> Defendants. | Civil Action 10-4811 (WJM) (MF) <br><br><br> **AMENDED COMPLAINT and** <br> **DEMAND FOR JURY TRIAL** |

973089.1

## TABLE OF CONTENTS

I.      NATURE OF THE CLASS ACTION ................................................................ 1

II.     JURISDICTION AND VENUE ..................................................................... 2

III.    PARTIES ........................................................................................................ 3

        A.      Plaintiffs ........................................................................................... 3

        B.      Defendants ......................................................................................... 7

IV.     FACTUAL BACKGROUND ........................................................................ 8

        A.      Samsung's Reputation for Quality ................................................... 8

        B.      How Refrigerators Keep Food and Medicine Cool, and the Purpose
                of Refrigeration ................................................................................. 9

        C.      The Defect ........................................................................................ 11

        D.      The Problems Created by the Refrigeration Defect ....................... 12

        E.      Samsung's Response to the Refrigeration Defect ........................... 12

        F.      Samsung's Knowledge .................................................................... 13

        G.      Samsung's Fraudulent Conduct ...................................................... 16

V.      TOLLING ................................................................................................... 18

        A.      Discovery Rule ................................................................................ 18

        B.      Fraudulent Concealment ................................................................. 18

        C.      Estoppel ........................................................................................... 19

VI.     CLASS ACTION ALLEGATIONS ............................................................ 19

        B.      Numerosity / Impracticability of Joinder ....................................... 20

        C.      Commonality and Predominance ..................................................... 20

        D.      Typicality ........................................................................................ 21

        E.      Adequacy ......................................................................................... 21

        F.      Superiority ....................................................................................... 22

VII.    CLAIMS FOR RELIEF .............................................................................. 22

COUNT I  VIOLATIONS OF THE STATE CONSUMER PROTECTION LAWS (On Behalf of
the Proposed State Subclasses) ................................................................... 22

        COUNT II  FRAUDULENT CONCEALMENT / NONDISCLOSURE (On Behalf of the
Proposed Class) ............................................................................................ 25

        COUNT III  BREACH OF IMPLIED WARRANTIES (On Behalf of the Proposed State
Subclasses) .................................................................................................... 27

VIII.   PRAYER FOR RELIEF ............................................................................. 29

IX.     DEMAND FOR JURY TRIAL ................................................................... 30

Plaintiffs Jeff Weske, Jo Anna Frager, and Darryl Myhre, individually and on behalf of all others similarly situated in their respective states of residence, assert claims against Defendants for: (a) violations of their home state's consumer protection laws (Count I); (b) negligent misrepresentation (Count II); and breach of implied warranty (Count III).

## I.   NATURE OF THE CLASS ACTION

1.      The Defendants (collectively, "Samsung") sell refrigerators that fail to keep food cool ("Refrigerators"). While the Refrigerators appear to function properly when first purchased, in reality, they contain a design and/or manufacturing defect. This defect, present at the time of sale, prematurely renders the Refrigerators unable to perform their core task of keeping food and/or medicine cold (the "Refrigeration Defect" or the "Defect"). Samsung's Refrigerators thus have a much shorter useful life than reasonable consumers expect, than the industry standard, and than other refrigerators.

2.      More than 300 consumers have contacted the undersigned counsel – unsolicited – with complaints about their Refrigerators that appear to be related to the Defect.

3.      On information and belief, Samsung began marketing and selling the Refrigerators no later than June 2005.

4.      Less than a year following the introduction of the Refrigerators, consumers began calling Samsung to report the Refrigeration Defect. As a result of these calls, Samsung knew or should have known of the Defect by June 2006.

5.      The details of Samsung's response to all of these calls is within the exclusive control of Samsung. On information and belief, however, Samsung's response was no less than negligent because Samsung failed to warn future purchasers of the Refrigeration Defect and/or extend warranties on future Refrigerators to cover the (then known) Defect.

6.     While the Refrigeration Defect has caused hundreds of dollars of damage to each Plaintiff in parts, labor, and spoiled food, the Defect stems from a relatively inexpensive part: a faulty circuit board inside the Refrigerators.  Ex. A ("Silzars Decl.") at ¶¶ 9-12.

7.     The defective circuit board cannot be repaired by consumers or even a qualified service technician.  *Id*. at ¶ 11.

8.     Samsung continues to market and sell defective Refrigerators to this day.  Yet, Samsung has never disclosed the existence of the Defect and, when consumers call to report failures, does not disclose that the cause is a known defect.

9.     Plaintiffs bring this multistate class action on behalf of consumers in each of their respective states because Plaintiffs purchased refrigerators from Samsung that they never would have purchased (or would only have paid a substantially reduced price for) had they known of the Refrigeration Defect.  They bring this action, as well, to prevent Samsung from harming other consumers in their respective states.

## II.    JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and members of the Classes and Subclasses are citizens of states other than New Jersey, which is SEA's state of citizenship.

11.     This Court has personal jurisdiction over the parties because Defendants each conduct substantial business in New Jersey, have had systematic and continuous contacts with New Jersey, and have agents and representatives that can be found in New Jersey.

12.     Venue is proper in the District of New Jersey under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred and emanated out of this District.

Venue is also proper in the District of New Jersey because SEA transacts business and maintains its headquarters and principal place of business in Ridgefield Park, New Jersey.

## III.    PARTIES

### A.    Plaintiffs

#### 1.    Jeff Weske

13.    Jeff Weske ("Weske") resides in Cloquet, Minnesota.  In December 2006, he purchased a new Samsung Side-by-Side Refrigerator (model number RS263BBWP)[1] from a Best Buy store in Duluth, Minnesota.

