# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

JEFF WESKE, JO ANNA FRAGER, DARRYL MYHRE, RALPH CHERMAK, JEFF POLSEAN, MAUREEN KEAN and BEVERLY BURNS, on behalf themselves and all others similarly situated,

                      Plaintiffs,

v.

SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG ELECTRONICS CO., LTD.,

                      Defendants

Case No. 2:10-cv-4811 (WJM) (MF)

Motion Return Date: August 6, 2012

ORAL ARGUMENT REQUESTED

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6) AND TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS

GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
Post Office Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

Attorneys for Defendants
Samsung Electronics America, Inc. and
Samsung Electronics Co., Ltd.

1492849_6

<u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES.................................................................iii

PRELIMINARY STATEMENT .......................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.............................. 4

    A.   Procedural history ...............................................4

    B.   The allegations of the SAC.......................................5

    C.   Plaintiffs and their refrigerators.....................................9

ARGUMENT ........................................................................ 14

  I.   Legal standard on motion to dismiss .................................... 14

  II.  Plaintiffs' consumer fraud and fraudulent concealment/
      nondisclosure claims should be dismissed ......................................... 15

    A.   Plaintiff's fraud-based claims should be dismissed pursuant to
         Fed. R. Civ. P. 9 (b).....................................................15

    B.   The Second Amended Complaint also fails to state a claim
         under the consumer protection statutes of plaintiffs'
         home states ....................................................... 25

        1. Frager (Ohio)......................................................25

        2. Chermak and Polsean (Illinois)..............................28

        3. Kean and Burns (California) ................................. 30

  III.  Plaintiffs' claim for breach of implied warranty should be
       dismissed.................................................... ..........36

        1. Weske (Minnesota resident, New Jersey law)................................. 37

2. Frager (Ohio -- "tortious breach of implied warranty")...................40

IV.     Plaintiffs' class allegations should be stricken...................43

1. Plaintiffs' claims lack predominance...............................45

2. Plaintiffs cannot satisfy the typicality requirement.........................47

CONCLUSION ......................................................................................50

TABLE OF AUTHORITIES

<u>CASES</u>                                                                 <u>Page</u>

<u>Abraham vs. Volkswagen of Am., Inc.</u>,
        795 F. 2d 238 (2d Cir. 1986)..........................................39 n. 11

<u>Agostino v. Quest Diagnostics Inc.</u>,
        256 F.R.D. 437 (D.N.J. 2009)..............................................44

<u>Agostino v. Quest Diagnostics, Inc.</u>,
        2010 U.S. Dist. LEXIS 135310 (D.N.J. Dec. 22, 2010)......................45

<u>Alban v. BMW of N. Am.</u>,
        2011 U.S. Dist. LEXIS 26754 (D.N.J. March 15, 2011)....16, 19, 22, 38 n.10

<u>Arlandson v. Hartz Mountain Corp.</u>,
        2011 U.S. Dist. LEXIS 56462 (D.N.J. May 26, 2011).........................21

<u>Ashcroft v. Iqbal</u>,
        556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)...................14-15

<u>Avery v. State Farm Mut. Auto. Ins. Co.</u>,
        835 N.E.2d 801 (Ill. 2005)...............................................28

<u>Baby Neal v. Casey</u>,
        43 F.3d 48 (3d Cir. 1994)................................................47

<u>Bardin v. DaimlerChrysler Corp.</u>,
        136 Cal. App. 4th 1255 (Cal. App. 2006)...........................31, 34-35

<u>Bartels v. Hudson Ins. Co.</u>,
        2008 U.S. Dist. LEXIS 95445 (D.N.J. Nov. 21, 2008).......................40

<u>Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.</u>,
        296 F.3d 164 (3d Cir. 2002).................................................15

<u>Bell Atl. Corp. v. Twombly</u>,
        550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)..................14-15

Berryman v. Merit Prop. Mgmt., Inc.,
    152 Cal. App. 4th 1544 (Cal. App. 2007)......................................34

Bierlein v. Bernie's Motor Sales, Inc.,
    1986 Ohio App. LEXIS 7181 (Ohio App. 1986)........................26

Brooks v. S. Bell Co.,
    133 F.R.D. 54 (S.D. Fla. 1990)..........................................47

Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
    973 P.2d 527 (Cal. 1999)...............................................34

Camacho v. Auto. Club of S. Cal.,
    142 Cal. App. 4th 1394 (Cal. App. 2006).............................35

Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.,
    537 N.E.2d 624 (Ohio 1989)...........................42-43, 43 n. 13

Chin v. Chrysler Corp.,
    182 F.R.D. 448 (D.N.J. 1998)...........................................45

Cirulli v. Hyundai Motor Co.,
    2009 U.S. Dist. LEXIS 124670 (C.D. Cal. Nov. 9, 2009)..............33

City of Findlay v. Hotels.com, L.P.,
    441 F. Supp. 2d 855  (N.D. Ohio 2006)...............................26

Comm. on Children's Television, Inc. v. Gen. Foods Corp.,
    673 P.2d 660, 668 (Cal. 1983)..........................................35

Connick v. Suzuki Motor Co., Ltd.,
    675 N.E.2d 584 (Ill. 1996).............................................28

Cooper v. Samsung Elecs. Am., Inc.,
    374 F. App'x 250 (3d Cir. 2010)......................................8 n.5

Daugherty v. Am. Honda Motor Co., Inc.,
    144 Cal. App. 4th 824, 835 (Cal. App. 2006)................31-32, 34-35

DeBouse v. Bayer AG,
    922 N.E.2d 309, 316 (Ill. 2009)........................................29

Donachy v. Intrawest United States Holdings, Inc.,
    2012 U.S. Dist. LEXIS  34029 (D.N.J. Mar. 14 2011)..................16, 23

Duquesne v. Westinghouse Elec. Corp.,
    66 F. 3d 604 (3d Cir. 1995)...............................................39 n.11

E. River Steamship Corp. v. Transamerica Delaval, Inc.,
    476 U.S. 858 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986)........................41

Evitts v. DaimlerChrysler Motors Corp.,
    834 N.E.2d 942 (Ill. App. 2005)...........................................28-29

Frederico v. Home Depot,
    507 F.3d 188 (3d Cir. 2007)....................................................15

Freeman v. Time, Inc.,
    68 F.3d 285 (9th Cir. 1995).................................................34

Gotthelf v. Toyota Motor Sales, U.S.A., Inc.,
    2012 U.S. Dist. LEXIS 62045 ( D.N.J. May 3, 2012)...........................20

Glauberzon v. Pella Corp.,
    2011 U.S. Dist. LEXIS 38138 (D.N.J Apr. 5, 2011)............................22

Gray v. Bayer Corp.,
    2011 U.S. Dist. LEXIS 79498 (D.N.J. July 21, 2011)..........................45

Green v. Green Mtn. Coffee Roasters, Inc.,
    279 F.R.D. 275 (D.N.J. 2011)...........................................43, 46

Guzman v. Bridgepoint Educ., Inc.,
    2012 U.S. Dist. LEXIS 74767 (S.D. Cal. May 30, 2012).....................33

Harlow v. Fitzgerald,
    457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)............................14

HDM Flugservice GMBH v. Parker Hannifin Corp.,
    332 F.3d 1025 (6th Cir. 2003)..........................................41-43

Hughes v. Panasonic Consumer Elecs. Co.,
        2011 U.S. Dist. LEXIS 79504 (D.N.J. July 21, 2011)...................…..16, 23

Hoffer v. Cooper Wiring Devices, Inc.,
        2007 U.S. District LEXIS 42871  (N.D. Ohio June 13, 2007)............26-27

Hovsepian v. Apple, Inc.,
        2009 U.S. Dist. LEXIS 117562 (N.D. Cal. Dec. 17, 2009)...............32-33

Iacono v. Anderson Concrete Corp.,
        326 N.E.2d 267 (Ohio 1975)................................................42

In re Burlington Coat Factory Sec. Litig.,
        114 F.3d 1410 (3d Cir. 1997)...................................…..........21

In re Linerboard Antitrust Litig.,
        305 F.3d 145 (3d Cir. 2002)................................................45

In re Magnesium Oxide Antitrust Litig.,
        2011 U.S. Dist. LEXIS 121373 (D.N.J. Oct. 20, 2011).......................16

In re Rockefeller,
        311 F. 3d at 216.........................................................21

In re Tobacco II Cases,
        207 P.3d 20 (Cal. 2009)..................................................36

Kaing v. PulteGroup, Inc.,
        2011 U.S. App. LEXIS 26003 (9th Cir. Dec. 29, 2011).....................30

Kearns v. Ford Motor Co.,
        567 F. 3d 1120 (9th Cir. 2009).................................................16

Klein v. Gen. Nutrition Co., Inc.,
        186 F. 3d 338 (3d Cir. 1999)........................................…........20

Johnson v. Microsoft Corp.,
        802 N.E. 2d 712 (Ohio 2003)...............................................25

Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,
        149 F.R.D. 65 (D.N.J. 1993)...............................................47

Lum v. Bank of Am.,
    361 F.3d 217 (3d Cir. 2004)........................................................16

MagnetNotes, Ltd. vs. Trexan Chems., Inc.,
    2010 U.S. Dist. LEXIS 143469 (N.D. Ohio July 22, 2010)....................43

Maloney v. Microsoft Corp.,
    2011 U.S. Dist. LEXIS 134841 (D.N.J. Nov. 21, 2011).......................44

Maniscalco v. Brother Int'l Corp. (USA),
    627 F. Supp. 2d 494 (D.N.J. 2009) ...............................................16

Marrone v. Philip Morris U.S.A., Inc.,
    850 N.E.2d 31 (Ohio 2006)........................................26-28

Mahtani v. Wyeth,
    2011 U.S. Dist. LEXIS 70689 (D.N.J. June 30, 2011).......................46

McKell v. Wash. Mut. Inc.,
    142 Cal. App. 4th 1457 (Cal. App. 2006)......................................34

McKinney v. Bayer Corp.,
    744 F. Supp. 2d 733 (N.D. Ohio 2010)........................................41

MagnetNotes, Ltd. v. Trexan Chems., Inc.,
    2010 U.S. Dist. LEXIS 143469 (N.D. Ohio July 22, 2010).........41, 43 n. 13

Mirkin v. Wasserman,
    858 P.2d 568 (Cal. App. 1993).................................................30

Monaco v. Bear Stearns Cos.,
    2011 U.S. Dist. LEXIS 105471 (C.D. Cal. Sept. 12, 2011)...................36

Montich v. Miele USA, Inc.,
    2012 U.S. Dist. LEXIS 41398 (D.N.J. Mar. 27, 2012)....................24, 30

Morgan v. Markerdowne Corp.,
    201 F.R.D. 341 (D.N.J. 2001)..................................................48

Nafer v. Hollywood Tanning Sys.,
    339 Fed App'x 216 (3d Cir. 2009)...........................................49 n.15

Nat'l Interstate Ins. Co. v. Motor Coach Indus., Inc.,
    2012 U.S. Dist. LEXIS 9388 (N.D. Ohio Jan. 26, 2012)....................42

Nelson v. Todd,
    426 N.W.2d 120 (Iowa 1988)...........................................43 n. 13

Nessle v. Whirlpool Corp.,
    2008 U.S. Dist. LEXIS 56940 (N.D. Ohio July 25, 2008)...............26-27

Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    259 F.3d 154 (3d Cir. 2001).......................................45-46