14.    He purchased the refrigerator for $1300.

15.    At all times, Weske followed the use and care instructions that were included with his refrigerator.

16.    In the spring of 2009, Weske's refrigerator stopped cooling, destroying approximately $1,100 in groceries.  When Weske investigated the immediate cause of his problems, he discovered that the back of his refrigerator was covered with frost and ice.  He then unplugged his refrigerator to allow the frost to melt, but this was only a temporary solution;  over the summer and fall of 2009 the problem reoccurred several times.

17.    In the fall of 2009, Weske called Samsung's customer service line for help.  He was told that his refrigerator was out of warranty and, accordingly, that there was nothing that Samsung would do to help him.

---

[1] Samsung sells three types of refrigerators:  (1) "Side-by-Sides," all of which have two doors with a freezer on one side and a refrigerator on the other, and all of which begin with the designation "RS" in the model number; (2) "French Doors," all of which have a dual-door refrigerator on top and a single door freezer on the bottom, and all of which begin with the designation "RF" in the model number; and (3) "Bottom Freezers," all of which have a single door refrigerator on top and a single door freezer on the bottom, and all of which begin with the designation "RB" in the model number.

18.    That same fall, Weske contacted his local gas company, with whom he has a maintenance contract.  The company came and replaced several parts in Weske's refrigerator, but he continued to have the same cooling issues even after this was done.

19.    In 2010, Weske contacted some of the undersigned counsel.  He brings this action not only out of self-interest, but also with the goal of helping Minnesota citizens at large, as Samsung has concealed the Defect from the public at large.  In particular, he hopes that his efforts will assist many other Minnesota consumers who own Samsung Refrigerators, assist the many Minnesota consumers who will consider purchasing a Samsung Refrigerator in the future (as Samsung's deceptive conduct is ongoing), and discourage other companies from committing unfair and deceptive practices against Minnesota residents.

20.    Weske never would have purchased the refrigerator (or would have done so only at a reduced price) if Samsung had disclosed the existence of the Refrigeration Defect prior to his purchase.  Indeed, at the time of purchase, Weske relied on his reasonable understanding that Samsung Refrigerators did not have any defect that would cause them to stop cooling after only a few years of use.

**2.    JoAnna Frager**

21.    JoAnna Frager ("Frager") resides in resides in Montville, Ohio.  On February 14, 2008, she purchased a new Samsung French Door Refrigerator (model number RF266AASH) from a Lowe's store in Mentor, OH.

22.    She purchased the refrigerator for $1618.20, along with an extended warranty that Lowe's offered for $159.97.

23.    At all times, Frager followed the use and care instructions that were included with her refrigerator.

- 4 -

24.     In June 2010, her refrigerator stopped cooling, destroying approximately $340 in groceries.  She then contacted Lowe's, whose authorized repair company seemed aware of the issue prior to speaking with her.  The company suggested that her refrigerator had "frozen up" and that she should unplug it for a day or two.  She did this but it did not seem to fix the problem.  The number of the repair company is 440.478.9859.

25.     On June 25, 2010, a service representative came to her house (invoice #35976815) and replaced at least one part within her refrigerator.  This did not fix her problem, and about one month later, a representative returned (invoice #37328807) and replaced at least one additional part within her refrigerator.

26.     To this date, Frager's refrigerator does not function properly.

27.     In 2010, she contacted some of the undersigned counsel.  She brings this action not only out of self-interest, but also with the goal of helping Ohio citizens at large, as Samsung has concealed the Defect from the public at large.  In particular, she hopes that her efforts will assist many other Ohio consumers who own Samsung Refrigerators, assist the many Ohio consumers who will consider purchasing a Samsung Refrigerator in the future (as Samsung's deceptive conduct is ongoing), and discourage other companies from committing unfair and deceptive practices against Ohio residents.

28.     Frager never would have purchased the refrigerator (or would have done so only at a reduced price) if Samsung had disclosed the existence of the Refrigeration Defect prior to his purchase.  Indeed, at the time of purchase, she relied on her reasonable understanding that Samsung Refrigerators did not have any defect that would cause them to stop cooling after only two years of use.

29.     Even if the Refrigeration Defect had been disclosed after purchase, but any time prior to June 2010, Frager would not have suffered the same losses because she would have monitored the actual temperature of her refrigerator to prevent such extensive food spoilage. Indeed, at all times prior to the spring of 2009, Frager relied on her reasonable understanding that Samsung Refrigerators did not have any defect that would cause them to stop cooling after only two years of use.

### 3.     Darryl Myhre

30.     Darryl Myhre ("Myhre") resides in Bellevue, Washington.  In November 2007, he purchased a new Samsung Side-by-Side refrigerator (model number RS2630WW) from a Best Buy store in Tukwila, Washington.  He purchased the refrigerator for approximately $850.  Prior to his purchase, Myhre conducted research online and read reviews for different refrigerators. He purchased his Refrigerator in part because Samsung's refrigerators were represented as being reliable in those reviews.  Similarly, the salesperson at Best Buy represented that it was a good refrigerator. After the purchase, Myhre reviewed the use and care instructions carefully and made sure to follow the recommended upkeep.

31.     Prior to November 2008, before the warranty on his refrigerator expired, the temperature began to rise in the refrigerator.  Myhre first tried to turn down the temperature of the refrigerator without any success.  He then called Samsung to report his problem, but did not receive any response.  The warranty expired while he waited for that response.[2]

32.     Myhre ultimately contacted a service technician in late 2008 or early 2009.  The technician examined the refrigerator for $130 and recommended that Myhre order a new defrost heater.  The technician stated that he (the technician) had seen a similar problem with other

---

[2] The initial complaint contained an error, stating that Myhre's first failure happened in early "2010"; however, it should have said "2008."  Plaintiffs apologize for the initial error.

Samsung refrigerators and that even with the replaced defrost heater, there was no guarantee that the problem would not come back. The technician told Myhre that the problem was caused by a design error that was not easily fixed. After conducting more research online, Myhre purchased a new defrost heater for $130 and replaced the part.