N.J. Transit Corp. v. Harsco,
    497 F.3d 323 (3d Cir. 2007)............................................37

Oestreicher v. Alienware Corp.,
    544 F. Supp. 2d 964 (N.D. Cal. 2008)...............................31-32

Palestini v. Homecomings Fin., LLC,
    2010 U.S. Dist. LEXIS 72985 (S.D. Cal. July 20, 2010)....................33

Payne v. FujiFilm U.S.A., Inc.,
    2010 U.S. Dist. LEXIS 52808 (D.N.J. May 28, 2010)...................44-46

Pryor v. Nat'l Collegiate Athletic Ass'n,
    288 F. 3d 548 (3d Cir. 2002).........................................8 n.5

Radford v. Daimler Chrysler Corp.,
    168 F. Supp. 2d 751 (N.D. Ohio 2001)...............................26-27

Robinson v. HSBC Bank USA,
    732 F. Supp. 2d 976 (N.D. Cal. 2010)...................................33

Scheuer v. Rhodes,
    416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)....................14

Sitogum Holdings, Inc. v. Ropes,
    352 N.J. Super. 555, 800 A.2d 915 (N.J. Ch. Div. 2002)...........38 n. 10

<u>Smith v. Ford Motor Co.</u>,
 2011 U.S. App. LEXIS 25170 (9th Cir. Dec. 19, 2011).......................34

<u>St. Clair v. Kroger Co.</u>,
 581 F. Supp. 2d 896 (N.D. Ohio 2008)...........................................26

<u>Staton Hills Winery Co. v. Collons</u>,
 980 P.2d 784 (Wash. App. 1999).............................................43 n.13

<u>Suddreth v. Mercedes-Benz, LLC</u>,
 2011 U.S. Dist. LEXIS 126237 (D.N.J Oct. 31, 2011)...................16, 30

<u>U.F.C.W. Local 56 Health & Welfare Fund v. J.D.'s Mkt.</u>,
 240 F.R.D. 149 (D.N.J. 2007)....................................................40

<u>Vitt v. Apple Computer, Inc.</u>,
 2012 U.S. App. LEXIS 4419 (9th Cir. Feb. 28, 2012).......................32

<u>Weiss v. New York Hosp.</u>,
 745 F.2d 786 (3d Cir. 1984)......................................................47

<u>Weske v. Samsung Elecs. Am., Inc.</u>,
 2012 U.S. Dist. LEXIS 32289 (D.N.J. Mar. 12, 2012)..................*passim*

<u>Wiseberg v. Toyota Motor Corp.</u>,
 2012 U.S. Dist. LEXIS 45849 (D.N.J Mar. 30. 2012).....................16-18

<u>Zinberg v. Washington Bancorp, Inc.</u>,
 138 F.R.D. 397 (D.N.J. 1990)..............................................47, 49

<u>COURT RULES</u>              Page

Fed R. Civ. P. 9(b)..................................................4, 14, 17, 22-23, 44

Fed. R. Civ. P. 12(b)(6)..................................3, 7, 14, 26, 36, 38, 44

Fed. R. Civ. P. 12(f)...................................................................40

Fed. R. Civ. P. 23(a)..................................................................43

1519533_1

Fed. R. Civ. 23(b)(3)............................................................45


## STATUTES                                                    <u>Page</u>

815 I.L.C.S. 505/1, <u>et seq.</u>...............................................28

Cal. Bus & Prof. Code § 17200, <u>et seq.</u>........................30, 33

Cal. Civ. Code § 1750, <u>et seq.</u>........................................30

Cal. Civ. Code § 1770(a)...............................................31

O.R.C. § 1345.01, <u>et seq.</u>.............................................25

O.R.C. § 1345.09(B).....................................................28

O.R.C. § 1345.09(B)...................................................25-26


## OTHER SOURCES                                               <u>Page</u>

3B James W. Moore & John E. Kennedy, Moore's Federal Practice, P.23.06-02 (1993)............................................................47

H. Newberg & A. Conte, 1 Newberg on Class Actions § 3-13 (1992)..............47

## PRELIMINARY STATEMENT

In March 2012, this Court issued a ruling that dismissed this action, partly with prejudice and partly without prejudice, and permitted plaintiffs to amend their pleadings to address the deficiencies specified in the Court's opinion. Instead of correcting the deficiencies, plaintiffs have filed amended pleadings that cling to two unsupportable positions: 1) that vague and occasional complaints about defrosting with different models of Samsung refrigerators over many years is the result of a singular defect; and 2) that these scattered complaints, which early on were not even reported to Samsung, demonstrate that Samsung knew that its refrigerators would fail prematurely and concealed this fact. As a consequence, this case returns to this Court on another motion to dismiss. Despite adding four new plaintiffs and rejiggering their sparse allegations, plaintiffs remain unable to assert claims against Samsung that can survive a motion to dismiss. Indeed, plaintiffs' Second Amended Complaint (the "SAC") is a step backward, as plaintiffs have failed to remedy the deficiencies in their pleading identified by the Court. Equally compelling, the SAC shows that this matter is not appropriate for class treatment.

The pleading now involves seven putative class representatives from five different states -- Minnesota, Ohio, Washington, Illinois and California -- who raise claims under the consumer protection laws of their respective states relating to *six different* allegedly defective Samsung refrigerator models. One plaintiff also raises a breach of implied warranty claim and another plaintiff raises tortious breach of

warranty, a cause of action peculiar to Ohio.   Importantly, in each instance the allegedly defective condition arose outside the refrigerator's warranty period.

These diverse plaintiffs allege that the refrigerators, again, each of which is a different Samsung model, contain a vague and unspecified defect with their "control boards" that causes the refrigerators' defrost feature to become inoperative.  The SAC also does no better in suggesting that Samsung knew that the refrigerators would fail prematurely but concealed the alleged defect.   Despite dredging through their solicited contacts, the best plaintiffs could muster are two anonymous posts, two persons who did not contact Samsung and the same BBC television program that this Court previously found wanting.   Curiously, although just as vague as their prior allegations, plaintiffs apparently believe that the mere reference to the term "control board" will convince the Court that they have identified a specific defect.  However, plaintiffs do not even allege that the control boards on the various Samsung refrigerators are the same or identically designed.

Plaintiffs' fraud-based causes of actions must be dismissed due to plaintiffs' failure to rectify their lack of specificity.  The SAC still fails to provide sufficient factual allegations to establish that Samsung knew -- much less "knew with certainty" -- of the alleged defect prior to plaintiffs' purchases.   The SAC continues to inadequately specify the time, place and manner of the alleged fraud or why certain critical information purportedly lies exclusively within Samsung's control.  Finally, the SAC also fails to set forth how Samsung's marketing and advertising was false and/or misleading.

1492849_6

Plaintiff Weske's breach of implied warranty cause of action is also ripe for dismissal. Regardless of whether Minnesota or New Jersey law is applied, the alleged defect occurred outside the warranty period and the pleaded facts fail to underpin the claim that Samsung's conduct was unconscionable.

Plaintiffs' amended pleading also demonstrates why this matter is, on its face, inappropriate for class status pursuant to Fed. R. Civ. P. 23. While it is true that this Court's March 12, 2012 ruling permitted plaintiffs to replead their claims under the consumer protection laws of their individual states, the SAC shows that this could result in the application of the diverse consumer protection statutes of all fifty states, thereby rendering any potential class unwieldy and impossible to manage. Plaintiffs are thus unable to demonstrate predominance -- that the issues common to the class outweigh those that are not. In addition, it is clear that plaintiffs cannot meet the typicality requirement to represent the proposed class in any regard, as the legal and factual positions of these seven plaintiffs differ markedly from those of the putative class. Indeed, plaintiffs seek to represent a class that would potentially include persons who purchased different refrigerator models, who did not experience the alleged defect at all, have not suffered any damages and/or may have different causes of action arising from laws peculiar to particular states, among other deficiencies. Further, the class definition is entirely too broad and includes many individuals who did not suffer the alleged defect or any injury.

3

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

A.   Procedural history

On September 20, 2010, plaintiffs Jeff Weske, Jo Anna Frager and Darryl Myhre filed a putative Class Action Complaint ("Complaint") against SEA and SEC alleging that each purchased a Samsung refrigerator that contained an unspecified defect that causes the refrigerators' coils to freeze over resulting in a failure of the refrigerators to cool.  Complaint at ¶¶1, 12, 13, 14.  Weske, Frager and Myhre, none of whom are from New Jersey, asserted claims for violation of the New Jersey Consumer Fraud Act ("NJCFA"), breach of implied warranty, fraudulent concealment/nondisclosure and unjust enrichment against both SEA and SEC.

On March 12, 2012, the Court granted, in part, Samsung's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b).  See Weske v. Samsung Elecs. Am., Inc., 2012 U.S. Dist. LEXIS 32289 (D.N.J. Mar. 12, 2012).  The Court dismissed plaintiffs' NJCFA claim, finding that "each Plaintiff's home state has the most significant relationship to each Plaintiff's consumer fraud action," but granted plaintiffs "leave to amend the Complaint to plead claims under the law of each Plaintiff's home state."  Id. at *15.  The Court next dismissed plaintiffs' fraudulent concealment/nondisclosure cause of action for failing to meet the particularity requirements of Fed. R. Civ. P. 9(b).  Id. at *17-18.  As to plaintiffs' breach of implied warranty claim, the Court held that "regardless of which state's law applies, Plaintiffs have failed to state a claim and the Court can dismiss *all* claims for breach of implied warranty without conducting a choice-of-law analysis."  Id. at *19

4

(emphasis in original).  Frager and Myhre lacked privity with Samsung, which is required for breach of implied warranty under Ohio and Washington law.  Id. at *19, *22.  Weske's claim failed under New Jersey law because it did not arise until after the expiration of the one year warranty and plaintiffs' allegations "fall far short of what would be necessary to make a prima facie case for unconscionability."  Id. at *19-21.  Finally, the Court dismissed plaintiffs' unjust enrichment claim with prejudice because plaintiffs did not purchase their refrigerators directly from Samsung.  Id. at *23-24.

Plaintiffs Weske, Frager and Myhre filed an Amended Complaint on April 11, 2012, which reasserted causes of action for consumer fraud (under the law of each plaintiff's home state) and fraudulent concealment/nondisclosure.  Only Weske reasserted a cause of action for breach of implied warranty.  Frager added a completely new cause of action for tortious breach of warranty under Ohio law.

Subsequently, plaintiffs filed a motion for leave to file a Second Amended Complaint, which was granted, and thereafter filed the SAC on June 5, 2012.  The SAC adds four additional plaintiffs: Ralph Chermak of Cary, Illinois, Jeff Polsean of Rockford, Illinois and Maureen Kean and Beverly Burns, residents of a single household in Martinez, California.  SAC at ¶¶36, 47, 55.