33.    In late 2010, the refrigerator again stopped cooling. At this time, Myhre suffered approximately $250 in lost groceries. Myhre then felt forced to purchase a new refrigerator.

34.    When Myhre purchased his Samsung refrigerator, he expected it to last about 10 years, which was how long his previous refrigerators lasted. He never would have purchased the refrigerator (or would have done so only at a reduced price) if Samsung had disclosed the existence of the Refrigeration Defect prior to his purchase. Indeed, at the time of purchase, Meyer relied on his reasonable understanding that Samsung Refrigerators did not have any defect that would cause them to stop cooling after only a few years of use.

35.    In 2010, Myhre contacted some of the undersigned counsel. He brings this action not only out of self-interest, but also with the goal of helping Washington citizens at large, as Samsung has concealed the Defect from the public at large. In particular, he hopes that his efforts will assist many other Washington consumers who own Samsung Refrigerators, assist the many Washington consumers who will consider purchasing a Samsung Refrigerator in the future (as Samsung's deceptive conduct is ongoing), and discourage other companies from committing unfair and deceptive practices against Washington residents.

   **B.    Defendants**

      **1.    Samsung Electronics of America ("SEA")**

36.    Defendant SEA is incorporated in New York, with its principal place of business in Ridgefield Park, New Jersey. It conducts business throughout New Jersey, particularly in offices located in Mount Arlington, New Jersey and Piscataway, New Jersey. SEA manufactures

and sells consumer appliances, including the defective Refrigerators that are the subject of this action.

2. **Samsung Electronics Corporation ("SEC")**

37. Defendant SEC is a corporation formed under the laws of the Republic of Korea, with its principal offices in Seoul, South Korea.  SEC conducts substantial business operations from the SEA offices in Ridgefield Park, New Jersey, Mount Arlington, New Jersey, and Piscataway, New Jersey.

**IV.** **FACTUAL BACKGROUND**

**A.** **Samsung's Reputation for Quality**

38. Samsung is one of the world's leading manufacturers, designers, and marketers of refrigerators and other appliances.

39. On information and belief, Samsung has worked to earn a reputation for selling premium products, both through its marketing efforts and by manufacturing consistently high quality goods.  Consequently, consumers are frequently willing to pay more for Samsung products than for the products offered by competitors, even when those products have similar features.  Concomitantly, consumers have come to expect that Samsung-branded products will be of particularly high quality, durability, and reliability.

a. Among Samsung's products are high-end refrigerators, including the Refrigerators that are the subject of this lawsuit, defined below.  The Refrigerators are sold through major retail stores such as Best Buy and Home Depot, usually for between $800 and $3000.  On information and belief, this is a premium price; i.e., consumers pay more for Samsung's Refrigerators than for similarly-equipped refrigerators offered by other manufacturers.

      b.     Consumers reasonably believe that Samsung's Refrigerators are of premium quality.  In particular, on information and belief, the typical consumer reasonably believes that Samsung's Refrigerators will last for at least 10 years.

      c.     Ten years is the *shortest* usual life expectancy for a refrigerator.  *See* Ex. B (containing an industry trade publication).

**B.**    **How Refrigerators Keep Food and Medicine Cool, and the Purpose of Refrigeration**

40.     Refrigerators are designed to keep food and medicine at a reliably cool temperature, regardless of the surrounding climate.

41.     Refrigeration slows the activity of bacteria (which all food contains) so that food spoils more slowly.  For example, bacteria will spoil milk in two or three hours if the milk is left out on the kitchen counter at room temperature.  By reducing the temperature of the milk, however, it will stay fresh for a week or two.  Indeed, if the milk is frozen, bacteria will essentially stop; the milk will last for months (until effects such as freezer burn begin to spoil the milk in other ways).

42.     Refrigerators (and freezers) have five basic components that perform the task of refrigeration: a compressor, a condenser (this is typically a coiled set of pipes outside the cooled space), an expansion device, an evaporator (typically a coil of pipe inside or adjacent to the cooled space), and a refrigerant (a liquid that evaporates and condenses in the refrigerator to transfer heat from inside the cooled space to outside).  *See id.*; *see also* Ex. C ("Kittler Decl.") at ¶ 4.

43.     Generally speaking, refrigerators keep food cold by turning the refrigerant from liquid to gas and back.

a.    This process can be thought of as beginning when the compressor compresses refrigerant gas, which increases the pressure and the temperature of the refrigerant. Ex. C ("Kittler Decl.") at ¶ 4.

b.    The condenser then removes the heat from the refrigerant, which causes the refrigerant vapor to condense to a liquid.  *Id.*

c.    The now-liquid refrigerant is then injected through the expansion device into the evaporator.  *Id.*

d.    The expansion device serves as a gateway between the condenser, which is a high-pressure environment, and the evaporator, which is a low-pressure environment.  *Id.*  In the low-pressure environment of the evaporator, the refrigerant vaporizes immediately, absorbing heat from inside the refrigerator in the process.  *Id.*[3]

e.    To increase heat transfer, a fan typically circulates air over aluminum fins which are part of the evaporator.  *Id.* at ¶ 6.

44.    The last step in the above process, evaporation, takes place at a temperature far below the freezing point of water.  *Id.* at ¶ 7.  For this reason, moisture from the air that is attracted to the evaporator will freeze and can form frost and ice.  *Id.*  If enough ice accumulates, the transfer of heat stops, preventing proper refrigeration.  *See id.*  For this reason, most residential refrigerators use electric defrost heaters to prevent such accumulation.  *See id.*

45.    Samsung's Refrigerators operate on the above basic principles.

a.    There is, however, an important nuance; as with many high-end refrigerators, the entire cooling process is controlled by a central computer (the "control board"). *See* Ex. A ("Silzars Decl.") at ¶ 9.