B.    The allegations of the SAC

The SAC acknowledges that each plaintiff purchased a *different* model of Samsung refrigerator.  Id. at ¶¶13, 21, 30, 36, 47, 55.  Thereafter, without any facts to substantiate that the various Samsung refrigerators use an identical control board,

5

1492849_6

plaintiffs allege that the control board inside the refrigerators "was not designed and/or manufactured properly" such that it "does not properly operate the defrost cycle." Id. at ¶84. The SAC does not elaborate further nor does it specify that plaintiffs' refrigerators have been tested and actually have this defect.[1] However, the SAC fails to specify how the control board is allegedly defective. Id. Moreover, the SAC does not even allege that the control boards in the plaintiffs' six refrigerators -- all of which are different Samsung models -- are the same or even similar. Significantly, the SAC represents the *first time* that plaintiffs have claimed that the control board was in any way defective.[2]

The SAC further alleges that "Samsung knew or should have known of the Defect before any of the Plaintiffs purchased their Refrigerators, or at least before the warranties expired." Id. at ¶97. In supposed support of this contention, plaintiffs point to (a) 300 anonymous, undated and unspecified complaints allegedly made to their attorneys,[3] of which nine complainants allege that their refrigerators failed

---

[1] The SAC also avers that "the Refrigerators' external temperature displays continue to indicate that it is cool, even though the inside is not." SAC at ¶88. Once again, plaintiffs do not allege that they actually experienced this issue with the temperature gauges on their refrigerators or allege any causal nexus to the allegedly defective control board.

[2] Of course, this belated assertion of a control board defect begs the question: if this defect was so apparent that Samsung should have been aware of it for years, why did plaintiffs not raise it in their initial Complaint?

[3] Plaintiffs' suggestion that these contacts were "unsolicited" is simply false. SAC at ¶2. Plaintiffs' counsel's website has a prominent section devoted to the "Samsung Refrigerator Defects Lawsuit" wherein consumers are specifically invited to contact

within one year of purchase, from which plaintiffs somehow conclude that "it is most plausible that Samsung began receiving reports of the Defect by no later than June 2006," id. at ¶100, (b) two additional individuals (not named as plaintiffs), Mary Johnston from Scottsdale, Arizona and Eugene Ruta from an unspecified location in Connecticut, who allegedly experienced "cooling issues" with their unidentified model Samsung refrigerators, the purported "diagnoses" of which they did not even report to Samsung, id. at ¶101, (c) two anonymous posts to third party consumer affairs websites involving unrelated and factually barren complaints as to two more different models of refrigerators, id. at ¶102-03, and (d) a BBC television program that aired in 2008 and focused upon a model of Samsung refrigerator (RS21) that was sold only in the United Kingdom, the design of which plaintiffs do not allege is identical or even similar to the refrigerators purchased by plaintiffs, id. at ¶104.

In addition to making the unsubstantiated claim that Samsung was aware of the alleged defect, the SAC then alleges that Samsung "failed to disclose that the control board in the Refrigerators was designed and/or manufactured in such a way as to cause the Refrigerators to stop functioning long before the end of their expected useful life." Id. at ¶107(b). Here again, the SAC provides no factual support for these allegations. Similarly, the SAC also alleges that Samsung fraudulently concealed the defect from plaintiffs and other consumers, but fails to provide particular facts to support this claim. In fact, the SAC highlights its own

---

counsel regarding purported defects with their refrigerators that "may help advance the class action." See www.zimmreed.com.

shortcomings through its inability to particularize the "when, where, how and why" of the allegations. Id. at ¶107.

Although referencing the warranty period for the refrigerators, SAC at ¶97, the SAC does not provide information about the warranty that accompanies the subject refrigerators. The Samsung refrigerators referenced in the SAC come with a limited warranty of "one (1) year for parts and labor" and "five (5) years parts and labor on sealed refrigeration system only* (*Compressor, evaporator, condenser, drier, connecting tubing)."[4]  See Warranty, attached as Exhibit A to the Declaration of James J. O'Hara ("O'Hara Dec.").[5]  The warranty prominently disclaims any warranties other than those listed and described, and further specifies that no warranties, including, but not limited to, any implied warranties of merchantability or fitness for a particular purpose shall apply after the express warranty periods expire. Notably, the alleged defective condition with all six of plaintiffs' refrigerators arose outside the warranty period.  SAC at ¶¶13-72.

Further, notwithstanding the fact that none of the putative class representatives alleges that he or she reviewed and/or relied upon marketing and advertising material

---

[4] None of the plaintiffs claim that a sealed portion of their refrigerator systems failed.

[5] "In general, when ruling on a motion to dismiss pursuant to 12(b)(6), a court may only consider the contents of the pleadings." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F. 3d 548, 560 (3d Cir. 2002) (quoting 62 Fed. Proc. L. Ed. § 62:508). However, "[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim . . . ." Cooper v. Samsung Elecs., Am., Inc., 374 F. App'x 250, 253 n.3 (3d Cir. 2010).

generated by Samsung in connection with the purchase of their refrigerators, the SAC references "[a]ll pre- and post-sale communications referring or relating to the Refrigerators" as part of the alleged fraud because "none of these communications disclosed the Refrigeration Defect." Id. at ¶107(d). The SAC does not identify these communications or specify when these communications were issued and fails to correlate any marketing materials to any of the Samsung refrigerators that plaintiffs purchased. The SAC also fails to allege that any statements in these communications are false.

C.    Plaintiffs and their refrigerators

Weske alleges that he purchased a Samsung side-by-side refrigerator, model RS263BBWP, from a Best Buy store in Duluth, Minnesota in December 2006. Id. at ¶13. There is no allegation that Weske reviewed and/or relied upon any Samsung marketing or advertising material in connection with the purchase. Weske further claims that an issue with his refrigerator first arose in "the spring of 2009," more than two years after its purchase, when it allegedly "stopped cooling." Id. at ¶16. Weske temporarily resolved this condition by defrosting the refrigerator, but the refrigerator "stopped cooling" again in the "summer and fall of 2009." Id. Weske alleges that he contacted Samsung customer service in the fall of 2009 but was advised that "his refrigerator was out of warranty and, accordingly, that there was nothing that Samsung could do to help him." Id. at ¶17. That same fall, Weske had the refrigerator repaired by his local gas company. However, he continued to have the same issues with his refrigerator even after this repair work was performed. Id. at

9

¶18.   Weske alleges to have suffered damages for lost groceries in the amount of $1,100.00.  Id. at ¶16.

Frager alleges that she purchased a Samsung French door refrigerator, model RF266AASH, from a Lowe's store in Mentor, Ohio in February 2008.  Id. at ¶21. There is no allegation that Frager reviewed and/or relied upon any Samsung marketing or advertising material in connection with the purchase.  Frager alleges that an issue with her refrigerator first arose in June 2010, more than two years after its purchase, when it "stopped cooling."  Id. at ¶24.  Frager alleges that she contacted a local repairperson, who advised her to defrost the refrigerator, but that this suggestion "did not seem to fix the problem."  Id.  Thereafter, an unidentified local repairman came to Frager's house and "replaced at least one part within her refrigerator."  A repairman returned approximately one month later and "replaced at least one additional part within her refrigerator."  Id. at ¶25.  There is no allegation that Frager ever contacted and/or registered a complaint related to this issue with Samsung.  Frager claims to have suffered damages for lost groceries in the amount of $340.00.  Id. at ¶24.

Myhre alleges that he purchased a Samsung side-by-side refrigerator, model RS2630WW, from a Best Buy store in Tukwila, Washington in November 2007.  Id. at ¶30.  There is no allegation that Myhre reviewed and/or relied upon any Samsung marketing or advertising material in connection with the purchase.  Rather, Myhre alleges that he "conducted research online and read reviews of different refrigerators" and was advised by a Best Buy salesperson that the model he purchased "was a good

refrigerator." Id. Myhre alleges that "[p]rior to November 2008, before the warranty on his refrigerator expired, the temperature began to rise in the refrigerator."[6] Id. at ¶31. Myhre further alleges that he "called Samsung to report this problem, but did not receive any response" and that the warranty expired while he waited. Id. In late 2008 or early 2009, Myhre contacted a repairperson who recommended that he replace the refrigerator's defrost heater. Id. at ¶32. After replacing the defrost heater, Myhre did not experience additional issues with the refrigerator until "late 2010" when it again "stopped cooling," which would seem to indicate that the alleged issue with Myhre's refrigerator is unrelated to the control board. Id. at ¶33. There is no allegation that Myhre ever registered a complaint with Samsung. Myhre claims damages of $250.00 for lost groceries, $130.00 in repair bills and $130.00 for his purchase of the defrost heater. Id. at ¶¶32-33.

Chermak alleges that he purchased a Samsung bottom-mount refrigerator, model RF265ABBP, from a Grand Appliance Store in Chicago, Illinois in September 2009. Id. at ¶36. There is no allegation that Chermak reviewed and/or relied upon any Samsung marketing or advertising material in connection with the purchase.

---

[6] This is a significant factual departure from plaintiffs' initial Complaint, which alleged that an issue with Myhre's refrigerator did not arise until "early 2010," more than two years after its purchase. Complaint at ¶14. In light of the extensive briefing on Samsung's motion to dismiss the Complaint, it is difficult to accept plaintiffs' characterization of this new allegation as a simple "error." This is especially so insofar as the descriptor "early" has been dropped altogether (and without explanation) in favor of the vague "prior to November 2008," making a typo seem even more unlikely.

Chermak alleges that in March 2011 his refrigerator "stopped cooling." Id. at ¶39. Chermak claims to have contacted Samsung (by some unidentified means) throughout March 2011 before reaching "a Samsung agent on the national customer service line and [being] granted a warranty extension for one service call," which allegedly never occurred. Id. at ¶¶40, 41. Chermak purchased a replacement refrigerator for "about $800" on March 25, 2011. Id. at ¶43. Chermak claims to have suffered damages for "hundreds of dollars" of lost groceries. Id. at ¶39.

Polsean alleges that he purchased a Samsung side-by-side refrigerator, model RS267LBBP, from Rockford National Equipment Sales in Rockford, Illinois in 2008. Id. at ¶47. There is no allegation that Polsean reviewed and/or relied upon any Samsung marketing or advertising material in connection with the purchase. Polsean alleges that in October 2011 his refrigerator "stopped cooling" and that "the back of his refrigerator was covered with ice." Id. at ¶50. Polsean claims that he called Samsung's customer service help line, but was advised that his refrigerator was out of warranty. Id. After performing internet searches, Polsean concluded that his refrigerator could not be fixed. Id. at ¶51. Polsean does not allege that any technician ever looked at his refrigerator or advised as to the cause of the purported cooling problems. Polsean claims to have suffered damages for "hundreds of dollars" of lost groceries. Id. at ¶50.

Kean and Burns allege that they purchased a Samsung French door refrigerator, model RF266AERD, from a Best Buy store in Pleasant Hill, California in August or September of 2009. Id. at ¶56. There is no allegation that Kean or Burns reviewed

and/or relied upon any Samsung marketing or advertising material in connection with their purchase. Kean and Burns allege that in November 2010 their refrigerator "stopped cooling" and that "Kean noticed ice coming through the air vents in the back of her refrigerator." Id. at ¶59. Kean and Burns allege that they contacted Best Buy, which sent a service technician who "determined that there was ice build up around the evaporator fan blade and through the air system due to excessive moisture building around the inside fridge area." Id. at ¶60. The technician "steamed/defrosted" the refrigerator and it "seemed to start working again." Id. Kean and Burns claim that, in approximately November 2011, their refrigerator "stopped cooling again," leading them to contact another technician, The Appliance Doctor, who prescribed that they "unplug the unit, let the ice melt, and then plug it back in." Id. at ¶¶61-62. The Appliance Doctor made two house calls, eventually installing a new fan motor. Id. at ¶¶63-64. Kean and Burns allege that, two days after this repair, Kean "noticed ice on the back of the refrigerator" and contacted Samsung "at the number listed in her user manual." Id. at ¶65. Kean and Burns further allege that Samsung sent JEM Appliance to inspect their refrigerator and that JEM "replaced a defrost sensor." Id. at ¶¶66, 67. Kean and Burns do not allege that their refrigerator has experienced any cooling problems since December 2011, suggesting that the alleged issue with their refrigerator is not a defective control board. Kean and Burns claim to have suffered damages of "approximately $1500" for repairs and lost groceries. Id. at ¶69.