---

[3] Broadly speaking, this is the same reaction that takes place when liquid nitrogen is exposed to the air; i.e., the vaporization of the nitrogen has a cooling effect.

       b.     In particular, the defrost cycle (which prevents the accumulation of ice) is controlled electronically by a combination of ambient temperature, number of door openings, and the door open time.  *See id.*  It controls this cycle based on the inputs that it receives from a variety of sensors throughout the refrigerator.  *See id.*

    **C.**    **The Defect**

46.    As a general matter, a properly designed refrigerator will perform its intended function (refrigeration) for no less than 10 years.  *See* Ex. B.

47.    Preliminary expert analysis has determined that the control board inside Samsung's Refrigerators was not designed and/or manufactured properly.  *See* Ex. A ("Silzars Decl.") at ¶¶ 9-11.  In particular, it does not properly operate the defrost cycle.  *See id.*

48.    Over time, this causes the condenser (where the coolant is transformed from liquid to gas) to develop an encasement of ice.  *See id.* at ¶ 6.

49.    When the condenser is covered in ice, it can no longer dissipate heat; i.e., it no longer allows the coolant to transform from liquid to gas.  *See* Ex. C ("Kittler Decl.") at ¶ 7.

50.    As explained above, the process of changing from liquid to gas and back again is the very mechanism by which refrigerators cool food and medicine.  In other words, when the condenser becomes covered in ice, the Refrigerators stop functioning.

51.    Compounding the problem, the Refrigerators' external temperature displays continue to indicate that it is cool, even though the inside is not.  This can mislead consumers into believing that the food or medications within the Refrigerators has been kept cool and is safe to eat or ingest.

52.    The Refrigeration Defect becomes apparent to consumers both inside and outside the warranty period.  It is not an issue of "wear-and-tear," but a defect that is present from the moment the Refrigerators are designed and/or manufactured.

**D.**    **The Problems Created by the Refrigeration Defect**

53.    Refrigerators that cannot keep food cool are unsuitable for their ordinary use. This is not the only problem created by the Defect, however.

54.    A refrigerator that unexpectedly rises to room temperature poses significant health risks to consumers.  As explained above, refrigeration drastically slows down the activity of the bacteria that is present in all food.  Many foods that would otherwise be safe to ingest for weeks will remain safe for mere hours when they are not refrigerated.

55.    The Refrigeration Defect is particularly dangerous because the outside temperature displays continue to indicate that food is cold.  A consumer (or a consumer's children) may not realize that the temperature inside the refrigerator has started to rise and, thus, may ingest unsafe food.  Indeed, it is plausible that this has happened and will continue to happen unless the Defect is fixed and/or consumers are alerted to its presence.

**E.**    **Samsung's Response to the Refrigeration Defect**

56.    Samsung does not fix the Defect, whether it manifests inside or outside of a consumer's warranty.

57.    When Refrigerators fail while under warranty, if Samsung provides any repair at all, that repair usually does not address the underlying defect.

58.    When Refrigerators fail outside the warranty period, Samsung recommends that consumers incur out-of-pocket expenses to repair or replace components of the Refrigerators (or Samsung recommends that consumers purchase an entirely new refrigerator).

59.    Samsung is not as dismissive of consumers elsewhere.  When the apparently identical problem occurred in the United Kingdom four years ago (discussed below), Samsung apologized to UK consumers and offered them an extended 5-year warranty as to all claims related to the Defect.

F.    **Samsung's Knowledge**

60.    Samsung knew or should have known of the Defect before any of the Plaintiffs purchased their Refrigerators, or at least before the warranties expired.

61.    Discovery regarding Samsung's warranty data and customer service records will reveal precisely when Samsung received (or should have received) notice of the Defect.  In particular, Samsung alone knows the number of consumers who have reported cooling issues and what conclusions Samsung reached regarding the cause of these issues.

62.    Plaintiffs and their counsel have learned that Samsung obtained (or should have obtained) such notice no later than the spring or summer of 2006.

63.    Plaintiffs have been contacted by more than 300 individuals with complaints that appear to stem from the Defect.  Some of these machines failed within the first year of ownership.  Indeed, Plaintiffs' counsel or their staff have spoken with at least nine individuals who assert that their Refrigerators failed within one year of purchase.  Accordingly, it is most plausible that Samsung began receiving reports of the Defect by no later than June 2006, when, on information and belief, the Refrigerators had been on the market for no less than one year.

64.    Counsel for Plaintiffs have spoken with individuals who assert that they contacted Samsung about the Defect during the summer of 2006.

a.    Mary Johnston a resident of Scottsdale, Arizona, contacted some of the undersigned counsel.  She informed the undersigned counsel that she purchased her Refrigerator in 2005.  Less than a year after her purchase, however, in or around August 2006, Johnston noticed that the temperature within her refrigerator had risen well above normal and that her food was spoiling.  She further explained to counsel:

i.    In August 2006, she called Samsung's customer service department and spoke with a woman identified as "Amber" about the cooling issues she was

experiencing with her refrigerator. Johnston informed Amber that her [Doe's] Refrigerator was not cooling properly, that the temperature was well above normal, and that her food was spoiling.

ii.      Amber directed a Samsung authorized repair technician to diagnose and fix Ms. Doe's refrigerator. The Samsung authorized repair technician, during his inspection, noted that the refrigerator's outer heat-exchanging pipes were frozen and replaced the insulation around them.

iii.      Approximately one week later, still during August 2006, Johnston's refrigerator temperature began to rise again. Johnston called Samsung a second time and spoke with a woman identified as "Carolynn." Johnston told Carolynn that her refrigerator was not cooling properly, the temperature was well above normal, and that her food was spoiling.