13

## ARGUMENT

### I.    LEGAL STANDARD ON MOTION TO DISMISS

Plaintiffs' claims should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted if, after accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which its rests.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929, 940 (2007).  Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) when a plaintiff does not allege facts sufficient to prove a "plausible claim for relief."  Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868, 884-85 (2009).  The plausibility standard ensures that "plaintiff plead [] factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged" and requires "more than a sheer possibility that defendant has acted unlawfully."  Id. at 550 U.S. at 679, 129 S. Ct. at 1949, 173 L. Ed. 2d at 884 (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1966, 167 L. Ed. 2d at 941).  Also, while "courts must accept all well-pleaded allegations in a complaint as true and draw all reasonable inferences in favor of the non-moving party," Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90, 96 (1974), abrogated on other grounds, Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982), they are not required to credit bald assertions or legal conclusions improperly

14

alleged in the complaint.  <u>Ashcroft</u>, 556 U.S. at 679, 129 S. Ct. at 1950, 173 L. Ed. 2d

at 884-85 ("Threadbare recitals of elements of a cause of action, supported by mere

conclusory statements, do not suffice").  Thus, a complaint must set forth sufficiently

detailed factual allegations which "raise a right to relief above the speculative level."

<u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. at 1964-65, 167 L. Ed. 2d at 940.

## II. PLAINTIFFS' CONSUMER FRAUD AND FRAUDULENT CONCEALMENT/NONDISCLOSURE CLAIMS SHOULD BE DISMISSED

Plaintiffs' consumer fraud and fraudulent concealment/nondisclosure claims

fail because the SAC does not remedy the deficiencies that led to the dismissal of

plaintiffs' fraud claims under Fed. R. Civ. P. 9(b).  Moreover, plaintiffs' consumer

fraud claims do not state a cognizable claim under the consumer protection statute of

each plaintiff's home state as a matter of law.

### A. PLAINTIFFS' FRAUD-BASED CLAIMS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 9(b)

The SAC is subject to dismissal pursuant to Federal Rule of Civil Procedure

9(b), which imposes a heightened pleading requirement with respect to allegations of

fraud.  Rule 9(b) states: "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake."  "To satisfy this

standard, the plaintiff must plead or allege the date, time, and place of the alleged

fraud or otherwise inject precision or some measure of substantiation into a fraud

allegation."  <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007); <u>see also</u> <u>Bd.</u>

<u>of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.</u>, 296 F.3d 164, 173

n.10 (3d Cir. 2002).    Additionally, the allegations must state "who made a misrepresentation to whom and the general content of the misrepresentation." <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 224 (3d Cir. 2004).   Under Rule 9(b), a plaintiff must plead a specific omission of a material fact and the defendant's knowledge of it.  <u>In re Magnesium Oxide Antitrust Litig.</u>, 2011 U.S. Dist. LEXIS 121373, *26 (D.N.J. Oct. 20, 2011).  Where a complaint merely alleges conclusory assertions that a defendant knew and failed to disclose material facts, dismissal is appropriate.  <u>See</u> <u>Donachy v. Intrawest United States Holdings, Inc.</u>, 2012 U.S. Dist. LEXIS 34029, *11 (D.N.J. Mar. 14, 2012); <u>Hughes v. Panasonic Consumer Elecs. Co.</u>, 2011 U.S. Dist. LEXIS 79504, *12-14 (D.N.J. July 21, 2011).

Moreover, for a breach of warranty to form the basis of a consumer fraud claim premised upon the defendant's alleged failure to disclose a defect in the product, "a plaintiff must sufficiently allege that the defendant manufacturer *knew with certainty* that the product at issue or one of its components was going to fail." <u>Wiseberg v. Toyota Motor Corp.</u>, 2012 U.S. Dist. LEXIS 45849, *11 (D.N.J. Mar. 30. 2012) (emphasis added) (quoting <u>Suddreth v. Mercedes-Benz, LLC</u>, 2011 U.S. Dist. LEXIS 126237, *5 (D.N.J. Oct. 31, 2011)); <u>Alban v. BMW of N. Am.</u>, 2011 U.S. Dist. LEXIS 26754, *31 (D.N.J. March 15, 2011) ("<u>Alban II</u>").  It is well settled that the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to claims under consumer fraud statutes as well as claims of common law fraud.   <u>See</u>, <u>e.g.</u>, <u>Maniscalco v. Brother Int'l Corp. (USA)</u>, 627 F. Supp. 2d 494, 500 (D.N.J. 2009); <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009).

1492849_6

Plaintiffs' SAC profoundly fails in its attempt to correct the deficiencies that resulted in this Court's prior dismissal pursuant to Fed. R. Civ. P. 9(b). The SAC continues to provide nothing more than conclusory, speculative and self-serving statements in a transparent attempt to address the shortcomings identified in this Court's decision and satisfy Rule 9(b)'s heightened pleading requirements.

As an initial matter, the SAC still fails to "provide sufficient factual allegations to establish that Samsung knew of the Defect prior to the sales at issue in this litigation." Weske, 2012 U.S. Dist. LEXIS 32289 at *17-18. Despite devoting a section of the SAC to "Samsung's Knowledge," the allegations set forth therein simply do not establish that Samsung was aware of any defect at the time plaintiffs purchased their refrigerators -- much less that Samsung "knew with certainty" that the refrigerators were going to fail. Wiseberg, 2012 U.S. Dist. LEXIS 45849 at *11.

Indeed, the SAC is even less sure of itself than the initial Complaint, alleging merely that "it is most probable that Samsung began receiving reports of the Defect by no later than June 2006." SAC at ¶100. However, this bald allegation remains wholly unsupported. To get around this obvious flaw, plaintiffs attempt a not-so-subtle sleight of hand by alleging that a few random examples of generic refrigerator malfunctions -- which were not even reported to Samsung -- should have put Samsung on "notice" of a specific alleged defect with the control boards in the six refrigerator models at issue. Of course, such a conclusion defies logic. Plaintiffs point to just four instances from which they ask the Court to draw the conclusion that Samsung should have known about the alleged defect by mid-2006. Id. at ¶101-03.

1492849_6

Notably, two of these four complainants are nothing more than anonymous posts to a third party website that do not involve any of the models at issue in this action. Id. at ¶102. Plaintiffs do not allege (nor could they) that Samsung was aware of these posts, nor do they allege that the problems arose from the same alleged defect. See Wiseberg, 2012 U.S. Dist. LEXIS 45849 at *38 (finding that anonymous internet complaints are irrelevant without a showing that the defendant was aware of them). The remaining two complaints do not even specify what refrigerator model the complainant purchased. One of these complainants (Mr. Ruta) never contacted Samsung at all. SAC at ¶101. While the other complainant (Ms. Johnston) was allegedly advised by a third party that the problems with her refrigerator resulted from a "faulty control board," plaintiffs do not allege that this "diagnosis" was ever shared with Samsung. Id. It is thus inconceivable that these complaints could have put Samsung on notice of anything, much less a specific defect involving six unrelated refrigerator models.[7]

Indeed, as one recent decision in this District recently held, where a Complaint includes allegations concerning consumer complaints of an alleged product that were not reported to the defendant, such allegations should not only be disregarded, but stricken altogether. See Wiseberg, 2012 U.S. Dist. LEXIS 45849 at *37-38 (striking

---

[7] Plaintiffs also again point to a 2008 BBC news report concerning RS21 (a different model sold in the United Kingdom) as supposed evidence of Samsung's knowledge. However, this Court previously recognized that this report postdates the purchases at issue in this litigation and thus "would not establish that Samsung knew of the Defect prior to making any alleged omissions upon which Plaintiffs may have relied in making their purchases." Weske, 2012 U.S. Dist. LEXIS 32289 at *18.

18

allegations of internet complaints in pleading upon finding that "[w]hile anonymous Internet complaints could be relevant to the issue of knowledge, it must be shown that [defendant] was aware of these complaints").   Samsung therefore respectfully requests that the Court strike paragraphs 100-103 of the SAC pursuant to Fed. R. Civ. P. 12(f), which permits the Court to "strike from a pleading . . . immaterial, impertinent, or scandalous matter." Id.

In light of these shortcomings, plaintiffs fall far short of "establish[ing] that Samsung knew of the Defect prior to the sales at issue in this litigation," Weske, 2012 U.S. Dist. LEXIS 32289 at *17-18, much less that it knew of this alleged defect "with certainty." Alban II, 2011 U.S. Dist. LEXIS 26754 at *31-32 (noting that a plaintiff must sufficiently allege that a "manufacturer *knew with certainty* that the product at issue or one of its components was going to fail" and finding that allegations that "merely indicate that [the manufacturer] *might* have known of the defect" are insufficient to state a claim for consumer fraud) (emphasis in original). Further, even if Samsung was on notice of certain refrigerator malfunctions by June 2006 (which plaintiffs do not adequately allege), plaintiffs do not (and cannot) explain how such notice would conceivably alert Samsung to a specific, systemic defect with the control board in certain models. Such a conclusion is speculative and implausible.

The SAC also falls far short of providing the requisite specificity as to the time, place and manner of the alleged fraud. "At a minimum, Rule 9(b) requires plaintiffs to 'identify the speaker of the allegedly fraudulent statements.'" Gotthelf v. Toyota

1492849_6

Motor Sales, U.S.A., Inc., 2012 U.S. Dist. LEXIS 62045, *54 (D.N.J. May 3, 2012) (quoting Klein v. Gen. Nutrition Co., Inc., 186 F.3d 338, 345 (3d Cir. 1999)).  Once again, the SAC does not identify who at Samsung was aware of the alleged defect, when or how they learned of such a defect and how the decision was made to conceal the defect from its customers -- all fatal shortcomings.  While making the pretense that plaintiffs are providing the "who, what, when, where, how and why," plaintiffs in fact provide no particulars whatsoever.  Plaintiffs merely identify "Samsung" as the party responsible for the alleged fraudulent concealment and acknowledge that they have no names of persons responsible for the fraudulent concealment, no specific information explaining the alleged defect other than what generally may occur, no facts to support when Samsung first learned of the alleged defect, and no documentation showing where or how Samsung concealed information.  Indeed, plaintiffs do not even differentiate between SEA and SEC.  Further, plaintiffs merely claim that in "[a]ll pre- and post-sale communications referring or relating to the Refrigerators" Samsung failed to disclose the alleged defect, but have alleged nothing identifying any specific communication or even exactly what information was concealed.  SAC at ¶107(d).

The SAC also fails to provide facts to support the allegation that Samsung "failed to disclose that the control board in the Refrigerators was designed and/or manufactured in such a way as to cause the Refrigerators to stop functioning long before the end of their expected useful life."  Id. at ¶107(b).  Indeed, the SAC does not even specify what is wrong with the control board other than to vaguely allege

20

that it was "not designed and/or manufactured properly," which allegation cannot possibly advise Samsung of the nature of the purported defect. Id. at ¶84. Moreover, plaintiffs do not allege that the control board is the same (or even similar) in each of their six refrigerators, thus leaving it to pure conjecture as to whether the alleged defect is the same or similar.