iv.      Carolynn directed a Samsung authorized repair technician to diagnose and fix Ms. Johnston's refrigerator. The Samsung authorized repair technician, during his inspection, noted that the refrigerator's outer heat-exchanging pipes were frozen. The technician diagnosed the problem as a faulty control board and replaced it.

v.      The technician replaced the control board and told Johnston that he would notify Samsung of the Defect.

b.      Eugene Ruta, a resident of Connecticut, contacted some of the undersigned counsel. He informed some of the undersigned counsel that, in August 2006, he noticed that the temperature inside his Refrigerator had risen to approximately 50 degrees Fahrenheit, causing his food to spoil. Ruta further informed counsel:

      i.     He called Samsung's customer service hotline, 1-800-SAMSUNG, and spoke to a Samsung representative to report the issues that he was experiencing; in particular, he explained that the temperature within his Refrigerator was well above normal.

      ii.    When a repairman eventually arrived to service Ruta's Refrigerator, the service person noted that the Refrigerator's outer heat-exchanging pipes were frozen.

      iii.    The repairman told Ruta that he [the repairman] would notify Samsung of the problem.

65.    A website, www.consumeraffiars.com, contains records of at least one individual who asserts that she, too, contacted Samsung about the failure of her Refrigerator to cool during that summer of 2006.  In August 2006, an individual who identifies herself as "Lillian, from Baltimore, Maryland," asserts that she called to notify Samsung that her Refrigerator, model number RS2630SH, was not cooling properly, according to her November 2006 post on www.consumeraffairs.com.

      i.    On information and belief, the failure occurred within a year of purchase because Lillian reports that Samsung arranged for an authorized technician to service the Refrigerator.

      ii.    The technician first examined Lillian's Refrigerator in August 2006, but diagnosed it as a problem with the water pressure.  The technician again examined Lillian's Refrigerator in October 2006.  At this time, the technician blamed the sensor and motor blades.  The replacement sensor did not fix the problem, however.

66.    Another website, "www.complaintsboard.com" has a page entitled "Samsung / Refrigerator Complaints & Reviews."  On that page, a poster named Barrett provides a detailed

report of how her model # RS257BARB Samsung Refrigerator experienced interior temperatures in the 50s on May 15, 2006.  After several attempts by repairmen to defrost refrigerator parts with a heat gun, and after not having a functioning refrigerator until June 15, 2006, Barrett contacted "Gwen Novak" at Samsung and reported the malfunction and loss of food.  This posting can be found at http://www.complaintsboard.com/complaints/samsung-refrigerator-c530.html.

67.     In 2008, a television program aired by the British Broadcasting Company ("BBC") reported on an identical Defect in a Samsung refrigerator sold in the United Kingdom. The program featured an interview with a refrigeration expert who examined a Samsung RS21 model refrigerator and determined that the problem was a result of a design defect that caused the outer heat-exchanging pipes to freeze over with ice, which caused the refrigerator's fan to stop running.  This program is available at: http://www.youtube.com/watch?v=V467FBmK6QQ.

**G.     Samsung's Fraudulent Conduct**

68.     Absent full discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those specific individuals at Samsung who are responsible for the failure to disclose the Refrigeration Defect.  In particular, the identity of the individual(s) at Samsung who determine what is or is not communicated to consumers is non-public information wholly within Samsung's control.  To this end, it is relevant that Samsung provide consumers with a phone number (1-800-SAMSUNG) to contact Samsung with any complaints.  It is thus Samsung's responsibility to monitor and collect information from consumer in an organized and responsible manner.  Plaintiffs' assertion that consumers used this method to contact Samsung suffices to establish that Samsung had ample notice of the alleged defect, without having to providing the name(s) of Samsung's agent(s)  who answered the phone.

69.     Similarly, the breadth of the fraud is entirely within Samsung's control, as only Samsung knows the exact design specifications and circuitry of the control board that has been installed in each of its refrigerators.

70.     In accordance with Rule 9 of the Federal Rules of Civil Procedure, Plaintiffs make the following specific fraud allegations regarding Samsung's omissions with as much specificity as possible, absent access to the information available only to Samsung.

a.     **Who:**  Samsung, and the particular individual or individuals at Samsung who determine what pre- and post- sale information is communicated to the consumers who purchase, have purchased, or are considering purchasing Samsung's Refrigerators.  Also, the particular individual or individual(s) at Samsung responsible for analyzing consumer complaints and repair data, particularly the complaints of individuals who contacted Samsung in 2006.

b.     **What:**  Samsung failed to disclose that the control board in the Refrigerators was designed and/or manufactured in such a way as to cause the Refrigerators to stop functioning long before the end of their expected useful life.  Also:

i.     Samsung's failure to adequately test the Refrigerators to ensure that they would function throughout their expected useful life.

ii.     That warranty or recommended post-warranty repairs would not cure or rectify the Defect and would only, at best, delay the impact of the Defect and thereby postpone failure in the Refrigerators.

c.     **When:** Starting no later than June 1, 2006, and on an ongoing basis through the present as indicated by the reports alleged above.

d.     **Where:**  All pre- and post- sale communications referring or relating to the Refrigerators, including:  Samsung's website (http://www.samsung.com), Samsung's

- 17 -

television advertising, Samsung's print advertising, Samsung's packaging, Samsung's press releases, and Samsung's user manuals. Specifically, none of these communications disclosed the Refrigeration Defect. In addition, the owners' manuals say nothing about a manual defrost capability, and the test protocol outlined in the service manuals did not work when attempted repeatedly by a skilled engineer.

e.       **How:** Consistent and uniform failure to disclose the Refrigeration Defect to potential or actual purchasers of the Refrigerators. None of the hundreds of consumers who have contacted the undersigned counsel report any disclosure from Samsung. This is true even when consumers call Samsung for assistance after the Refrigeration Defect manifests.

f.       **Why**: To induce the purchase and use of the Refrigerators at full price rather than purchasing competitors' refrigerators or paying Samsung less for the Refrigerators.