Plaintiffs attempt to circumvent these flaws by broadly alleging that "the breadth of the fraud is entirely within Samsung's control." SAC at ¶106. As the Third Circuit has noted, "even when the defendant retains the flow of information, boilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997); see also Weske, 2012 U.S. Dist. LEXIS 32289 at *17. Despite claiming to do so, however, plaintiffs have again failed to provide the essential factual background -- the "who, what, when, where and how" of the circumstances at issue.[8] See In re Rockefeller, 311 F.3d at 216; see also Arlandson, 2011 U.S. Dist. LEXIS 56462 at *45 (finding plaintiffs to "have failed to provide the requisite level of substantiation in their consumer fraud claim" where they "do not specifically identify the time, place or manner of the alleged fraud, nor do they link Defendants' alleged marketing and

---

[8] By way of example, as to "who," Plaintiffs continue to merely identify Samsung without identifying any particular actor associated with either Samsung entity that engaged in fraudulent conduct. SAC at ¶107(a). Similarly, as to "how," plaintiffs refer to "Samsung's failure to disclose the Refrigeration Defect to potential or actual purchasers," but do not provide any facts underpinning this alleged nondisclosure scheme, including that Samsung was aware of the alleged defect. Id. at ¶107(e).

1492849_6

advertisement fraud with their purchases and resulting injuries," but instead make "generalized assertions" and only set forth "in vague terms, who made a representation to whom and the general content of the representation"); Glauberzon v. Pella Corp., 2011 U.S. Dist. LEXIS 38138, *28 (D.N.J. Apr. 5, 2011) (finding the complaint to lack requisite factual detail because plaintiffs "do not identify who at Pella was aware of the existence of a product-wide [] defect, when or how they learned of such a defect and/or when and how the decision was made to conceal the defect from its customers -- all of which are required under the Rule 9(b) pleading standard"); Alban II, 2011 U.S. Dist. LEXIS 26754 at *36 (directing plaintiff to set forth "information as to when, before the time he purchased his vehicle, BMW had learned of the defect, how it had gained its knowledge, and when and how the decision was made to conceal the defect from customers"). Plaintiffs here have failed to meet the requirements of Rule 9(b) and it is respectfully submitted that their fraud claims warrant dismissal.

Contrary to this Court's direction, plaintiffs have not "explain[ed] why the additional missing information lies exclusively within Samsung's control." Weske, 2012 U.S. Dist. LEXIS 32289 at *17. Of course, this is because Samsung is not in exclusive control of information relating to customer complaints, as any purported complaints concerning the alleged defect are equally within the knowledge of such complainants. As the Court recognized, "if Plaintiffs are aware of [] customers and their early complaints, why would they not also have some knowledge about the specific complaints made or who the customers targeted?" Weske, 2012 U.S. Dist.

LEXIS 32289 at *18.  In response, plaintiffs have amended their pleading to include just four examples of "early complaints."   As discussed above, none of these examples demonstrate that Samsung was aware of the alleged defect at the time plaintiffs purchased their refrigerators.

Additionally, the "breadth of the [alleged] fraud" is also not exclusively in Samsung's control.  In contravention of Rule 9(b), plaintiffs continue to offer nothing but more conclusory statements as to how it is that Samsung maintains exclusive control over complaints made by others of which plaintiffs claim to be aware.  See Donachy, 2012 U.S. Dist. LEXIS 34029 at *11; Hughes, 2011 U.S. Dist. LEXIS 79504 at *12-14; AC at ¶¶98-99.

In further disregard of the Court's direction, plaintiffs still do not "allege the manner in which these complaints were made."  Indeed, *none* of these four examples involve any communication with Samsung concerning the alleged defect.  SAC at ¶¶101-03.  Plaintiffs also do not provide any detail concerning the supposed 300 individuals that have contacted plaintiffs' counsel "with complaints that appear to stem from the Defect."  Id. at ¶¶2, 100.  While plaintiffs claim that just nine of these individuals experienced problems with their refrigerator within the first year after purchase, plaintiffs do not set forth the manner in which such complaints were communicated to Samsung, if at all, such that Samsung was aware of the alleged defect.

Finally, the SAC also fails to set forth how Samsung's marketing and advertising was false and/or misleading.  The SAC references "[a]ll pre- and post-sale

communications referring or relating to the Refrigerators" as part of the alleged fraud because "none of these communications disclosed the Refrigeration Defect." SAC at ¶107(d). However, plaintiffs do not claim to have seen and/or relied upon these communications or any marketing materials whatsoever from Samsung. Indeed, plaintiffs Weske, Frager, Chermak, Polsean, Kean and Burns do not claim that they relied on *anything* before purchasing their refrigerators, id. at ¶¶13-29, 36-72, and plaintiff Myhre alleges only that he read internet reviews and was advised by a Best Buy employee that "it was a good refrigerator." SAC at ¶30. The SAC also fails to allege that any statements made by Samsung are actually false. The SAC is thus devoid of any allegation that plaintiffs actually read or relied on any allegedly false statements in Samsung's "pre- and post-sale communications." Accordingly, plaintiffs fail to particularize their fraud claims in this manner as well. See Montich v. Miele USA, Inc., 2012 U.S. Dist. LEXIS 41398, *36 (D.N.J. Mar. 27, 2012) ("[w]ithout any allegation of actual reliance, Plaintiff's complaint is lacking all the essential factual background necessary to inform the Court of Plaintiff's fraud claim, including what representations she relied on, if any, or where or how those representations were made, such that Plaintiff could have learned of the defect had [Defendant] not omitted it, and whether Plaintiff would have acted differently had she known of the alleged defect").

In sum, plaintiffs have failed to allege their fraud-based claims with requisite specificity. The SAC fails to provide legitimate factual support for the generalized allegations that Samsung knew, or had reason to know, or was even reckless in not

1492849_6

knowing of an alleged defect with plaintiffs' refrigerators. Further, the SAC fails to allege facts that support the allegations that Samsung concealed, failed to disclose or misrepresented information. Since the allegations in the SAC are bereft of factual detail and do not provide sufficient precision to place Samsung on notice of the basis for plaintiffs' speculative fraud-based claims, dismissal of plaintiffs' consumer fraud and fraudulent concealment claims pursuant to Fed. R. Civ. P. 9(b) is warranted.

**B. THE SECOND AMENDED COMPLAINT ALSO FAILS TO STATE A CLAIM UNDER THE CONSUMER PROTECTION STATUTES OF PLAINTIFFS' HOME STATES**

As the Court has already determined that "each Plaintiff's home state has the most significant relationship to each Plaintiff's consumer fraud action," Weske, 2012 U.S. Dist. LEXIS 32289 at *15, the consumer protection statute of each plaintiff's home state will apply to their respective consumer fraud claims. Because these claims fail to state a cognizable cause of action under the Ohio, Illinois and California statutes, plaintiffs' claims should be dismissed as a matter of law.

**1. Frager (Ohio)**

To bring a class action under the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. § 1345.01 et seq., a plaintiff must plead that the complained of act was previously declared deceptive or unconscionable by rule or by a state court prior to the commission of the act. O.R.C. § 1345.09(B); Johnson v. Microsoft Corp., 802 N.E.2d 712, 720 (Ohio 2003). In other words, "for a plaintiff to bring a claim under the OCSPA as a class action, 'there must be a substantial similarity between a defendant's alleged violation of the Act and an act or practice previously declared

deceptive by either a rule promulgated by the Attorney General or a court decision that was publicly available when the alleged violation occurred.'" <u>Hoffer v. Cooper Wiring Devices, Inc.</u>, 2007 U.S. Dist. LEXIS 42871, *8 (N.D. Ohio June 13, 2007) (quoting <u>Marrone v. Philip Morris U.S.A., Inc.</u>, 850 N.E.2d 31, 36 (Ohio 2006)). Significantly, "Ohio caselaw holds that 'mere non-disclosure of a defect, without more, does not fall within the purview of deceptive or unconscionable practices prohibited by the Act.'" <u>Radford v. Daimler Chrysler Corp.</u>, 168 F. Supp. 2d 751, 754 (N.D. Ohio 2001) (quoting <u>Bierlein v. Bernie's Motor Sales, Inc.</u>, 1986 Ohio App. LEXIS 7181, *17 (Ohio App. 1986)).

Here, Frager's attempt to show that Samsung's alleged fraud was previously declared deceptive falls woefully short.  Frager points to a single decision, <u>Nessle v. Whirlpool Corp.</u>, 2008 U.S. Dist. LEXIS 56940 (N.D. Ohio July 25, 2008), as placing Samsung "on notice that its conduct violated the [OCSPA]."  SAC at ¶132.  As an initial matter, <u>Nessle</u> does not declare *any* act or practice to be "deceptive" under the OCSPA.  Rather, the court in <u>Nessle</u> merely denied a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). <u>Id.</u> at *9.  Accordingly, <u>Nessle</u> does not constitute a prior judgment placing Samsung on notice of a deceptive or unconscionable act so as to satisfy O.R.C. § 1345.09(B). <u>See</u>, <u>e.g.</u>, <u>St. Clair v. Kroger Co.</u>, 581 F. Supp. 2d 896, 901 (N.D. Ohio 2008) (dismissing class action complaint because "plaintiff's complaint neither refers to a rule or judgment placing [defendant] on notice of its deceptive act"); <u>City of Findlay v. Hotels.com, L.P.</u>, 441 F. Supp. 2d 855, 863 (N.D. Ohio 2006) (same).  Moreover, the <u>Nessle</u> decision was issued on July 25, 2008 --

26

more than five months *after* Frager purchased her refrigerator.  SAC at ¶21; Nessle, 2008 U.S. Dist. LEXIS 56940.  Thus, Nessle could not possibly have put Samsung on notice of anything.

Additionally, even if it were a "judgment" (which it is not) that predated Frager's purchase, the facts alleged in Nessle are not "substantially similar" to the allegations of the SAC to provide the requisite statutory notice to Samsung.  Hoffer, 2007 U.S. Dist. LEXIS 42871 at *8.  Other than involving an allegedly defective refrigerator, the alleged defect in Nessle is wholly dissimilar to Frager's claims in this matter.  In Nessle, the plaintiff alleged a defect with the "cubed ice feature" in a single model of refrigerator manufactured by Whirlpool.  2008 U.S. Dist. LEXIS 56940 at *2.  More specifically, the plaintiff claimed that "crushed ice clogs the ice chute and freezes completely solid on a monthly basis." Id.  The plaintiff also took umbrage with the refrigerator's "gold label," which she claimed falsely suggested that the product would work properly and be free of defects.  Id. at *5.  These alleged defects are unrelated to the allegations made by Frager here and cannot serve as a basis for the requisite statutory notice under the OCSPA.  Further, insofar as Frager points to Nessle for the general proposition that "failure to disclose a material fact about a refrigerator is an act that has previously been declared deceptive," SAC at ¶132, such a broad and generalized characterization also fails to constitute notice under the Act.  See, e.g., Radford, 168 F. Supp. 2d at 754 (dismissing OCSPA claim because "mere non-disclosure of a defect, without more, does not fall within the purview of deceptive or unconscionable practices prohibited by the Act"); Marrone,

1492849_6

850 N.E.2d at 36 ("[a] general rule is not sufficient to put a reasonable person on notice of the prohibition against a specific act or practice. To permit a generic rule to constitute prior notice for purposes of O.R.C. § 1345.09(B) would allow any previous determination of a deceptive act or practice to qualify as prior notice for any subsequent alleged deceptive act or practice"). Since Frager fails to identify any act by Samsung that was previously declared deceptive or unconscionable, as required for class action treatment under the OCSPA, Frager's OCSPA claim should be dismissed under Fed. R. Civ. P. 12(b)(6).