## V.    TOLLING

### A.    Discovery Rule

71.    The causes of action alleged herein accrued upon discovery of the defective nature of the Refrigerators. Because the Defect is latent, and Samsung concealed it, Plaintiffs and members of the Class did not discover and could not have discovered the Defect through reasonable and diligent investigation. *See, e.g.*, Ex. A ("Silzars Decl.") at ¶¶ 9-11. Reasonable and diligent investigation into the cause of the freezing coils did not and could not reveal a factual basis for a cause of action based on Samsung's concealment of the Refrigeration Defect.

### B.    Fraudulent Concealment

72.    Any applicable statutes of limitation have been tolled by Samsung's knowing and active and ongoing concealment and denial of the facts as alleged herein. Plaintiffs and the Class have been kept ignorant by Samsung of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and members of the Class could not

reasonably have discovered the true, latently defective nature of the Refrigerators.  *See, e.g.*, Ex. A ("Silzars Decl.") at ¶¶ 9-11.

**C.** **Estoppel**

73.    Samsung was and is under a continuing duty to disclose to the Plaintiffs and the Class the true character, quality, and nature of the Refrigerators.  Samsung knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Refrigerators, and the concealment is ongoing.  Plaintiffs reasonably relied upon Samsung's knowing, affirmative, and/or active and ongoing concealment.  Based on the foregoing, Samsung is estopped from relying on any statues of limitation in defense of this action.

**VI.** **CLASS ACTION ALLEGATIONS**

74.    Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

75.    The "Proposed Class" is defined and proposed as:

> All persons or entities residing in the United States who own, or have owned, Samsung refrigerator models RS263BBWP, RF266AASH, RS2630WW, and/or any other Samsung refrigerator model containing the same control board as those models.

76.    The "Proposed State Subclass" is defined and proposed as all members of the Proposed Class who reside in an individual state, such as Proposed Class members who reside in Ohio.

77.    Excluded from the Proposed Class(es) are Samsung, and any entity in which Samsung has a controlling interest; Samsung's legal representatives, officers, directors, employees, assigns, and successors; the United States government and any agency or instrumentality thereof; the judge to whom this case is assigned and any member of the judge's immediate family; and claims for personal injury, wrongful death and/or emotional distress.

78.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

**B.     Numerosity / Impracticability of Joinder**

79.     The Proposed Class(es) are so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of the members of the Proposed Class(es) is presently unknown to Plaintiffs, but it is believed to comprise thousands, if not tens of thousands, of individuals and entities, thereby making joinder impractical.

80.     The Proposed Class(es) are composed of an easily ascertainable, self-identifying set of individuals and entities who purchased Samsung Refrigerators with a particular control board.

**C.     Commonality and Predominance**

81.     There are common questions of law and fact that predominate over any questions affecting only individual members of the Proposed Class(es).  The answers to these common legal and factual questions will drive the resolution of this litigation.  Such questions include:

a.     Whether the control board in the Refrigerators was defectively designed and/or manufactured;

b.     When Samsung first became aware (or should have become aware) that its Refrigerators were defectively designed and/or manufactured;

c.     Whether the existence of the Defect in the Refrigerators is a material fact reasonable purchasers would have considered in deciding whether to purchase a refrigerator;

d.     Whether Samsung intended that consumers be misled;

e.     Whether Samsung intended that consumers rely on its non-disclosure of the Refrigeration Defect;

f.      Whether Samsung's concealment was likely to deceive the public.

g.      Whether the Refrigerators are of merchantable quality;

h.      Whether the Refrigerators pose a health and/or safety risk;

i.      Whether consumers have suffered an ascertainable loss;

j.      Whether Samsung's false and misleading statements of facts and concealment of material facts regarding the Defect in the Refrigerators were likely to deceive the public;

k.      Whether Samsung should be enjoined from continuing to sell the Refrigerators without disclosing their true nature.

### D.      <u>Typicality</u>

82.     Plaintiffs' claims are typical of the claims of members of the Proposed Class(es) because they purchased the same Refrigerators and were exposed to the same uniform non-disclosures.

83.     The factual bases of Samsung's misconduct are common to the members of the Proposed Class(es) and represent a common thread of fraudulent misconduct, deceptive trade practices, and breach of warranty resulting in injury to all Proposed Class(es) members. Plaintiffs are asserting the same rights, making the same claims, and seeking the same relief for themselves and all other members of the Proposed Class(es).

### E.      <u>Adequacy</u>

84.     Plaintiffs are adequate representatives of the Proposed Class(es) because they are members of the Proposed Class(es) and do not have interests that conflict with those of the Proposed Class(es) members they seek to represent.

85.     Plaintiffs are represented by experienced and able counsel who have litigated numerous class action lawsuits, and Plaintiffs' counsel intend to prosecute this action vigorously

for the benefit of the Proposed Class(es). Plaintiffs and their counsel can fairly and adequately

protect the interests of the members of the Proposed Class(es).

        **F.**       **Superiority**

       86.     A class action is the best available method for the efficient adjudication of this

litigation.  It would be impracticable and undesirable for each member of the Proposed Class(es)

who has suffered or may suffer harm to bring a separate action for these claims.  In addition, the

commencement of separate actions would put a substantial and unnecessary burden on the

courts, while a single class action can determine the rights of all members of the Proposed

Class(es) with judicial economy.

**VII.**    **CLAIMS FOR RELIEF**

**COUNT I**

**VIOLATIONS OF THE STATE CONSUMER PROTECTION LAWS**
**(On Behalf of the Proposed State Subclasses)**

       87.     The preceding paragraphs of this Complaint are incorporated by reference.

       88.     This claim is asserted on behalf of the Proposed State Subclasses, and asserts

violations of the consumer protection statutes of: Minnesota, Ohio, and Washington.