### 2. Chermak and Polsean (Illinois)

In order to maintain a private cause of action under the Illinois Consumer Fraud Act ("ICFA"), 815 I.L.C.S. 505/1, et seq., a plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." Avery v. State Farm Mut. Auto. Ins. Co., 835 N.E.2d 801, 850 (Ill. 2005). Significantly, a valid claim arising from an alleged concealment or omission "must show that the concealment or omission proximately caused the plaintiff's injury." Evitts v. DaimlerChrysler Motors Corp., 834 N.E.2d 942, 948 (Ill. App. 2005) (citing Connick v. Suzuki Motor Co., Ltd., 675 N.E.2d 584 (Ill. 1996)). Thus, a "plaintiff must actually be deceived by a statement or omission that is made by the defendant. If a consumer has neither seen nor heard any such statement, then

28

she cannot have relied on the statement and, consequently, cannot prove proximate cause." <u>DeBouse v. Bayer AG</u>, 922 N.E.2d 309, 316 (Ill. 2009).

In <u>DeBouse</u>, the plaintiff alleged that the "defendant drug manufacturer deceived the medical community and the public at-large by concealing information about negative side effects of the defendant's cholesterol-lowering drug." 922 N.E.2d at 311. The plaintiff alleged that her doctor recommended the drug in question to her and she consumed it for approximately six months prior to its removal from the market. <u>Id.</u> at 311-12. The Illinois Supreme Court dismissed plaintiff's ICFA claim because she did not allege she had any communication with the defendant drug manufacturer containing the allegedly concealed information. <u>Id.</u> at 319. Here, Chermak and Polsean fail to allege that they actually received and relied upon any statement or omission from Samsung, as required under the ICFA. In fact, neither plaintiff alleges that he relied on any communications from Samsung whatsoever prior to the purchase of their respective refrigerators. SAC at ¶¶36-54. As such, these plaintiffs fail to establish the proximate causation required to bring a claim under the ICFA.

In addition, "[w]here a plaintiff claims consumer fraud [under the ICFA] on the premise that the defendant concealed or omitted material facts regarding products from potential buyers with the intent that buyers rely on such a concealment or omission, a plaintiff must allege that the fact omitted or concealed was known to the defendant at the time of concealment." <u>Evitts</u>, 834 N.E.2d at 948 (dismissing ICFA claim because plaintiff did not sufficiently allege defendant's knowledge of the

allegedly concealed information and instead relied on conclusory statements and unsupported assumptions); see also Suddreth, 2011 U.S. Dist. LEXIS 126237 at *16 (dismissing ICFA claim due to plaintiff's failure to "allege sufficient facts to demonstrate that Defendants plausibly knew of the defect and willfully concealed that information from the public"). Here, as discussed above, Chermak and Polsean rely on conclusory and unfounded statements about Samsung's purported knowledge of the "defect," which allegations are insufficient to maintain an ICFA claim. Id. Accordingly, Chermak and Polsean have failed to state a claim under the ICFA and dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate.

### 3. Kean and Burns (California)

Plaintiffs Kean and Burns assert causes of action under both the California Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq., and the California Unfair Competition Law ("CUCL"), Cal. Bus. & Prof. Code §17200, et seq. (SAC at ¶128(a)). Both claims are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

In order to state a viable claim under either the CLRA or CUCL, a plaintiff must have standing -- she "must plead that she actually relied on Defendant's statements or omissions and suffered injury in fact." Montich, 2012 U.S. Dist. LEXIS 41398 at *30; see also Kaing v. PulteGroup, Inc., 2011 U.S. App. LEXIS 26003 (9th Cir. Dec. 29, 2011). "To prove reliance in a fraudulent omission case, Plaintiff must establish that 'had the omitted information been disclosed, [he] would have been aware of it and behaved differently.'" Montich, 2012 U.S. Dist. LEXIS 41398 at *30-31 (quoting Mirkin v. Wasserman, 858 P.2d 568, 574 (Cal. App.

1993)).  Here, because Kean and Burns do not allege that they saw or relied on any advertisements or disclosures by Samsung, they lack standing to pursue claims under the CLRA and CUCL.  See id. at *33 (dismissing CUCL claim because "plaintiff does not allege (1) that she saw any [of defendant's] advertisements or representations regarding its front-loading washing machines such that she would have been aware of any relevant disclosures or omissions or (2) that had she had been aware of such disclosures, she would have behaved differently").

Even if they had standing (which they do not), Kean and Burns' consumer fraud claims nevertheless fail.  The CLRA proscribes specified "unfair methods of competition and unfair or deceptive acts or practices" in transactions for the sale or lease of goods to consumers.  Cal. Civ. Code § 1770(a).  "[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."  Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 835 (Cal. App. 2006); see also Bardin v. DaimlerChrysler Corp., 136 Cal. App. 4th 1255, 1276 (Cal. App. 2006).  Significantly, California courts have "expressly rejected the notion that a manufacturer can be liable under the CLRA for failure to disclose a defect that manifests itself after expiration of the warranty period."  Oestreicher v. Alienware Corp., 544 F. Supp. 2d 964, 969 (N.D. Cal. 2008) (citing Daugherty, 144 Cal. App. 4th at 835-36).  This is so because "a consumer's only reasonable expectation [is] that

31

the [product] would function properly for the duration" of the express warranty. Vitt v. Apple Computer, Inc., 2012 U.S. App. LEXIS 4419, *5 (9th Cir. Feb. 28, 2012).

In Daugherty, the plaintiff alleged that an automobile manufacturer knowingly concealed a defect that arose only after the expiration of the express warranty, and that such allegations formed a cognizable CLRA claim. 144 Cal. App. 4th at 833-34. The Daugherty court held that, since no representation concerning the defect was alleged and the plaintiff's automobile functioned as warranted, no CLRA claim was stated. Id. at 835. Subsequent decisions "persuasively read Daugherty to hold that there is no duty to disclose that a product may fail beyond its warranty period absent an affirmative representation or a safety risk."[9] Vitt, 2012 U.S. App. LEXIS 4419 at *5; see also Oestreicher, 544 F. Supp. 2d at 970 (finding that "since any defects in question manifested themselves after expiration of the warranty period, plaintiff's CLRA claim must be barred under Daugherty" and its progeny); Hovsepian v. Apple,

---

[9] To the extent that plaintiffs may claim that potential food spoilage creates a "safety risk," they are mistaken. As an initial matter, Kean and Burns lack standing to raise this concern, as they do not allege that their safety was jeopardized. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed 2d 351, 364 (1992) (standing requires that "the plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"). Moreover, this "risk" is purely speculative. Indeed, the SAC describes the risk of ingesting "unsafe food" as merely "plausible." SAC at ¶92. In addition, plaintiffs fail to articulate a causal nexus between the alleged defect and the purported safety risk that they did not experience (and that any reasonable person could detect). See Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1143-45 (9th Cir. 2012) (affirming dismissal of CLRA claim because plaintiffs did not sufficiently allege a causal connection between the alleged design defect and the alleged safety hazard (laptops that overheated and caught fire)).

32

Inc., 2009 U.S. Dist. LEXIS 117562, *10 n.3 (N.D. Cal. Dec. 17, 2009) (dismissing CLRA claim and noting that "knowledge that a product is likely to fail at some point cannot give rise by itself to an actionable [CLRA] claim").

Kean and Burns' CLRA claim also fails because they do not identify which section of the CLRA Samsung allegedly violated, which omission requires dismissal of this claim. See Guzman v. Bridgepoint Educ., Inc., 2012 U.S. Dist. LEXIS 74767, *19 (S.D. Cal. May 30, 2012); Palestini v. Homecomings Fin., LLC, 2010 U.S. Dist. LEXIS 72985, *32 (S.D. Cal. July 20, 2010).  Additionally, "CLRA claims based on failures to disclose may only be maintained if there is some 'relationship between the plaintiff and the defendant in which a duty to disclose can arise.'"  Cirulli v. Hyundai Motor Co., 2009 U.S. Dist. LEXIS 124670, *10 (C.D. Cal. Nov. 9, 2009).  Here, plaintiffs' CLRA claim does not distinguish between SEC and SEA and does not allege that SEC engaged in any "transaction" with Kean or Burns pursuant to the CLRA.  As there is no transaction between SEC and these plaintiffs, their CLRA claim necessarily fails as to SEC.  Id. at *12; see also Robinson v. HSBC Bank USA, 732 F. Supp. 2d 976, 988 (N.D. Cal. 2010) ("plaintiffs do not argue that they ever sought to enter a transaction with HSBC, much less that they were then damaged as a result of that interaction.  As such, plaintiffs cannot state a claim for violation of the CLRA").

Kean and Burns' CUCL claim is likewise subject to dismissal.  The CUCL prohibits "any unlawful, unfair or fraudulent business act or practice... ."  Cal. Bus. & Prof. Code § 17200, et seq.  In order to state a claim under the CUCL, a plaintiff

1492849_6

must allege that a defendant's conduct violated "any or all of the three prongs of the [C]UCL -- unlawful, unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (Cal. App. 2007). For the first prong ("unlawful"), the CUCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527, 539-40 (Cal. 1999); Smith v. Ford Motor Co., 2011 U.S. App. LEXIS 25170 (9th Cir. Dec. 19, 2011) ("[t]he unlawful conduct prong of the [C]UCL is derivative of other California laws" such as the CLRA). The second prong ("unfair") can be grounded in the violation of a statute, Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995), or can be a "standalone" claim when the conduct "violates established public policy or if it is immoral (unethical), oppressive or unscrupulous and causes injury to customers which outweighs its benefits." McKell v. Wash. Mut. Inc., 142 Cal. App. 4th 1457, 1473 (Cal. App. 2006). The third prong ("fraudulent") can be based on a common-law fraud or a course of conduct that is likely to deceive. Bardin, 136 Cal. App. 4th at 1274.

Here, Kean and Burns fail to state a claim under any of the three prongs of the CUCL. As to the first prong, the only statute that Kean and Burns allege that Samsung violated is the CLRA. Since plaintiffs' CLRA claim should be dismissed for the reasons set forth above, Kean and Burns cannot state a violation of the CUCL under the "unlawful" prong. See Daugherty, 144 Cal. App. 4th at 837.

34

In order for conduct to satisfy the second prong ("unfair") of the CUCL, the alleged consumer injury must be "substantial." Camacho v. Auto. Club of S. Cal., 142 Cal. App. 4th 1394, 1403 (Cal. App. 2006). As a matter of law, the failure of a product after the expiration of the warranty period is not a substantial injury and therefore cannot support a claim under the second prong of the CUCL. See, e.g., Daugherty, 144 Cal. App. 4th at 839 ("the failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as a substantial injury to consumers, and accordingly does not constitute an unfair practice under the [C]UCL"). Since Kean and Burns do not allege that they experienced the alleged defect during the one year warranty period, they have not experienced a "substantial" injury that can form the basis of a CUCL claim.