       89.     Plaintiffs bring this claim individually and on behalf of the members of their

respective Proposed State Subclasses under the law of the state in which they reside.

       90.     The consumer protection laws of the states in which each of the Plaintiffs and

each member of the subclasses reside have enacted statutes designed to protect consumers

against false advertising and/or unfair, deceptive, fraudulent, and/or unconscionable acts or

practices in the conduct of trade or commerce, and that allow consumers to bring private and/or

class actions. These statutes are identified as follows:

a.      Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq*. and Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq*.;

b.      Ohio Consumer Sales and Practices Act, Ohio Rev. Code § 1345.01 *et seq*.;

c.      Washington Consumer Protection Act, RCW § 19.86.010 *et seq*.

91.      Each of the Plaintiffs and each member of the Subclasses is a consumer, purchaser, or other person entitled to the protection of the consumer protection laws identified in ¶ 90.

92.      Samsung is a supplier, manufacturer, marketer, or other person within the meaning of the consumer protection laws identified in ¶ 90.

93.      The Refrigerators constitute a good, product, merchandise, or other subject to which the consumer protection laws identified in ¶ 90 apply.

94.      Samsung was on notice that its conduct violated the Ohio Consumer Sales Practices Act ("OCSPA").  *See, e.g.*, *Nessle v. Whirlpool Corp.*, No. 07-CV-3009, 2008 U.S. Dist. LEXIS 56940, at *8-9 (N.D. Ohio July 25, 2008) (explaining that the failure to disclose a material fact about a refrigerator is an act that has previously been declared deceptive within the meaning of the OCSPA).

95.      Samsung's conduct, as set forth in more detail above, violates the consumer protection laws identified in ¶ 90.

96.      Specifically, as alleged herein, Samsung engaged in unfair, deceptive, fraudulent, and/or unconscionable acts or practices in the conduct of trade or commerce by concealing or failing to disclose that the Refrigerators contained a defective control board that would

eventually cause the Refrigerators to lose cooling functionality. As the sole purpose of the Refrigerators is to maintain a cool temperature inside, this omission is material.

97.    Samsung engaged in the conduct alleged herein, even though it knew or reasonably should have known that its Refrigerators were defective.

98.    Information regarding the Refrigeration Defect, and the health risks associated with it, were not reasonably known to the Plaintiffs and members of the Subclasses.

99.    Samsung intended that the Plaintiffs and members of the Subclasses rely on its omissions in purchasing the Refrigerators.

100.    Samsung's conduct was directed at the public at large and has misled the public at large because its advertising is broadly distributed.

101.    The Plaintiffs and members of the Subclasses relied (or should be presumed to have relied) upon Samsung's omissions in purchasing their Refrigerators. Plaintiffs and members of the Subclasses would not have purchased the Refrigerators (or would only have done so at a significantly reduced price) had they known the truth.

102.    As a direct and proximate result of Samsung's omissions, the Plaintiffs and members of the Subclasses were damaged in an amount to be proven at trial.

103.    The Plaintiffs and members of the Subclasses are entitled to recover actual compensatory and/or statutory damages, as well as attorneys' fees and costs of suit, pursuant to the consumer protection laws and other applicable laws. As explained above, the Plaintiffs' losses include food and medicine that was spoiled because of the Refrigeration Defect.

104.    The Plaintiffs bring this action in part to benefit the public interest and with a public purpose; it is their goal to help citizens in each of their respective states. In particular, they hope that their efforts will assist many other consumers who own Samsung Refrigerators,

assist the many consumers who will consider purchasing a Samsung Refrigerator in the future (as Samsung's deceptive conduct is ongoing), and discourage other companies from committing unfair and deceptive practices against residents of their respective states.

## COUNT II

### FRAUDULENT CONCEALMENT / NONDISCLOSURE
### (On Behalf of the Proposed Class)

105.    The preceding paragraphs of this Complaint are incorporated by reference.  This claim is asserted on behalf of the Proposed Class.

106.    Samsung knew or was reckless in not knowing at the time of sale that the Refrigerators contain a defective control board, which makes the Refrigerators substantially certain to fail well in advance of their anticipated useful life.

107.    Samsung knew or was reckless in not knowing prior to the time that the Defect manifested in any of Plaintiffs' Refrigerators that the Refrigerators contain a defective control board, which makes the Refrigerators substantially certain to fail well in advance of their anticipated useful life.

108.    Samsung fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs, the Proposed Class, and all others in the chain of distribution the true defective nature of the Refrigerators.

109.    Samsung had exclusive knowledge of the Defect at the time of sale.  The Defect is latent and not something that Plaintiffs or the Proposed Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

110.    Samsung had the capacity to, and did, deceive consumers into believing that they were purchasing refrigerators that could be used safely and practically to store and cool food.

- 25 -

111.    Samsung undertook active and ongoing steps to conceal the Defect because Samsung knew or should have known that it alone could alert consumers to the presence of the Defect, yet Samsung chose not to do so.

112.    The facts concealed and/or not disclosed by Samsung to Plaintiffs and the Proposed Class are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) a refrigerator.

113.    If the facts concealed and/or not disclosed by Samsung to Plaintiffs and the Proposed Class had been disclosed to Plaintiffs, the Plaintiffs would not have purchased their refrigerators or would only have purchased them for a reduced price.

114.    Samsung had a duty to disclose the fact that the Refrigeration Defect existed at the time of sale because consumers would reasonably expect disclosure of the Defect.

115.    Samsung had a duty to disclose the fact that the Refrigeration Defect existed after sale, but before the Defect manifested, because consumers would reasonably expect disclosure of the Defect.

116.    Samsung intentionally concealed and/or failed to disclose the problems with the Refrigerators for the purpose of inducing Plaintiffs and the Proposed Class to act thereon.