Finally, Kean and Burns also fail to state a claim under the third prong ("fraudulent") of the CUCL. For purposes of the CUCL, "fraudulent" means that members of the public are likely to be deceived. Comm. on Children's Television, Inc. v. Gen. Foods Corp., 673 P.2d 660, 668 (Cal. 1983). "In order to be deceived, members of the public must have had an expectation or assumption" about the matter in question. Bardin, 136 Cal. App. 4th at 1275. "The only expectation buyers could have . . . [is] that [a product] would function properly for the length of [the] express warranty." Daugherty, 144 Cal. App. 4th at 838. Again, insofar as Kean and Burns

do not allege that they experienced the purported defect during the one year express warranty period, they have also failed to state a claim under this prong of the CUCL.

In addition, the Supreme Court of California has found that the "language [of the CUCL] imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the [C]UCL's fraud prong." In re Tobacco II Cases, 207 P.3d 20, 39 (Cal. 2009); see also Monaco v. Bear Stearns Cos., 2011 U.S. Dist. LEXIS 105471 (C.D. Cal. Sept. 12, 2011) ("[t]o prove . . . a [C]UCL violation based on fraud, Plaintiffs must show actual reliance on [defendant's] fraudulent omissions"). As discussed above, Kean and Burns do not allege that they relied on any communications from Samsung in connection with the purchase of their refrigerator. As such, their CUCL claim fails for this reason as well. Accordingly, Kean and Burns' CUCL claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## III.   PLAINTIFFS'   CLAIM   FOR   BREACH   OF   IMPLIED WARRANTY SHOULD BE DISMISSED

Plaintiffs' cause of action for breach of implied warranty also fails to state a claim for which relief may be granted. Significantly, plaintiffs Frager, Myhre, Chermak, Polsean, Kean and Burns do not assert a claim for breach of implied warranty. SAC at ¶¶161-73. This is undoubtedly so because Ohio, Washington, Illinois and California law (which must be applied pursuant to a choice of law analysis under New Jersey's most significant relationship test) require privity in order to bring an implied warranty claim and these plaintiffs lack such privity with Samsung. See Weske, 2012 U.S. Dist. LEXIS 32289 at *22 ("[p]laintiffs' claim []

fails under either Ohio or Washington law" because of the requirement of privity in both of these states).

As to Weske, the Court has already recognized that New Jersey law should be applied to his breach of implied warranty claim because the laws of New Jersey and Minnesota are "substantially similar," thus no conflict exists. Weske, 2012 U.S. Dist. LEXIS 32289 at *19 ("as the parties concede, New Jersey law and Minnesota law relating to causes of action for breach of an implied warranty appear to be substantially similar"). Under New Jersey law, Weske's claim must fail since he has not alleged that the product failed within the warranty period nor that the warranty was unconscionable.

## 1. Weske (Minnesota resident, New Jersey law)

As explained above, in the absence of a conflict between Minnesota and New Jersey law, New Jersey law applies to Weske's breach of implied warranty claim. Under New Jersey law, "[w]arranties whether express or implied shall be construed as consistent with each other." N.J.S.A. 12A:2-317; see also N.J. Transit Corp. v. Harsco, 497 F.3d 323, 330 (3d Cir. 2007) (holding that the petitioner could not "rely on the implied warranties of merchantability and fitness for a particular purpose to recover damages, where the contract's one-year express warranty had expired at the time of the loss."); Nobile, 2011 U.S. Dist. LEXIS 26766 at *11 (holding that N.J.S.A. 12A:2-317 limits any implied warranty to the terms of an express warranty); see also Weske, 2012 U.S. Dist. LEXIS 32289 at *20 (noting that plaintiffs do not dispute that any implied warranty could not last beyond the one year term of the

37

express warranty).   Accordingly, any implied warranties are coterminous with the express warranty accompanying the product.  <u>Id.</u>

Here, the express warranty accompanying Weske's refrigerator was for one year.  Weske purchased his refrigerator in December 2006 and did not experience the alleged defect until "the spring of 2009" -- approximately 2½ years later.  SAC at ¶¶13, 16.  As the express warranty expired prior to Weske experiencing any alleged defect, any implied warranties accompanying the refrigerator also expired. Moreover, the express warranty specifically disclaimed any implied warranties beyond the term of the express warranty.  <u>See</u> Warranty, Ex. A to the O'Hara Dec. Accordingly, Weske's breach of implied warranty claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs previously sought to avoid this result by alleging that the limitations of any implied warranty should not operate because it would be unconscionable.  The Court expressly rejected this attempt, finding that "Plaintiffs' allegations fall far short of what would be necessary to make a prima facie case for unconscionability."[10] <u>Weske</u>, 2012 U.S. Dist. LEXIS 32289 at *21.   The Court found that plaintiffs' allegations concerning unconscionability were "so sparse that it is difficult to ascertain which kind of unconscionability [procedural or substantive] is at issue." <u>Id.</u>

---

[10] Under New Jersey law, in determining whether a warranty is unconscionable, courts look to two factors: "1) unfairness in the formation of the contract, or procedural unconscionability, and 2) excessively disproportionate terms, or substantive unconscionability."   <u>Alban II</u>, 2011 U.S. Dist. LEXIS 26754 at *25 (quoting <u>Sitogum Holdings, Inc. v. Ropes</u>, 352 N.J. Super. 555, 564, 800 A.2d 915, 921 (N.J. Ch. Div. 2002)).

1492849_6

The Court further determined that the single sentence in their Complaint in which plaintiffs allege unconscionability was "precisely the kind of legal conclusion that the Court need not accept as true . . . [because] [t]he allegations do not even begin to explain how exactly the warranty period is unconscionable." Id. at *22.

In the SAC, Weske fails to provide any additional factual support for his allegation that the one year warranty that accompanies Samsung's refrigerators is unconscionable.[11]    Remarkably, the SAC relies on the *exact same* conclusory allegation that the Court previously described as "the kind of legal conclusion that the Court need not accept as true" in concluding that plaintiffs' allegations "fall far short" of stating a claim for unconscionability. Id. at *21-22; cf. Complaint at ¶121, with SAC at ¶172.  In light of plaintiffs' abject failure to include any additional allegations concerning unconscionability in the SAC, Weske's claim for breach of implied warranty should be dismissed for the reasons previously expressed by the Court. Id.; see also Nobile, 2011 U.S. Dist. LEXIS at *8-10 (dismissing breach of express and implied warranty claims because alleged defects occurred after the expiration of the manufacturer's warranty).

---

[11] Of course, a manufacturer's general awareness that a part may fail at some point does not mean that the failure renders the limitation of the warranty unconscionable. See Duquesne v. Westinghouse Elec. Corp., 66 F.3d 604, 616 (3d Cir. 1995) (stating the "general rule" that "an express warranty does not cover repairs made after the applicable time has elapsed," regardless of whether the defect existed prior to the expiration of the warranty); Abraham v. Volkswagen of Am., Inc., 795 F.2d 238 (2d Cir. 1986) ("[m]anufacturers always have knowledge regarding the effective life of particular parts . . . A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless . . . limitations in warranty coverage").

1492849_6

## 2. Frager (Ohio -- "tortious breach of implied warranty")

Finally, the SAC appears to assert a claim on behalf of Frager for "tortious breach of implied warranty" under Ohio law. SAC at ¶163. This cause of action sounding in tort was not asserted in the initial Complaint in this matter nor previously addressed by the parties or the Court. The Court's March 12, 2012 order provides that "any further amendment, such as the adding of parties *or claims* not addressed in this order, shall require further leave of the Court." March 12, 2012 Order at p. 2 (emphasis added). However, plaintiffs' motion for leave to file the SAC represented that plaintiffs sought such leave solely "for the purpose of adding four additional Plaintiffs" and that "the new Plaintiffs assert the *same basic claims* as the initial Plaintiffs, albeit under the law of two new states." See Plaintiffs' Brief, Motion for Leave to File SAC, at 1, 2 (emphasis added). Accordingly, as plaintiffs have not been granted leave to assert this novel claim, it is improper and should be stricken from the SAC pursuant to Fed. R. Civ. P. 12(f). See U.F.C.W. Local 56 Health & Welfare Fund v. J.D.'s Mkt., 240 F.R.D. 149, 154 (D.N.J. 2007) (finding that "the failure to seek the required leave of court when adding a new allegation is grounds for striking that allegation" under Fed. R. Civ. P. 12(f)); see also Bartels v. Hudson Ins. Co., 2008 U.S. Dist. LEXIS 95445, *9-10 (D.N.J. Nov. 21, 2008) (noting that "Plaintiffs have had amendments stricken under Rule 12(f) when they add both claims and parties not envisaged by the initial motion to amend").

1492849_6

Regardless, Frager's improperly asserted claim for "tortious breach of implied warranty" fails as a matter of law.[12] Unlike most jurisdictions, Ohio law at one time recognized a cause of action for breach of an implied warranty in tort in the absence of privity of contract. See McKinney v. Bayer Corp., 744 F. Supp. 2d 733, 756 n.13 (N.D. Ohio 2010). However, since recognizing this cause of action, Ohio courts have gradually limited its availability, most notably through application of the economic loss rule.

"The economic loss rule prohibits purchasers of products from recovering purely economic damages under most tort theories." HDM Flugservice GMBH v. Parker Hannifin Corp., 332 F.3d 1025, 1028 (6th Cir. 2003). "The rationale behind the economic loss doctrine is to prevent a plaintiff from circumventing the terms of the contractual agreement by bringing an action in tort when the damages sought are the same as if the plaintiff brought the action under the contract." MagnetNotes, Ltd. v. Trexan Chems., Inc., 2010 U.S. Dist. LEXIS 143469, *9 (N.D. Ohio July 22, 2010) (citing E. River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 872, 106 S. Ct. 2295, 2303, 90 L. Ed. 2d 865, 878 (1986)). The economic loss rule thus "maintains a balance between tort law, which is designed to redress losses suffered by the breach of a duty imposed by law to protect societal interests, and contract law, which establishes that parties to a commercial transaction should remain free to

---

[12] In the interest of economy, Samsung will avoid a choice of law discussion since the parties appear to agree that Ohio law governs this claim and New Jersey law does not even recognize this purported cause of action.

govern their own affairs." <u>Nat'l Interstate Ins. Co. v. Motor Coach Indus., Inc.</u>, 2012 U.S. Dist. LEXIS 9388, *4-5 (N.D. Ohio Jan. 26, 2012) (citing <u>Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.</u>, 537 N.E.2d 624, 628 (Ohio 1989)).