117.    Plaintiffs and the Proposed Class justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of the Refrigerators and/or replacement parts for the Refrigerators.

118.    As a direct and proximate cause of Samsung's misconduct, Plaintiffs and Proposed Class members have suffered actual damages in that they bought and own Refrigerators that contain an inherent defect and that have prematurely failed or are substantially certain to prematurely fail within and outside applicable warranty periods, they will be required

to incur costs to repair and/or replace the defective components or the Refrigerators as a whole, and they will bear the cost of spoiled food and/or medicine.

119.    Samsung's conduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

120.    Samsung has acted with malice by engaging in conduct that was and is intended by Samsung to cause injury to the Plaintiffs and the Proposed Class.

121.    Samsung has committed fraud through its concealment of material facts known to Samsung with the intent to cause injury to the Plaintiffs and the Proposed Class.

122.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Samsung for actual and punitive damages for themselves and each member of the Proposed Class, plus attorneys' fees for the establishment of a common fund, interest, and cost.

## COUNT III

## BREACH OF IMPLIED WARRANTIES
### (On Behalf of the Proposed State Subclasses)

123.    The preceding paragraphs of this Complaint are incorporated by reference.  This claim alleges breaches of implied warranty under UCC § 2-314 as enacted, in whole or in substantial part, in the states that have abolished the defense of privity to this type of consumer lawsuit, specifically including Minnesota.

124.    Weske brings this claim individually and on behalf of Minnesota residents and the residents of other states which have adopted a version of UCC § 2-314 that will not allow Samsung to successfully assert the defense of privity.

125.    Frager brings a claim for tortious breach of implied warranty on behalf of herself and on behalf of Ohio residents and the residents of other states that recognize a claim for tortious breach of implied warranty.

126.    Plaintiffs and all Proposed Subclass members have been damaged by Samsung.

127.    At all times relevant hereto, Samsung was a seller of the Refrigerators.

128.    By placing the Refrigerators in the stream of commerce, Samsung impliedly warranted that the Refrigerators were of merchantable quality in that it would pass without objection in the trade, was fit for the ordinary purposes for which it was to be used, and conformed to the promises or affirmations of fact made on the container or label or as otherwise promoted, marketed and/or advertised.

129.    Samsung breached the implied warranty of merchantability at the time of sale because the Refrigerators would not pass without objection in the trade, were not fit for the ordinary purposes for which they were to be used, and did not conform to the implied promises or affirmations of fact made on the container or label or as otherwise promoted, marketed, and/or advertised.

130.    At all times relevant to this action, Samsung has breached its implied warranty of merchantability regarding the Refrigerators in violation of state implied warranty laws, including Minn. Stat. § 336.2-314.

131.    As a result of the breach of implied warranties, the Plaintiffs and the members of the State Subclasses they seek to represent have been directly and proximately damaged in the amount of the price they paid for the Refrigerators, and/or such incidental and consequential damages suffered thereby including, but not limited to spoiled food and/or medicine, in an aggregate amount to be proven at trial.

132.    Had the Defect that existed at the time of sale been known, the Refrigerators could not have been sold, or could not have been sold at the same price.

133.    Within a reasonable time after they knew or should have known of such breach, the Plaintiffs, on behalf of themselves and members of the State Subclasses they seek to represent, placed Samsung on notice thereof.  Samsung has also been put on notice by the Proposed Class as a whole by reason of its own knowledge of the Defect and, on information and belief, by warranty claims of Proposed Class members.

134.    Any express limitation or negation of Samsung's implied warranties that the Refrigerators were fit to perform their essential purpose, when such was not the case, would be unreasonable and unconscionable and, accordingly, is unenforceable.

135.    Any limitation on the duration of the implied warranty to the duration of the express warranty is unconscionable because Samsung knew, or was reckless in not knowing, of the Refrigeration Defect, but did not disclose that Defect to Plaintiffs or members of the Proposed State Subclasses.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the Proposed Class, pray for judgment against Samsung granting the following relief:

A.    An order certifying this case as a class action and appointing Plaintiffs to represent the Class and Plaintiffs' counsel as Class counsel;

B.    Restitution and disgorgement of all amounts obtained by Samsung as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

C.    All recoverable compensatory and other damages sustained by Plaintiffs and the Proposed Class;

D.    Actual and/or statutory damages for injuries suffered by Plaintiffs and the Proposed Class in the maximum amount permitted by applicable law;

E.    An order (1) requiring Samsung to immediately cease its wrongful conduct as set forth above; (2) enjoining Samsung from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; and (3) requiring Samsung to refund to Plaintiffs and all members of the Proposed Class the funds necessary to repair or replace the Refrigerators as appropriate;

F.    Statutory pre-judgment and post-judgment interest on the Class damages;

G.    Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

H.    Such other relief as the Court may deem just and proper.

## IX.    **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated:  April 11, 2012                    **CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**


By:___/s/ James E. Cecchi_____
        JAMES E. CECCHI

Jonathan D. Selbin
Jason L. Lichtman
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY  10013
212.355.9500

Kristen Law Sagafi
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94114
415.956.1000

J. Gordon Rudd, Jr.
David M. Cialkowski
Adi Bharadwaj
**ZIMMERMAN REED, PLLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN  55402
612.341.0844

Christopher M. Placitella
Michael Coren
**COHEN PLACITELLA & ROTH PC**
2001 Market Street, Suite 2900
Philadelphia, PA  19103
215.567.3500

*Counsel for Plaintiffs*

## CERTIFICATION OF SERVICE

I hereby certify that, on April 11, 2012, copies of the forgoing Amended Class Action Complaint and supporting documents were served upon all counsel of record by notice of electronic filing.

I certify that the forgoing statements made by me are true.  I am aware that if any of the forgoing statements are willfully false, I am subject to punishment.

_/s/  Caroline Bartlett_
CAROLINE BARTLETT