Ohio initially rejected the economic loss rule and allowed tort recovery for economic losses. <u>HDM Flugservice</u>, 332 F.3d at 1029; <u>see also</u> <u>Iacono v. Anderson Concrete Corp.</u>, 326 N.E.2d 267, 270 (Ohio 1975). However, in 1989, the Ohio Supreme Court expressly limited its prior holdings by applying the economic loss rule to parties in privity of contract. <u>Chemtrol</u>, 537 N.E.2d at 635. While <u>Chemtrol</u> declined to consider whether the economic loss rule should also apply to parties lacking privity, the court "cast doubt on previous Ohio Supreme Court holdings allowing such recovery." <u>HDM Flugservice</u>, 332 F.3d at 1029 (quoting <u>Chemtrol</u>, 537 N.E.2d at 632 n.7). Indeed, the <u>Chemtrol</u> court described those prior cases that permitted plaintiffs to recover under tort theories for purely economic losses as representing the "minority view" and being the "subject of substantial criticism." <u>Chemtrol</u>, 537 N.E.2d at 632 n.7. Thus, the Sixth Circuit found that the <u>Chemtrol</u> court "implied there was considerable doubt whether those decisions would be reaffirmed in a future case." <u>HDM Flugservice</u>, 332 F.3d at 1029. Not surprisingly, the Sixth Circuit then held that commercial parties lacking privity would be foreclosed from recovering economic losses. <u>Id.</u> at 1029-30. The Sixth Circuit did not address the continuing viability of the economic loss rule as to non-commercial parties and subsequent cases do not appear to have further evaluated Ohio's growing embrace of this doctrine. <u>See</u> <u>id.</u>

42

In light of Ohio's unmistakable shift toward full acceptance of the economic loss rule and the "considerable doubt" as to the viability of those cases eschewing it, Samsung respectfully submits that even where (as here) one non-commercial party is involved, the economic loss rule nonetheless forecloses any recovery by Frager. See HDM Flugservice, 332 F.3d at 1029-30; Chemtrol, 537 N.E.2d at 632 n.7, 635. Since Frager seeks recovery in tort for solely economic damages through her "tortious breach of implied warranty" claim, such recovery is barred by the economic loss rule.[13]    Accordingly, this improperly pled cause of action should nonetheless be dismissed.

## IV.  PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN

The Court may strike class allegations on the pleadings "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  Green v. Green Mtn. Coffee Roasters, Inc., 279 F.R.D. 275, 283-84 (D.N.J. 2011) (striking class where pleadings failed to allege sufficient facts to meet predominance requirement under Fed. R. Civ. P. 23(a)).  Here, even if plaintiffs'

---

[13] Frager's alleged damages relating to spoiled groceries constitute indirect economic losses that are encompassed by the economic loss rule.  SAC at ¶24.  Under Ohio law, "'economic damages' include both 'direct' economic losses -- the damage to the product itself -- as well as 'indirect' economic losses -- the consequential losses sustained due to the breach . . . "  MagnetNotes, Ltd. v. Trexan Chems., Inc., 2010 U.S. Dist. LEXIS 143469, *4 (N.D. Ohio July 22, 2010) (citing Chemtrol, 537 N.E.2d at 629); see also Nelson v. Todd, 426 N.W.2d 120 (Iowa 1988) (holding that meat spoilage caused by failure of meat preservative to prevent harm constituted economic loss); Staton Hills Winery Co. v. Collons, 980 P.2d 784, 789 (Wash. App. 1999) (applying economic loss exclusion to both a defective wine storage tank and the spoiled Sauvignon Blanc).

43

claims survive dismissal pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) (which they should not), plaintiffs face a dismal prospect of class certification. Indeed, in light of the Court's prior ruling that the law of each plaintiff's home state should apply to their consumer fraud claims, plaintiffs' class allegations are ripe for dismissal. See, e.g., Payne v. FujiFilm U.S.A., Inc., 2010 U.S. Dist. LEXIS 52808, *25-26 (D.N.J. May 28, 2010) ("[h]aving determined that the laws of the fifty states will apply to Plaintiffs' consumer fraud claims, the Court concludes that those claims cannot be certified because the common issues involved in the litigation of those claims would not predominate over the numerous variations in the application of the state laws"); Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 467 (D.N.J. 2009) ("[t]he marked variations among the state consumer fraud statutes with respect to [] available remedies, ascertainable loss, limitations periods, coupled with the [individualized] inquiries already required to determine liability, destroy any modicum of Class cohesiveness"); Maloney v. Microsoft Corp., 2011 U.S. Dist. LEXIS 134841, *31 (D.N.J. Nov. 21, 2011) ("[i]n light of this Court's determination that the laws of all 50 states apply to Plaintiffs' claims and because Plaintiffs have suggested no workable means by which to conduct a manageable trial . . . class certification is denied on a nation-wide basis because individual questions of law will predominate"). As other courts in this District have recognized, a class action encompassing fifty different (and often conflicting) consumer protection statutes would be unmanageable and unduly strain judicial resources. See id. Indeed, both the Court's prior decision and this brief demonstrate the extraordinary disparity among the various statutes and the

44

widely varying analyses required -- and from only a fraction of the potential states. See Agostino v. Quest Diagnostics, Inc., 2010 U.S. Dist. LEXIS 135310 (D.N.J. Dec. 22, 2010) ("the sheer number of state laws which would apply to the class claims in and of itself minimizes the advantages that class treatment is meant to provide").

### 1. Plaintiffs' claims lack predominance

Predominance measures whether the class is sufficiently cohesive to warrant certification and turns on "whether common questions of law or fact predominate." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 181, 187 (3d Cir. 2001). Under Rule 23(b)(3), "if proof of the essential elements of the cause of action require individual treatment, then there cannot be a predominance of 'questions of law and fact common to the members of the class.'" In re Linerboard Antitrust Litig., 305 F.3d 145, 156 (3d Cir. 2002) (quoting Fed. R. Civ. P. 23(b)(3)).

Here, it is clear that the myriad of individualized inquiries presented by plaintiffs' claims preclude a finding of predominance. First, as previously expressed, the "common issues involved in the litigation of [plaintiffs' consumer fraud] claims would not predominate over the numerous variations in the application of the state laws." Payne, 2010 U.S. Dist. LEXIS 52808 at *25-26; see also Gray v. Bayer Corp., 2011 U.S. Dist. LEXIS 79498, *24 (D.N.J. July 21, 2011) (predominance not met where the court "would be required to apply distinct standards of, inter alia, intent, causation, reliance, and damages in order to adjudicate Plaintiff's claims under each state's consumer fraud law"); Chin v. Chrysler Corp., 182 F.R.D. 448, 453 (D.N.J. 1998) ("[w]here the applicable law derives from the law of the 50 states, as opposed

to a unitary federal cause of action, differences in state law will compound the []

disparities among class members from the different states") (internal quotations

omitted).

In addition, "[w]here plaintiffs' claims are all based on an alleged common

product defect, courts in this District have recognized that even the basic issue of

whether the common defect exists may defeat predominance and render the class

action unmanageable." Payne, 2010 U.S. Dist. LEXIS 52808 at *8.  Thus, "courts in

this District have found that proving a defect is a highly individualized inquiry

unsuitable for class treatment," as each putative class member would have to establish

their refrigerators were defective.  Green, 279 F.R.D. at 284-85 (finding absence of

predominance where putative class included individuals who had not experienced the

alleged defect and thus "do not presently have a claim against Defendants"); see also

Mahtani v. Wyeth, 2011 U.S. Dist. LEXIS 70689, *20 (D.N.J. June 30, 2011)

("establishing deception under the NJCFA will require proof that the product is in

fact defective").  Indeed, "even if the purported defect has manifested in all of the"

putative class members' refrigerators, "individual inquiries as to the cause and extent

of the defect" would still be necessitated.  Green, 279 F.R.D. at 285; see also Newton,

259 F.3d at 191-92 ("actual injury cannot be presumed, and defendants have the right

to raise individual defenses against each class member").  In sum, the putative class

and its representative have too many individual situations to ignore.[14]  Accordingly,

---

[14]  In addition to determining (a) whether the alleged defect occurred during the
warranty period, after the warranty period or not at all and (b) the cause of each

plaintiffs cannot demonstrate predominance and certification of the class should therefore be denied.

## 2. Plaintiffs cannot satisfy the typicality requirement

The typicality requirement is intended to assess whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994) (citing 3B James W. Moore & John E. Kennedy, Moore's Federal Practice, P.23.06-02 (1993); H. Newberg & A. Conte, 1 Newberg on Class Actions, § 3.13 (1992)).   Where the legal or factual positions of the class representative are "markedly different" from those of the putative class members, typicality will not be satisfied. Zinberg v. Washington Bancorp, Inc., 138 F.R.D. 397, 406 (D.N.J. 1990) (quoting Weiss v. New York Hosp., 745 F.2d 786, 810 n.36 (3d Cir. 1984)).  In other words, "[i]f proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims." Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.R.D. 65, 77 (D.N.J. 1993) (quoting Brooks v. S. Bell Co., 133 F.R.D. 54, 58 (S.D. Fla. 1990)).  Accordingly, in order to meet his burden, a putative class representative

---

refrigerator's alleged failure to cool, individualized inquiries would also be necessary as to (c) whether each putative class member experienced a safety issue with the refrigerator, (d) whether each putative class member experienced any damages, and (e) whether the refrigerator in question has the same control board.  These significant issues far outweigh any coincidental factors that the broad proposed class may have in common.

must establish that his claims have the essential characteristics common to the claims of the class.  See Morgan v. Markerdowne Corp., 201 F.R.D. 341, 349-50 (D.N.J. 2001) (typicality requirement not met where many purported class members did not have the same experience as the class representative).

In this case, plaintiffs are atypical not only of the class they seek to represent, but of each other.  More specifically, plaintiffs seek to represent a class that includes individuals:

- whose refrigerators failed to cool for reasons other than an allegedly defective control board (e.g., failure of another component, improper use or repair, leaving the door open, etc.);
- with "other Samsung refrigerator model[s]" than those purchased by the plaintiffs (SAC at ¶112);
- who never experienced the alleged control board defect in any form;
- who allegedly experienced the defect but have no damages;
- who had their refrigerators repaired by non-authorized service persons;
- who allegedly experienced the defect during the warranty period and had it repaired;
- who allegedly experienced the defect during the warranty period and did not have it repaired; and
- who allegedly experienced the defect after the warranty period.

In addition, certain plaintiffs have unique factual circumstances which render their claims different from those of putative class members.  For example, Chermak alleges that he was offered an illusory "warranty extension," SAC at ¶¶40, 42, Myhre claims that his warranty expired while he awaited a response from Samsung, SAC at ¶31, and Kean and Burns allege that Samsung offered to reimburse them for up to $200 of their alleged damages, but never did so, SAC at ¶69.  Further, the class

48

representatives are not typical of putative class members that may have other types of claims that cannot be adjudicated, such as breach of express warranty or claims unique to particular states' laws.[15]   Given the "markedly different" legal and factual positions between plaintiffs and the putative class, the typicality prerequisite cannot possibly be met and the class allegations are therefore ripe for dismissal.   See Zinberg, 138 F.R.D. at 406.

Finally, plaintiffs' proposed class definition is impermissibly overbroad. Plaintiffs define the proposed class to include all United States residents who own or owned any of the six models purchased by plaintiffs and "any other Samsung refrigerator model containing the same control board as those models."   In addition to the typicality deficiencies that this overbroad definition presents, this definition ignores the fundamental issue of whether the identified models themselves even have the same control board (much less the alleged defect) and thus seeks to include unidentified and potentially unrelated persons within the class.

---

[15] By seeking only partial relief, plaintiffs "may be engaging in claim splitting, which is generally prohibited by the doctrine of res judicata" and also a compelling reason to not certify a class.   Nafar v. Hollywood Tanning Sys., 339 Fed. App'x 216, 224 (3d Cir. 2009).

## CONCLUSION

For the foregoing reasons, defendants Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. respectfully request that their motions to dismiss plaintiffs' Complaint pursuant to Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 12(b)(6) and to dismiss plaintiffs' class allegations be granted in their entirety.

Dated: June 25, 2012

James J. O'Hara
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

Attorneys for Defendants
Samsung Electronics America, Inc.
and Samsung Electronics Company, Ltd.

1492849_6