James E. Cecchi
Lindsey H.  Taylor
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ  07068
973.994.1700

Jonathan D. Selbin
Jason L.  Lichtman
Jeremy M. Glapion
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY  10013
212.355.9500

Kristen Law Sagafi
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94114
415.956.1000

J. Gordon Rudd, Jr.
David M.  Cialkowski
**ZIMMERMAN REED, PLLP**
80 South 8th Street
Minneapolis, MN  55402
612.341.0844

Christopher M. Placitella
Michael Coren
**COHEN, PLACITELLA AND ROTH, PC**
2001 Market Street, Suite 2900
Philadelphia, PA  19103
215.567.3500

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFF WESKE, JO ANNA FRAGER, DARRYL MYHRE, RALPH CHERMAK, JEFF POLSEAN, MAUREEN KEAN, and BEVERLY BURNS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.  AND SAMSUNG ELECTRONICS CO., LTD.,<br><br>Defendants. | Civil Action 10-4811 (WJM) (MF)<br><br><br>**THIRD AMENDED CLASS ACTION**<br>**COMPLAINT**<br>**and**<br>**DEMAND FOR JURY TRIAL** |

1132439.1

# TABLE OF CONTENTS

**Page**

I.   NATURE OF THE CLASS ACTION .................................................................. 1

II.  JURISDICTION AND VENUE ...................................................................... 2

III. PARTIES ................................................................................................ 3

    A.   Plaintiffs ........................................................................................ 3

    B.   Defendants .................................................................................... 13

IV.  FACTUAL BACKGROUND ........................................................................ 14

    A.   Samsung's Reputation for Quality ................................................ 14

    B.   How Refrigerators Keep Food and Medicine Cool, and the Purpose of Refrigeration ................................................................ 15

    C.   The Defect .................................................................................... 16

    D.   The Problems Created by the Refrigeration Defect ...................... 17

    E.   Samsung's Response to the Refrigeration Defect ......................... 18

    F.   Samsung's Knowledge ................................................................. 18

    G.   Samsung's Fraudulent Conduct ................................................... 27

V.   TOLLING ............................................................................................... 30

    A.   Discovery Rule ............................................................................. 30

    B.   Fraudulent Concealment .............................................................. 31

    C.   Estoppel ........................................................................................ 31

VI.  CLASS ACTION ALLEGATIONS ............................................................... 31

    A.   Numerosity / Impracticability of Joinder .................................... 32

    B.   Commonality and Predominance .................................................. 32

    C.   Typicality ...................................................................................... 33

    D.   Adequacy ...................................................................................... 34

    E.   Superiority .................................................................................... 34

VII. CLAIMS FOR RELIEF ............................................................................. 35

    COUNT I      VIOLATIONS OF THE STATE CONSUMER PROTECTION LAWS  35

    COUNT II     FRAUDULENT CONCEALMENT / NONDISCLOSURE ................... 39

    COUNT III    BREACH OF IMPLIED WARRANTIES ............................... 42

VIII. PRAYER FOR RELIEF ............................................................................ 44

IX.  DEMAND FOR JURY TRIAL ..................................................................... 45

- i -

Plaintiffs Jeff Weske, Jo Anna Frager, Darryl Myhre, Ralph Cermak, Jeff Polsean, Maureen Kean, and Beverly Burns, individually and on behalf of all others similarly situated in their respective states of residence, assert claims against Defendants for:  (a) violations of their home state's consumer protection laws (Count I); (b) negligent misrepresentation (Count II); and (c) breach of implied warranty (Count III).

## I.    NATURE OF THE CLASS ACTION

1.      The Defendants (collectively, "Samsung") sell refrigerators that fail to keep food cool ("Refrigerators").  While the Refrigerators appear to function properly when first purchased, in reality, they contain a design and/or manufacturing defect.  This defect, present at the time of sale, prematurely renders the Refrigerators unable to perform their core task of keeping food and/or medicine cold (the "Refrigeration Defect" or the "Defect").  Samsung's Refrigerators thus have a much shorter useful life than reasonable consumers expect, than the industry standard, and than other refrigerators.

2.      More than 300 consumers have contacted the undersigned counsel – unsolicited – with complaints about their Refrigerators that appear to be related to the Defect.

3.      On information and belief, Samsung began marketing and selling the Refrigerators no later than June 2005.

4.      Less than a year following the introduction of the Refrigerators, consumers began calling Samsung to report the Refrigeration Defect.  As a result of these calls, Samsung knew or should have known of the Defect by June 2006, and certainly by April 2008, when such defect had become especially well-known to Samsung and its authorized repair centers, which are required to submit claims to Samsung after servicing an in-warranty Samsung product.

5.      The details of Samsung's response to all of these calls are within the exclusive control of Samsung.  On information and belief, however, Samsung's response was no less than

- 1 -

negligent because Samsung failed to warn future purchasers of the Refrigeration Defect or to extend warranties on future Refrigerators to cover the (then known) Defect.

6.     While the Refrigeration Defect has caused hundreds of dollars of damage to each Plaintiff in parts, labor, and spoiled food, the Defect stems from a relatively inexpensive part: a faulty circuit board inside the Refrigerators.  Ex. A ("Silzars Decl.") at ¶¶ 9-12.

7.     The defective circuit board cannot be repaired by consumers or even a qualified service technician.  *Id.*  at ¶ 11.

8.     Samsung continues to market and sell defective Refrigerators to this day.  Yet, Samsung has never disclosed the existence of the Defect and, when consumers call to report failures, does not disclose that the cause is a known defect.

9.     Plaintiffs bring this multistate class action on behalf of consumers in each of their respective states because Plaintiffs purchased refrigerators from Samsung that they never would have purchased (or would only have paid a substantially reduced price for) had they known of the Refrigeration Defect.  They bring this action, as well, to prevent Samsung from harming other consumers in their respective states.

## II.     **JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and members of the Classes and Subclasses are citizens of states other than New Jersey, which is SEA's state of citizenship.

11.     This Court has personal jurisdiction over the parties because Defendants each conduct substantial business in New Jersey, have had systematic and continuous contacts with New Jersey, and have agents and representatives that can be found in New Jersey.

- 2 -

12.     Venue is proper in the District of New Jersey under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred and emanated out of this District. Venue is also proper in the District of New Jersey because SEA transacts business and maintains its headquarters and principal place of business in Ridgefield Park, New Jersey.

III.    **PARTIES**

A.    **Plaintiffs**

1.    **Jeff Weske**

13.     Jeff Weske ("Weske") resides in Cloquet, Minnesota.  In December 2006, he purchased a new Samsung Side-by-Side Refrigerator (model number RS263BBWP) from a Best Buy store in Duluth, Minnesota. [1]

14.     He purchased the refrigerator for $1300.

15.     At all times, Weske followed the use and care instructions that were included with his refrigerator.

16.     In the spring of 2009, Weske's refrigerator stopped cooling, destroying approximately $1,100 in groceries.  When Weske investigated the immediate cause of his problems, he discovered that the back of his refrigerator was covered with frost and ice.  He then unplugged his refrigerator to allow the frost to melt, but this was only a temporary solution; over the summer and fall of 2009 the problem reoccurred several times.

---

[1] Samsung sells three types of refrigerators:  (1) "Side-by-Sides," all of which have two doors with a freezer on one side and a refrigerator on the other, and all of which begin with the designation "RS" in the model number; (2) "French Doors," all of which have a dual-door refrigerator on top and a single door freezer on the bottom, and all of which begin with the designation "RF" in the model number; and (3) "Bottom Freezers," all of which have a single door refrigerator on top and a single door freezer on the bottom, and all of which begin with the designation "RB" in the model number.

1132439.1

17.     In the fall of 2009, Weske called Samsung's customer service line for help.  He was told that his refrigerator was out of warranty and, accordingly, that there was nothing that Samsung would do to help him.

18.     That same fall, Weske contacted his local gas company, with whom he has a maintenance contract.  The company came and replaced several parts in Weske's refrigerator, but he continued to have the same cooling issues even after this was done.

19.     In 2010, Weske contacted some of the undersigned counsel.  He brings this action not only out of self-interest, but also with the goal of helping Minnesota citizens at large, as Samsung has concealed the Defect from the public at large.  In particular, he hopes that his efforts will assist many other Minnesota consumers who own Samsung Refrigerators, assist the many Minnesota consumers who will consider purchasing a Samsung Refrigerator in the future (as Samsung's deceptive conduct is ongoing), and discourage other companies from committing unfair and deceptive practices against Minnesota residents.

20.     Weske never would have purchased the refrigerator (or would have done so only at a reduced price) if Samsung had disclosed the existence of the Refrigeration Defect prior to his purchase.  Indeed, at the time of purchase, Weske relied on his reasonable understanding that Samsung Refrigerators did not have any defect that would cause them to stop cooling after only a few years of use.

### 2.     **JoAnna Frager**

21.     JoAnna Frager ("Frager") resides in Montville, Ohio.  On February 14, 2008, she purchased a new Samsung French Door Refrigerator (model number RF266AASH) from a Lowe's store in Mentor, OH.

22.     She purchased the refrigerator for $1618.20, along with an extended warranty that Lowe's offered for $159.97.

- 4 -

23.     At all times, Frager followed the use and care instructions that were included with her refrigerator.

24.     In June 2010, her refrigerator stopped cooling, destroying approximately $340 in groceries.  She then contacted Lowe's, whose authorized repair company seemed aware of the issue prior to speaking with her.  The company suggested that her refrigerator had "frozen up" and that she should unplug it for a day or two.  She did this, but it did not seem to fix the problem.  The number of the repair company is 440.478.9859.

25.     On June 25, 2010, a service representative came to her house (invoice #35976815) and replaced at least one part within her refrigerator.  This also did not fix her problem.  Approximately one month later, a representative returned (invoice #37328807) and replaced at least one additional part.

26.     To this date, Frager's refrigerator does not function properly.

27.     In 2010, she contacted some of the undersigned counsel.  She brings this action not only out of self-interest, but also with the goal of helping Ohio citizens at large, as Samsung has concealed the Defect from the public at large.  In particular, she hopes that her efforts will assist many other Ohio consumers who own Samsung Refrigerators, assist the many Ohio consumers who will consider purchasing a Samsung Refrigerator in the future (as Samsung's deceptive conduct is ongoing), and discourage other companies from committing unfair and deceptive practices against Ohio residents.

28.     Frager never would have purchased the refrigerator (or would have done so only at a reduced price) if Samsung had disclosed the existence of the Refrigeration Defect prior to his purchase.  Indeed, at the time of purchase, she relied on her reasonable understanding that

Samsung Refrigerators did not have any defect that would cause them to stop cooling after only two years of use.

29.     Even if the Refrigeration Defect had been disclosed after purchase, but any time prior to June 2010, Frager would not have suffered the same losses because she would have monitored the actual temperature of her refrigerator to prevent such extensive food spoilage. Indeed, at all times prior to the spring of 2009, Frager relied on her reasonable understanding that Samsung Refrigerators did not have any defect that would cause them to stop cooling after only two years of use.

### 3.     Darryl Myhre

30.     Darryl Myhre ("Myhre") resides in Bellevue, Washington.  In November 2007, he purchased a new Samsung Side-by-Side refrigerator (model number RS2630WW) from a Best Buy store in Tukwila, Washington.  He purchased the refrigerator for approximately $850.  Prior to his purchase, Myhre conducted research online and read reviews for different refrigerators. He purchased his Refrigerator in part because Samsung's refrigerators were represented as being reliable in those reviews.  Similarly, the salesperson at Best Buy represented that it was a good refrigerator.  After the purchase, Myhre reviewed the use and care instructions carefully and made sure to follow the recommended upkeep.

31.     Prior to November 2008, before the warranty on his refrigerator expired, the temperature began to rise in the refrigerator.  Myhre first tried to turn down the temperature of the refrigerator without any success.  He then called Samsung to report his problem, but did not receive any response.  The warranty expired while he waited for that response.

32.     Myhre ultimately contacted a service technician in late 2008 or early 2009.  The technician examined the refrigerator for $130 and recommended that Myhre order a new defrost heater.  The technician stated that he (the technician) had seen a similar problem with other

- 6 -

Samsung refrigerators and that even with the replaced defrost heater, there was no guarantee that the problem would not come back. The technician told Myhre that the problem was caused by a design error that was not easily fixed. After conducting more research online, Myhre purchased a new defrost heater for $130 and installed it.

33.     In late 2010, the refrigerator again stopped cooling. At this time, Myhre suffered approximately $250 in lost groceries. Myhre then felt forced to purchase a new refrigerator.

34.     When Myhre purchased his Samsung refrigerator, he expected it to last about 10 years, which was how long his previous refrigerators lasted. He never would have purchased the refrigerator (or would have done so only at a reduced price) if Samsung had disclosed the existence of the Refrigeration Defect prior to his purchase. Indeed, at the time of purchase, Meyer relied on his reasonable understanding that Samsung Refrigerators did not have any defect that would cause them to stop cooling after only a few years of use.

35.     In 2010, Myhre contacted some of the undersigned counsel. He brings this action not only out of self-interest, but also with the goal of helping Washington citizens at large, as Samsung has concealed the Defect from the public at large. In particular, he hopes that his efforts will assist many other Washington consumers who own Samsung Refrigerators, assist the many Washington consumers who will consider purchasing a Samsung Refrigerator in the future (as Samsung's deceptive conduct is ongoing), and discourage other companies from committing unfair and deceptive practices against Washington residents.

### 4.     **Ralph Chermak**

36.     Plaintiff Ralph Chermak resides in Cary, Illinois. On September 3, 2009, Chermak purchased a new Samsung Bottom-Mount Refrigerator (model number RF265ABBP) from a Grand Appliance store in Chicago, Illinois.

37.     He purchased the refrigerator for $1291.92.

38.     Chermak reviewed the user's manual he received with purchase to double check the installation of the refrigerator, and he followed the use and care instructions included with his refrigerator.

39.     In March 2011, Chermak's refrigerator stopped cooling, costing him hundreds of dollars in groceries.  After trying to change the settings of the refrigerator to lower the temperature, he turned off the refrigerator and purchased coolers.

40.      Chermak contacted Samsung throughout March and left numerous messages.  He was eventually able to reach a Samsung agent on the national customer service line and was granted a warranty extension for one service call.

41.      Chermak and his family relied on coolers for two weeks while waiting to hear back from Samsung technicians.  At the same time, he conducted extensive research online and saw hundreds of consumer complaints regarding Samsung refrigerators.  He read that others had a hard time reaching Samsung technicians as well and that even after the technicians examine the refrigerators, they were unable to offer a permanent fix.

42.     Samsung's service technicians never returned his many phone calls, rendering the purported "warranty extension" illusory.

43.     On March 25, 2011, Chermak purchased an Amana refrigerator for about $800 to replace his Samsung refrigerator.

44.     Chermak eventually contacted some of the undersigned counsel.  He brings this action not only out of self-interest, but also with the goal of helping Illinois citizens at large.  He believes that Samsung has wronged its consumers because, from his research online, he saw that there were numerous complaints regarding the refrigerators before the time of his purchase.

- 8 -

45.     Chermak never would have purchased the refrigerator (or would have done so only at a reduced price) if Samsung had disclosed the existence of the Refrigeration Defect prior to his purchase.

46.     If Chermak had been notified by Samsung about the Defect after he purchased the refrigerator, he still would not have been damaged to the same extent as he would have paid for the repairs, rather than purchasing an entirely new refrigerator.

### 5.     Jeff Polsean

47.     Plaintiff Jeff Polsean resides in Rockford, Illinois.  In 2008, he purchased a new Samsung Side-by-Side Refrigerator (model number RS267LBBP) from Rockford National Equipment Sales in Rockford, Illinois.

48.     He purchased the refrigerator for $900.

49.     At all times, Polsean followed the use and care instructions that were included with his refrigerator.

50.     In October 2011, Polsean's refrigerator stopped cooling, destroying hundreds of dollars in groceries.  He saw that the back of his refrigerator was covered with ice, which led him to call Samsung's customer service help line.  He was told that his refrigerator was out of warranty and, accordingly, that there was nothing they would do to help him.

51.     Polsean did various internet searches in an attempt to diagnose the problem himself (he is an electrician by trade and has a working background in appliances).  While he saw that many others had experienced his problem, he also determined that he could not fix his refrigerator.

52.     In 2011, Polsean contacted some of the undersigned counsel.  He brings this action not only out of self-interest, but also with the goal of helping Illinois citizens at large, as Samsung has concealed the Defect from the public at large.  In particular, he hopes that his

- 9 -

efforts will assist many other Illinois consumers who own Samsung Refrigerators, assist the many Illinois consumers who will consider purchasing a Samsung Refrigerator in the future (as Samsung's deceptive conduct is ongoing), and discourage other companies from committing unfair and deceptive practices against Illinois residents.

53.     Polsean never would have purchased the refrigerator (or would have done so only at a reduced price) if Samsung had disclosed the existence of the Refrigeration Defect prior to his purchase.  Indeed, at the time of purchase, Polsean relied on his reasonable understanding that Samsung Refrigerators did not have any defect that would cause them to stop cooling after only 3 years of use.

54.     Even if the Refrigeration Defect had been disclosed after purchase, but any time prior to October 2011, Polsean would not have suffered the same losses, as he would have closely monitored the actual temperature of his refrigerator to prevent such extensive food spoilage.  Indeed, at all times prior to October 2011, Polsean relied on his reasonable understanding that Samsung Refrigerators did not have any defect that would cause them to stop cooling after only 3 years of use.

**6.     Maureen Kean and Beverly Burns**

55.     Plaintiffs Maureen Kean and Beverly Burns reside in Martinez, California.  They are domestic partners.

56.     In August or September of 2009, Kean and Burns purchased a new Samsung French Door Refrigerator (model number RF266AERS) from a Best Buy store in Pleasant Hill, CA.

57.     Kean and Burns paid approximately $1800 for the refrigerator.

58.     At all times, Kean and Burns followed the use and care instructions that were included with their refrigerator.

- 10 -

59.     In November, 2010, the refrigerator stopped cooling, destroying approximately $300 in groceries.  At the time the refrigerator failed, Kean noticed ice coming through the air vents in the back of her refrigerator.

60.     After the failure, Kean called Best Buy, which sent someone to look at the refrigerator.  Best Buy's service technician determined that there was ice build up around the evaporator fan blade and through the air system due to excessive moisture building around the inside fridge area.  Best Buy steamed/defrosted it and it seemed to start working again. Best Buy charged $100 for this service.

61.     Less than a year later, shortly prior to Thanksgiving in 2011, the refrigerator stopped cooling again, destroying between $400-$500 worth of food.

62.     In response to this second failure, Kean contacted The Appliance Doctor, a company that was recommended on Angie's List.  Kean described them the problem to them, and they told her to unplug the unit, let the ice melt, and then plug it back in.  Kean did this, but the refrigerator worked only for a short time.

63.     On November 24, 2011, at the cost of $79.95, The Appliance Doctor came to look at the refrigerator.  They said that she needed a new fan motor, which they ordered.

64.     On December 3, 2011, The Appliance Doctor came out to install the motor, a service for which they charged $153.92.

65.     On December 5, 2011, Kean again noticed ice on the back of the refrigerator, and she decided it was time to contact Samsung at the number listed in her user manual.  In response to her call, Samsung notified JEM Appliance, a Samsung Authorized Repair company.

- 11 -

66.     On December 7, 2011 JEM Appliance sent Mr.  Roland Perez to look at her refrigerator.  Perez is a "Master Engineer" who says that he trains others now to fix Samsung Refrigerators and drives a truck that says "Samsung" on the side.

67.     Perez replaced a defrost sensor, however, during the repair, he damages the refrigerator by putting a small cut in it.  The refrigerator has cooled since Perez's service call.

68.     Following Perez's service call, Kean repeatedly called Samsung about her refrigerator.  She complained about the need for Samsung to stand by its product, the loss of her food, and the damage Perez caused.

69.     Samsung (through its customer service representatives "Travis H." and "Tiffany") ultimately offered, among other things, to reimburse up to $200 in losses.  Kean submitted an itemized list of losses (twice), but has never been reimbursed by Samsung.  Given Kean and Burns' total losses of approximately $1500, moreover, they believe that $200, standing alone, is an inadequate reimbursement.

70.     In 2011, Kean contacted some of the undersigned counsel on behalf of both herself and Burns.  Kean and Burns bring this action not only out of self-interest, but also with the goal of helping California citizens at large, as Samsung has concealed the Defect from the public at large.  In particular, they hope that their efforts will assist many other California consumers who own Samsung Refrigerators, assist the many California consumers who will consider purchasing a Samsung Refrigerator in the future (as Samsung's deceptive conduct is ongoing), and discourage other companies from committing unfair and deceptive practices against California residents.

71.     Neither Kean nor Burns would ever have purchased the refrigerator (or would have done so only at a reduced price) if Samsung had disclosed the existence of the Refrigeration

- 12 -

Defect prior to her purchase. Indeed, at the time of purchase, Kean and Burns relied on their reasonable understanding that Samsung Refrigerators did not have any defect that would cause them to stop cooling after only a year or two of use.

72.     Even if the Refrigeration Defect had been disclosed after purchase, but any time prior to the November of 2010, Kean and Burns would not have suffered the same losses, as they would have purchased an extended warranty for their refrigerator if one was available at the time of disclosure and/or closely monitored the actual temperature of her refrigerator to prevent such extensive food spoilage.  Indeed, at all times prior to the November 2010, Kean and Burns relied on their reasonable understanding that Samsung Refrigerators did not have any defect that would cause them to stop cooling after only a few years of use.

###     B.     **Defendants**

####          1.     **Samsung Electronics of America ("SEA")**

73.     Defendant SEA is incorporated in New York, with its principal place of business in Ridgefield Park, New Jersey.  It conducts business throughout New Jersey, particularly in offices located in Mount Arlington, New Jersey and Piscataway, New Jersey.  SEA manufactures and sells consumer appliances, including the defective Refrigerators that are the subject of this action.

####          2.     **Samsung Electronics Corporation ("SEC")**

74.     Defendant SEC is a corporation formed under the laws of the Republic of Korea, with its principal offices in Seoul, South Korea.  SEC conducts substantial business operations from the SEA offices in Ridgefield Park, New Jersey, Mount Arlington, New Jersey, and Piscataway, New Jersey.

- 13 -

## IV.    FACTUAL BACKGROUND

### A.    Samsung's Reputation for Quality

75.    Samsung is one of the world's leading manufacturers, designers, and marketers of refrigerators and other appliances.

76.    On information and belief, Samsung has worked to earn a reputation for selling premium products, both through its marketing efforts and by manufacturing consistently high quality goods.  Consequently, consumers are frequently willing to pay more for Samsung products than for the products offered by competitors, even when those products have similar features.  Consumers, concomitantly, have come to expect that Samsung-branded products will be of particularly high quality, durability, and reliability.

•    Among Samsung's products are high-end refrigerators, including the Refrigerators that are the subject of this lawsuit, defined below.  The Refrigerators are sold through major retail stores such as Best Buy and Home Depot, usually for between $800 and $3000.  On information and belief, this is a premium price; i.e., consumers pay more for Samsung's Refrigerators than for similarly-equipped refrigerators offered by other manufacturers.

•    Consumers reasonably believe that Samsung's Refrigerators are of premium quality.  In particular, on information and belief, the typical consumer reasonably believes that Samsung's Refrigerators will last for at least 10 years.

•    Ten years is the *shortest* usual life expectancy for a refrigerator.  *See* Ex. B (containing an industry trade publication).

- 14 -

B.     **How Refrigerators Keep Food and Medicine Cool, and the Purpose of Refrigeration**

77.     Refrigerators are designed to keep food and medicine at a reliably cool temperature, regardless of the surrounding climate.

78.     Refrigeration slows the activity of bacteria (which all food contains) so that food spoils more slowly.  For example, bacteria will spoil milk in two or three hours if the milk is left out on the kitchen counter at room temperature.  By reducing the temperature of the milk, however, it will stay fresh for a week or two.  Indeed, if the milk is frozen, bacteria will essentially stop; the milk will last for months (until effects such as freezer burn begin to spoil the milk in other ways).

79.     Refrigerators (and freezers) have five basic components that perform the task of refrigeration: a compressor, a condenser (this is typically a coiled set of pipes outside the cooled space), an expansion device, an evaporator (typically a coil of pipe inside or adjacent to the cooled space), and a refrigerant (a liquid that evaporates and condenses in the refrigerator to transfer heat from inside the cooled space to outside).

80.     Generally speaking, refrigerators keep food cold by turning the refrigerant from liquid to gas and back.

•     This process can be thought of as beginning when the compressor compresses refrigerant gas, which increases the pressure and the temperature of the refrigerant.

•     The condenser then removes the heat from the refrigerant, which causes the refrigerant vapor to condense to a liquid.

•     The now-liquid refrigerant is then injected through the expansion device into the evaporator.

- 15 -

• The expansion device serves as a gateway between the condenser, which is a high-pressure environment, and the evaporator, which is a low-pressure environment. *Id*. In the low-pressure environment of the evaporator, the refrigerant vaporizes immediately, absorbing heat from inside the refrigerator in the process. [2]

• To increase heat transfer, a fan typically circulates air over aluminum fins which are part of the evaporator.

81. The last step in the above process, evaporation, takes place at a temperature far below the freezing point of water. For this reason, moisture from the air that is attracted to the evaporator will freeze and can form frost and ice. If enough ice accumulates, the transfer of heat stops, preventing proper refrigeration. For this reason, most residential refrigerators use electric defrost heaters to prevent such accumulation.

82. Samsung's Refrigerators operate on the above basic principles.

• There is, however, an important nuance: as with many high-end refrigerators, the entire cooling process is controlled by a central computer (the "control board").

• In particular, the defrost cycle (which prevents the accumulation of ice) is controlled electronically by a combination of ambient temperature, number of door openings, and the door open time. It controls this cycle based on the inputs that it receives from a variety of sensors throughout the refrigerator.

**C.   The Defect**

83. As a general matter, a properly designed refrigerator will perform its intended function (refrigeration) for no less than 10 years. *See* Ex. B.

---

[2] Broadly speaking, this is the same reaction that takes place when liquid nitrogen is exposed to the air; i.e., the vaporization of the nitrogen has a cooling effect.

84.     Preliminary expert analysis has determined that the control board inside Samsung's Refrigerators was not designed and/or manufactured properly.  *See* Ex. A ("Silzars Decl.") at ¶¶ 9-11.  In particular, it does not properly operate the defrost cycle.  *See id.*

85.     Over time, this causes the condenser (where the coolant is transformed from liquid to gas) to develop an encasement of ice.  *See id.*  at ¶ 6.

86.     When the condenser is covered in ice, it can no longer dissipate heat; i.e., it no longer allows the coolant to transform from liquid to gas.

87.     As explained above, the process of changing from liquid to gas and back again is the very mechanism by which refrigerators cool food and medicine.  In other words, when the condenser becomes covered in ice, the Refrigerators stop functioning.

88.     Compounding the problem, the Refrigerators' external temperature displays continue to indicate that it is cool, even though the inside is not.  This can mislead consumers into believing that the food or medications within the Refrigerators has been kept cool and is safe to eat or ingest.

89.     The Refrigeration Defect becomes apparent to consumers both inside and outside the warranty period.  It is not an issue of "wear-and-tear," but a defect that is present from the moment the Refrigerators are designed and/or manufactured.

**D.      The Problems Created by the Refrigeration Defect**

90.     Refrigerators that cannot keep food cool are unsuitable for their ordinary use. This is not the only problem created by the Defect, however.

91.     A refrigerator that unexpectedly rises to room temperature poses significant health risks to consumers.  As explained above, refrigeration drastically slows down the activity of the bacteria that is present in all food.  Many foods that would otherwise be safe to ingest for weeks will remain safe for mere hours when they are not refrigerated.

- 17 -

92.     The Refrigeration Defect is particularly dangerous because the outside temperature displays continue to indicate that food is cold.  A consumer (or a consumer's children) may not realize that the temperature inside the refrigerator has started to rise and, thus, may ingest unsafe food.  Indeed, it is plausible that this has happened and will continue to happen unless the Defect is fixed and/or consumers are alerted to its presence.

**E.      Samsung's Response to the Refrigeration Defect**

93.     Samsung does not fix the Defect, whether it manifests inside or outside of a consumer's warranty.

94.     When Refrigerators fail while under warranty, if Samsung provides any repair at all, that repair usually does not address the underlying defect.

95.     When Refrigerators fail outside the warranty period, Samsung recommends that consumers incur out-of-pocket expenses to repair or replace components of the Refrigerators (or Samsung recommends that consumers purchase an entirely new refrigerator).

96.     Samsung is not as dismissive of consumers elsewhere.  When the apparently identical problem occurred in the United Kingdom four years ago (discussed below), Samsung apologized to UK consumers and offered them an extended 5-year warranty as to all claims related to the Defect.

**F.      Samsung's Knowledge**

97.     On information and belief, SEA became aware of the Refrigerator Defect as early as 2006, and before Plaintiffs and Class Members purchased their refrigerators, through sources such as in-warranty repair data, increased part orders, consumer complaints made directly to Samsung, consumer complaints made on public online forums, and at least one news story.

**i.    Samsung's Knowledge of the Refrigerator Defect From In-Warranty Repair Data**

98.     Samsung knew or should have known about the Refrigerator Defect because of the large number of Refrigerator repairs made during the Refrigerators' warranty periods.

99.     Several Samsung Authorized Service Centers, including Solar Refrigeration & Appliance Service, Inc., located in Metairie, Louisiana, and Diamond Factory Service, located in Benton Harbor, Michigan, have confirmed that when they perform repairs on Samsung Electronics, including appliances, which are under warranty, they are required to submit a warranty claim to SEA.

100.    On information and belief, such claims must include a detailed description of the repair, the customer's complaint, the model and serial number of the product being serviced, and the type of product.

101.    A number of complaints made to counsel and posted in online forums show that as early as 2006, Samsung and its Authorized Service Centers were making a large number of in-warranty Refrigerator repairs to correct symptoms identical to those here.  For example:

•       Mary Johnston a resident of Scottsdale, Arizona, contacted some of the undersigned counsel.  She informed the undersigned counsel that she purchased her Refrigerator in 2005.  Less than a year after her purchase, however, in or around August 2006, Johnston noticed that the temperature within her refrigerator had risen well above normal and that her food was spoiling.  Johnston called Samsung's customer service department in August 2006 and spoke with a woman named "Amber," who directed a Samsung authorized repair technician to diagnose and fix Johnston's refrigerator.  The authorized repair technician noticed the refrigerator's outer heat-exchanging pipes were frozen and replaced the insulation around them.  One week later, the refrigerator again stopped cooling properly.  Johnston again called Samsung and spoke with a woman named "Carolynn." Carolynn directed a Samsung authorized repair

- 19 -

technician to diagnose and fix Johnston's refrigerator.  The outer-heat exchanging pipes were again frozen.  The technician replaced a faulty control board and told Johnston he would notify Samsung of the Defect.

      •      Eugene Rata also contacted some of the undersigned counsel.  In August 2006, he noticed that the temperature in his Refrigerator had risen to approximately 50 degrees Fahrenheit, causing his food to spoil.  Rata called Samsung and spoke to a representative. Samsung dispatched a service person, who noticed that the Refrigerator's outer heat-exchanging pipes were frozen.  The service person told Rata that he would notify Samsung of the problem.

      •      At least one individual, identifying herself as "Lillian, from Baltimore Maryland," posted a similar complaint on the website www.consumeraffairs.com in November 2006.  She asserts that she contacted Samsung about the failure of her Refrigerator to cool. Lillian contacted Samsung about the problem and Samsung dispatched an authorized technician to service the Refrigerator.  The technician blamed the sensor and motor blades, but the replacement sensor did not fix the problem.

      •      Another website, www.complaintsboard.com has a page entitled "Samsung / Refrigerator Complaints & Reviews." On that page, a poster named Barrett provides a detailed report of how her model #RS257BARB Samsung Refrigerator experienced interior temperatures in the 50s on May 15, 2006.  After several attempts by authorized repairmen to defrost refrigerator parts with a heat gun, and after not having a functioning refrigerator until June 15, 2006, Barrett contacted "Gwen Novak" at Samsung and reported the malfunction and loss of food.  Gwen Novak offered a partial reimbursement of food costs in the amount of $121.00.  This posting can be found at http://www.complaintsboard.com/complaints/samsung-refrigerator-c530.html.

- 20 -

102.     An individual named Starla Gilmore contacted counsel on behalf of her parents, who had purchased a Samsung Refrigerator on November 9, 2006.  The refrigerator required two service calls – both covered under warranty – within the first year.  However, the warranty has since ended, but the problems with the refrigerator persist.  Between June 17, 2008 and November 15, 2010, the refrigerator suffered at least three failures related to ice buildup and temperature sensors.  The most recent problem caused the refrigerator to stop cooling and spoil the food contained therein.

•     Another complaint can be found on www.complaints.com.  An anonymous individual wrote on February 27, 2008: "I purchased a Samsung Refrigerator RF266AASH on 11/10/2007 from Lowes.  It completely stopped cooling on the evening of 2/13/2008.  I notified Lowes and Samsung on 2/14/2008.  I was told I had to go through Samsung Customer Service under warranty.  They sent a repair person on 2/19/2008 and he diagnosed faulty computer.  He ordered the part which did not come in until 2/26/2008.  The repairman installed the part and said the fans were working and I should not open it or store any food in it for 24 hours.  Well 3 hrs later I checked and the fans were not working and the temp was 69 degrees in fridge and freezer.  This morning, 2/27/2008 the fridge is 70 degrees and the freezer is 74 degrees.  I called Samsung and they were not helpful and rude.  They said all they could do was send the repairman back.  This is a new refrigerator that I paid 1700.00 for and I have been inconvenienced for 2 weeks.  I have had to eat my meals out which has become quite an expense and I fear I am looking forward to another week without a refrigerator.  This is unacceptable." In addition, there are three anonymous comments to this complaint by individuals indicating that they have had the same problem, including one in which the commenter claims

the repairmen suspected a faulty circuit board.  These can be found at

http://www.complaints.com/2008/february/27/Samsung_Refrigerator_Warning_162420.htm

103.    In total, the undersigned attorneys have been contacted by more than 300

individuals with complaints that appear to stem from the Defect.  No less than nine of these

individuals assert that their Refrigerators failed within one year of purchase.  This information

would have been made available to Samsung through phone calls to Samsung and through its

Authorized Service program.

104.    The complete warranty repair data in Samsung's exclusive possession, including

the large number of Refrigerator repairs made on Class Refrigerators during the warranty period,

and instances of the same Refrigerators requiring multiple repairs, put SEA on notice of the

Refrigerator Defect.

### ii.   Samsung's Knowledge of the Refrigerator Defect Gleaned from the Large Number of Replacement Parts Ordered from Samsung

105.    Samsung also knew or should have known about the Defect because of the high

number of the same replacement Refrigerator parts being ordered to correct problems with the

Class Refrigerators.  This should have alerted Samsung that there was a serious defect affecting a

large number of certain models of its Refrigerators.

106.    On information and belief, when Samsung Authorized Service Centers service a

product under warranty, those Service Centers order replacement parts for those products

directly from Samsung.  Other independent appliance repair companies also may order

replacement parts from Samsung.

107.    Thus, Samsung has detailed, accurate, and real-time data regarding the number

and frequency of replacement part orders.  The sudden and disproportionate increase in certain

1132439.1

part orders for the Class Refrigerators did alert, or should have alerted, SEA and SEC that its Refrigerators were defective.

### iii.   Samsung's Knowledge of the Refrigerator Defect Gleaned from Class Member Complaints on Public Online Forums

108.   In addition to the online complaints mentioned in ¶ 101, there exist numerous other online complaints.  These include:

- An individual identifying himself or herself as pawwright posted on applianceguru.com  on July 12, 2005: "The fridge side [of Samsung refrigerator RS2533SW] will no longer cool.  … Called 3 repair places, only 1 would come out – he replaced the evaporator fan motor as it is not running, but it is still not running and it did notfix [sic] the problem.  Anyone have any other ideas (besides tossing this into the Delaware river)? I wish I had looked up/known what a hunk of crap this was before shelling out $1100 less than 2 years ago."

- An individual identifying himself or herself as C.S.  from Wichita, KS wrote on complaints.com  on August 15, 2005: "On the 26th of June, 2005, I went to get into the fridge and noticed that it was very warm.  The temp, which is displayed on the door of the fridge said 36 degrees but it was no way that cool.  I sat a thermometer in there and the temp was actually 57 degrees. … It took 9 days to get the parts to fix the fridge.  A few days after the repair and after replacing the lost food, it did it again.  Again, the wait was 9 days.  It was again fixed.  Another few days go by after this repair and after again replacing the food, it quits again.  This time, it was the heater that kicks on to defrost the evaporator in the fridge side….I emailed Samsung to complain and I was told to call into their facility, which I did.  I was told that their warranty was for 1 year and after that, they had no responsibility for their products."

- 23 -

- An anonymous, U.S. based poster wrote on complaints.com  on November 6, 2008:  "The issue was that the refrigerator side was not cooling at all.  The display showed a false 36 degrees temperature when it was 68 inside.  Freezer was ok.  I purchased the refrigerator at Best Buy 40 months ago - 4 over the 36 months extended warranty - It took them 6 business days to find someone in my area that would take the job.  Most refrigerators technicians don't want to work with Samsung.  The tech came indicated that the control board needed to be changed.  85 buck for the visit and diagnostics.  7 days later the tech came back with the control board.  This was additional 135.  The problem was not resolved.  In the mean time, I found this site and multiple similar reports.  Many people mentioned disconnecting the refrigerator for a number of hours as a workaround.  This worked for me which it was a good thing because it took another 7 days for the tech to come back with a new coil.  This was additional 105 bucks."

109.    In light of the sheer volume of these complaints all referencing the same symptoms, it is inconceivable that SEA was not aware of the problem.

### iv.  Samsung's Knowledge of the Refrigerator Defect Gained from Class Member Complaints Made Directly to Samsung

110.    As mentioned, the undersigned attorneys have been contacted by more than 300 individuals with complaints that appear to stem from the Defect.

111.    Numerous examples of complaints made directly to Samsung can be found in ¶¶ 101 and 107.

112.    An individual named John Duffy contacted counsel and explained that he began suffering the problem with "ice bulging up in the back of the fridge" in 2007, and would have to "turn to the fridge off and knock ice from the back of the fridge" every three to four months.  He thought it was "crazy that [Samsung] would not come out and fix it for free."

- 24 -

113.    Plaintiff Myhre contacted SEA about the Defect prior to November 2008.

114.    Plaintiff Weske contacted SEAabout the Defect in the Fall of 2009.

115.    Plaintiff Chermak contacted SEA about the Defect in March 2011.

116.    Plaintiff Polsean contacted SEA about the Defect in October 2011.

117.    Plaintiff Kean contacted SEAabout the Defect in December 2011.

> **v.    Samsung's Knowledge of the Refrigerator Defect Based on the United Kingdom Defect, and the Numerous Complaints from the United Kingdom Identical to those Complaints within the United States**

118.    On April 7, 2008, an episode of "Watchdog," aired by the British Broadcasting Company ("BBC"), reported on an identical Defect in a model of American-style Samsung refrigerators sold in the United Kingdom.  The program featured an interview with a refrigeration expert who examined a Samsung RS21 model refrigerator and determined that the problem was a result of a design defect that caused the outer heat-exchanging pipes to freeze over with ice, which caused the refrigerator's fan to stop running.  This program is available at: http://www.youtube.com/watch?v=V467FBmK6QQ

119.    According to the BBC report, Samsung apologized for the problem and extended the warranty of the defective models for five years.

120.    This publicity and Samsung's response to the defect in the UK put both SEA and SEC on notice.

121.    The BBC episode was not the first mention of the problem in the United Kingdom.  On April 4, 2008 — three days before the BBC program aired — a third-party warranty provider and technical support forum called "UK Whitegoods" prepared a PDF file titled "Samsung RS21 Evaporator Cover Repair Guide." Page 5 of the PDF file begins with the

heading, in large type, "The Common One," and continues that "[t]he common problem with the Samsung RS series fridge freezers is that the ice is not melted correctly behind the large fridge back panel or, as it is properly called, the evaporator cover.  The following guide explains step by step how to diagnose and repair the problem where the fridge doesn't cool properly[.]" This guide can be found at

http://www.ukwhitegoods.co.uk/downloads/samsung_rs21_repair_instructions.pdf

122.    The UK Whitegoods PDF also refers to the RS21 as one of Samsung's "American style and convention fridge freezers."

123.    A comparison of the user and service manuals of some of the Class Refrigerators with the user and service manual of the RS20 manual indicates that the Class Refrigerators and the RS21 are nearly identical in function and design.[3] *See* Ex. A ("Silzars Decl.") at ¶¶ 14-18; *see also* Exs. C, D (user and service manuals for the RS263 and RS21 and RS20, respectively).

124.    The structure and content of the manuals themselves are almost identical in form and substance, with the only differences appearing to be the units of measurement used to account for difference between the United States and the United Kingdom. *Id.* at ¶ 15.

125.    The internal mechanical diagrams included in the manuals indicates that the models are, functionally and schematically, nearly identical in relevant respects. *Id.* at ¶ 17.

126.    Indeed, the RS21 appears to be able to work in the United States with a simple transformer replacement. *Id.* at ¶ 16.

---

[3] The number designation after the "RS" indicates the refrigerator's capacity in cubic feet. On information and belief, the RS20 and the RS21 are the same except for that difference.  Indeed, identical complaints have been made about the RS20 refrigerator. *See, e.g.*, http://www.ukwhitegoods.co.uk/forumsphpbb3/fridge-freezer-forum/samsung-rs20-r600a-gas-problem-t72018.html

127.    While there are minor differences between the two models, such differences are immaterial to the defect, as the defect present in the RS20 (and RS21) appears to be the very same defect about which the Class Members complain. *Id.* at ¶ 18.

128.    On information and belief, Samsung is in possession of documentation which would further illuminate the similarities between the RS21 and the Class Refrigerators.

129.    In sum, SEA and SEC were aware of, should have been aware of though the exercise of reasonable care, and/or were negligent in failing to be aware of, the Refrigerator defect as early as 2006, and no later than April 2008, when Samsung apologized for the failures of a virtually identical model in the United Kingdom.

130.    Only discovery of Samsung's warranty data and customer service records will reveal more precisely when Samsung received (or should have received) notice of the Defect.  In particular, Samsung alone knows the number of consumers who have reported cooling issues and what conclusions Samsung reached regarding the cause of these issues.

131.    As mentioned previously, the undersigned attorneys have been contacted by more than 300 individuals with complaints that appear to stem from the Defect.  Some of these machines failed within the first year of ownership.  Indeed, Plaintiffs' counsel or their staff has spoken with at least nine individuals who assert that their Refrigerators failed within one year of purchase.  Accordingly, it is most plausible that Samsung began receiving reports of the Defect by no later than June 2006, when, on information and belief, the Refrigerators had been on the market for no less than one year.  The number of failures and complaints has continued through to the present day.

G.    **Samsung's Fraudulent Conduct**

132.    Absent full discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those specific individuals at Samsung

- 27 -

who are responsible for the failure to disclose the Refrigeration Defect.  In particular, the identity

of the individual(s) at Samsung who determine what is or is not communicated to consumers is

non-public information wholly within Samsung's control.  To this end, it is relevant that

Samsung provide consumers with a phone number (1-800-SAMSUNG) to contact Samsung with

any complaints.  It is thus Samsung's responsibility to monitor and collect information from

consumer in an organized and responsible manner.  Plaintiffs' assertion that consumers used this

method to contact Samsung suffices to establish that Samsung had ample notice of the alleged

defect, without having to providing the name(s) of Samsung's agent(s) who answered the phone

or the individual(s) at Samsung who determined how those agents would respond.

133.    Similarly, the breadth of the fraud is entirely within Samsung's control, as only

Samsung knows the exact design specifications and circuitry of the control board that has been

installed in each of its refrigerators.

134.    In accordance with Rule 9 of the Federal Rules of Civil Procedure, Plaintiffs

make the following specific fraud allegations regarding Samsung's omissions with as much

specificity as possible, absent access to the information available only to Samsung.

- **Who:**  Samsung, and the particular individual or individuals at Samsung

who determine what pre- and post- sale information is communicated to the consumers who

purchase, have purchased, or are considering purchasing Samsung's Refrigerators.  Also, the

particular individual or individuals at Samsung responsible for analyzing consumer complaints

and repair data, particularly the complaints of individuals who contacted Samsung in 2006.

Also, the particular individual or individuals at Samsung responsible for analyzing warranty

claims submitted by Authorized Service Center, as outlined in ¶¶ 98-101.  Also including, but

not limited to, Samsung customer services representatives "Amber," "Carolynn," and "Gwen Novak," each, on information and belief, employed by SEA in 2006.

- **What:** Samsung failed to disclose that the control board in the Refrigerators was designed and/or manufactured in such a way as to cause the Refrigerators to stop functioning long before the end of their expected useful life.  Also, Samsung failed to disclose:

     i.      Its failure to adequately test the Refrigerators to ensure that they would function throughout their expected useful life.

     ii.      That warranty or recommended post-warranty repairs would not cure or rectify the Defect and would only, at best, delay the impact of the Defect and thereby postpone failure in the Refrigerators.

- **When:** SEA and SEC were first made aware of problems in 2006, with such knowledge continuing to accumulate during the ensuing years.  The problem was known to both SEA and SEC by no later than April 2008, at the latest.  The fraud about which the Class complains continues on an ongoing basis through the present as indicated by the reports alleged above.  This knowledge arose from:

     i.      In-warranty repair data provided by Authorized Service Centers (2006-present).

     ii.      Increases in similar part orders for the defective models (2006-present).

     iii.      Complaints made by Class Members directly to Samsung (2006-present).

- 29 -

          iv.     Complaints made by Class Members on public forums (2006-present)

          v.     The BBC news report on an identical Defect in a substantially similar United Kingdom model (2008).

• **Where:** All pre- and post- sale communications referring or relating to the Refrigerators, including: Samsung's website (http://www.samsung.com), Samsung's television advertising, Samsung's print advertising, Samsung's packaging, Samsung's press releases, and Samsung's user manuals. Specifically, none of these communications disclosed the Refrigeration Defect.[4]

• **How:** Consistent and uniform failure to disclose the Refrigeration Defect to potential or actual purchasers of the Refrigerators. None of the hundreds of consumers who have contacted the undersigned counsel report any disclosure from Samsung. This is true even when consumers call Samsung for assistance after the Refrigeration Defect manifests.

• **Why**: To induce the purchase and use of the Refrigerators at full price rather than purchasing competitors' refrigerators or paying Samsung less for the Refrigerators.

## V.    <u>TOLLING</u>

### A.    <u>Discovery Rule</u>

135. The causes of action alleged herein accrued upon discovery of the defective nature of the Refrigerators. Because the Defect is latent, and Samsung concealed it, Plaintiffs and members of the Class did not discover and could not have discovered the Defect through reasonable and diligent investigation. *See, e.g.*, Ex. A ("Silzars Decl.") at ¶¶ 9-11. Reasonable

---

[4] In addition, the owners' manuals say nothing about a manual defrost capability that might help alleviate the defect, and the test protocol outlined in the service manuals did not work when attempted repeatedly by a skilled engineer.

and diligent investigation into the cause of the freezing coils did not and could not reveal a factual basis for a cause of action based on Samsung's concealment of the Refrigeration Defect.

### B.    Fraudulent Concealment

136.    Any applicable statutes of limitation have been tolled by Samsung's knowing and active and ongoing concealment and denial of the facts as alleged herein.  Plaintiffs and the Class have been kept ignorant by Samsung of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.  Plaintiff and members of the Class could not reasonably have discovered the true, latently defective nature of the Refrigerators.  *See, e.g.*, Ex. A ("Silzars Decl.") at ¶¶ 9-11.

### C.    Estoppel

137.    Samsung was and is under a continuing duty to disclose to the Plaintiffs and the Class the true character, quality, and nature of the Refrigerators.  Samsung knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Refrigerators, and the concealment is ongoing.  Plaintiffs reasonably relied upon Samsung's knowing, affirmative, and/or active and ongoing concealment.  Based on the foregoing, Samsung is estopped from relying on any statues of limitation in defense of this action.

## VI.    CLASS ACTION ALLEGATIONS

138.    Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

139.    The "Proposed Class" is defined and proposed as:

> All persons or entities residing in the United States who own, or have owned, Samsung refrigerator models RS263BBWP, RF266AASH, RS2630WW, RF265ABBP, RS267LBBP, RF266AERS, and any other Samsung refrigerator model containing the same control board as those models.

140.     The "Proposed State Subclass" is defined and proposed as all members of the Proposed Class who reside in an individual state, such as Proposed Class members who reside in Ohio.

141.     Excluded from the Proposed Class(es) are Samsung, and any entity in which Samsung has a controlling interest; Samsung's legal representatives, officers, directors, employees, assigns, and successors; the United States government and any agency or instrumentality thereof; the judge to whom this case is assigned and any member of the judge's immediate family; and claims for personal injury, wrongful death and/or emotional distress.

142.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

### A.     <u>Numerosity / Impracticability of Joinder</u>

143.     The Proposed Class(es) are so numerous that the individual joinder of all its members, in this or any action, is impracticable.  The exact number or identification of the members of the Proposed Class(es) is presently unknown to Plaintiffs, but it is believed to comprise thousands, if not tens of thousands, of individuals and entities, thereby making joinder impractical.

144.     The Proposed Class(es) are composed of an easily ascertainable, self-identifying set of individuals and entities who purchased Samsung Refrigerators with a particular control board.

### B.     <u>Commonality and Predominance</u>

145.     There are common questions of law and fact that predominate over any questions affecting only individual members of the Proposed Class(es).  The answers to these common legal and factual questions will drive the resolution of this litigation.  Such questions include:

- Whether the control board in the Refrigerators was defectively designed and/or manufactured;

- When Samsung first became aware (or should have become aware) that its Refrigerators were defectively designed and/or manufactured;

- Whether the existence of the Defect in the Refrigerators is a material fact reasonable purchasers would have considered in deciding whether to purchase a refrigerator;

- Whether Samsung intended that consumers be misled;

- Whether Samsung intended that consumers rely on its non-disclosure of the Refrigeration Defect;

- Whether Samsung's concealment was likely to deceive the public.

- Whether the Refrigerators are of merchantable quality;

- Whether the Refrigerators pose a health and/or safety risk;

- Whether consumers have suffered an ascertainable loss;

- Whether Samsung's false and misleading statements of facts and concealment of material facts regarding the Defect in the Refrigerators were likely to deceive the public;

- Whether Samsung should be enjoined from continuing to sell the Refrigerators without disclosing their true nature.

C.      **Typicality**

146.    Plaintiffs' claims are typical of the claims of members of the Proposed Class(es) because they purchased the same Refrigerators and were exposed to the same uniform non-disclosures.

- 33 -

147.     The factual bases of Samsung's misconduct are common to the members of the Proposed Class(es) and represent a common thread of fraudulent misconduct, deceptive trade practices, and breach of warranty resulting in injury to all Proposed Class(es) members. Plaintiffs are asserting the same rights, making the same claims, and seeking the same relief for themselves and all other members of the Proposed Class(es).

### D.     Adequacy

148.     Plaintiffs are adequate representatives of the Proposed Class(es) because they are members of the Proposed Class(es) and do not have interests that conflict with those of the Proposed Class(es) members they seek to represent.

149.     Plaintiffs are represented by experienced and able counsel who have litigated numerous class action lawsuits, and Plaintiffs' counsel intend to prosecute this action vigorously for the benefit of the Proposed Class(es).  Plaintiffs and their counsel can fairly and adequately protect the interests of the members of the Proposed Class(es).

### E.     Superiority

150.     A class action is the best available method for the efficient adjudication of this litigation.  It would be impracticable and undesirable for each member of the Proposed Class(es) who has suffered or may suffer harm to bring a separate action for these claims.  In addition, the commencement of separate actions would put a substantial and unnecessary burden on the courts, while a single class action can determine the rights of all members of the Proposed Class(es) with judicial economy.

VII.   **CLAIMS FOR RELIEF**

**COUNT I**

**VIOLATIONS OF THE STATE CONSUMER PROTECTION LAWS**
**(On Behalf of the Proposed State Subclasses)**

151.   The preceding paragraphs of this Complaint are incorporated by reference.

152.   This claim is asserted on behalf of the Proposed State Subclasses, and asserts violations of the consumer protection statutes of: California, Illinois, Minnesota, Ohio, and Washington.

153.   This claim is also asserted on behalf of Proposed State Subclasses in those states whose consumer protection statutes are substantially similar to the statutes of those states enumerated in ¶ 125.

154.   Plaintiffs bring this claim individually and on behalf of the members of their respective Proposed State Subclasses under the law of the state in which they reside.

155.   The consumer protection laws of the states in which each of the Plaintiffs reside have enacted statutes designed to protect consumers against false advertising and/or unfair, deceptive, fraudulent, and/or unconscionable acts or practices in the conduct of trade or commerce, and that allow consumers to bring private and/or class actions.  These statutes are identified as follows:

- California Legal Remedies Act, Cal.  Civ.  Code § 1750, *et seq.* and California Unfair Competition Law,  Cal.  BPC.  Code § 17200, *et seq.*[5]

- Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.*

_____

[5] The California Legal Remedies Act claim is pled only for injunctive relief at this time.  After providing the requisite notice under this statute, Plaintiffs will seek leave to amend this claim to include damages.

- Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq*. and Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq*.;

- Ohio Consumer Sales and Practices Act, Ohio Rev. Code § 1345.01 *et seq.*;

- Washington Consumer Protection Act, RCW § 19.86.010 *et seq*.

156.     Each of the Plaintiffs and each member of the Subclasses is a consumer, purchaser, or other person entitled to the protection of the consumer protection laws identified in ¶ 155.

157.     Samsung is a supplier, manufacturer, marketer, or other person within the meaning of the consumer protection laws identified in ¶ 155.

158.     The Refrigerators constitute a good, product, merchandise, or other subject to which the consumer protection laws identified in ¶ 155 apply.

159.     Samsung was on notice that its conduct violated the Ohio Consumer Sales Practices Act ("OCSPA"), by virtue of, among other sources, the following:

- *Brown v. Lyons*, 332 N.E.2d 380 (Ohio C.P. Hamilton County 1974), attached as Ex. E. The court in *Brown* specifically found the following to violate the OCSPA:

   i.      Representations by a supplier in connection with a consumer transaction that goods and services have performance characteristics, uses, and benefits which, in fact, they do not have.

   ii.     Where a supplier in connection with a consumer transaction knowingly makes a misleading statement of opinion on which the consumer is likely to rely to his detriment.

- 36 -

iii.     Where a supplier in connection with a consumer transaction knows at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction.

iv.     Failure by a supplier in connection with a consumer transaction to honor implied warranties of merchantability.

v.     A supplier in connection with a consumer transaction who consistently maintains a pattern of inefficiency, incompetency, or continually stalls or evades his legal obligations to consumers.

- *Amato v.  General Motors Corp.*, 463 N.E.2d 625 (Ohio Ct.  App.  1982) (colorable violation of OCSPA where defendant had sold Oldsmobiles without disclosing that they came equipped with an engine from Chevrolet).

- *Delahunt v.  Cytodyne Technologies*, 241 F.  Supp.  2d 827 (S.D.  Ohio 2003) (colorable violation of OCSPA where a label defendant affixed to products contained misstatements and material omissions).

- *Howard v.  Norman's Auto Sales*, No.  02AP-1001, 2003 Ohio App. LEXIS 2526 (Franklin Cty., 10th App.  Dist.  June 3, 2003) (violation of OCSPA where defendant had falsely represented the product was in good condition and would not require repair for six to eight months).

- Ohio Administrative Code, § 109:4-3-10 (prohibiting a supplier from "mak[ing] any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable

basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact")

160.    On information and belief, Samsung, through its marketing materials and packaging, affirmatively misrepresented to Class Members that its refrigerators would cool Class Members' food, medicine, and other items better than would competitors' refrigerators, deceiving  Class Members in violation of the consumer protection laws identified in ¶ 155.  *See e.g.*, Ex. F (containing Samsung refrigerator marketing material).

161.    Samsung's conduct, as set forth in more detail above, violates the consumer protection laws identified in ¶ 155.

162.    Specifically, as alleged herein, Samsung engaged in unfair, deceptive, fraudulent, and/or unconscionable acts or practices in the conduct of trade or commerce by concealing or failing to disclose that the Refrigerators contained a defective control board that would eventually cause the Refrigerators to lose cooling functionality.  As the sole purpose of the Refrigerators is to maintain a cool temperature inside, this omission is material.

163.    Samsung engaged in the conduct alleged herein, even though it knew or reasonably should have known that its Refrigerators were defective.

164.    Information regarding the Refrigeration Defect, and the health risks associated with it, were not reasonably known to the Plaintiffs and members of the Subclasses.

165.    Samsung intended that the Plaintiffs and members of the Subclasses rely on its omissions in purchasing the Refrigerators.

166.    Samsung's conduct was directed at the public at large and has misled the public at large because its advertising is broadly distributed.

- 38 -

167.     The Plaintiffs and members of the Subclasses relied (or should be presumed to have relied) upon Samsung's omissions in purchasing their Refrigerators.  Plaintiffs and members of the Subclasses would not have purchased the Refrigerators (or would only have done so at a significantly reduced price) had they known the truth.

168.     As a direct and proximate result of Samsung's omissions, the Plaintiffs and members of the Subclasses were damaged in an amount to be proven at trial.

169.     The Plaintiffs and members of the Subclasses are entitled to recover actual compensatory and/or statutory damages, as well as attorneys' fees and costs of suit, pursuant to the consumer protection laws and other applicable laws.  As explained above, the Plaintiffs' losses include food and medicine that was spoiled because of the Refrigeration Defect.

170.     The Plaintiffs bring this action in part to benefit the public interest and with a public purpose; it is their goal to help citizens in each of their respective states.  In particular, they hope that their efforts will assist many other consumers who own Samsung Refrigerators, assist the many consumers who will consider purchasing a Samsung Refrigerator in the future (as Samsung's deceptive conduct is ongoing), and discourage other companies from committing unfair and deceptive practices against residents of their respective states.

## COUNT II

### FRAUDULENT CONCEALMENT / NONDISCLOSURE
### (On Behalf of the Proposed Class)

171.     The preceding paragraphs of this Complaint are incorporated by reference.  This claim is asserted on behalf of the Proposed Class.

172.     Samsung knew or was reckless in not knowing at the time of sale that the Refrigerators contain a defective control board, which makes the Refrigerators substantially certain to fail well in advance of their anticipated useful life.

- 39 -

173.    Samsung knew or was reckless in not knowing prior to the time that the Defect manifested in any of Plaintiffs' Refrigerators that the Refrigerators contain a defective control board, which makes the Refrigerators substantially certain to fail well in advance of their anticipated useful life.

174.    Samsung fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs, the Proposed Class, and all others in the chain of distribution the true defective nature of the Refrigerators.

175.    Samsung had exclusive knowledge of the Defect at the time of sale.  The Defect is latent and not something that Plaintiffs or the Proposed Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.  Samsung's knowledge stems from, among other sources:

- In-warranty repair data provided by Authorized Service Centers.

- Increases in similar part orders for the defective models

- Complaints made by Class Members directly to Samsung

- Complaints made by Class Members on public forums

- The BBC news report on an identical Defect in a substantially similar United Kingdom model

176.    Samsung had the capacity to, and did, deceive consumers into believing that they were purchasing refrigerators that could be used safely and practically to store and cool food.

177.    Samsung undertook active and ongoing steps to conceal the Defect because Samsung knew or should have known that it alone could alert consumers to the presence of the Defect, yet Samsung chose not to do so.

- 40 -

1132439.1

178.     The facts concealed and/or not disclosed by Samsung to Plaintiffs and the Proposed Class are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) a refrigerator.

179.     If the facts concealed and/or not disclosed by Samsung to Plaintiffs and the Proposed Class had been disclosed to Plaintiffs, the Plaintiffs would not have purchased their refrigerators or would only have purchased them for a reduced price.

180.     Samsung had a duty to disclose the fact that the Refrigeration Defect existed at the time of sale because consumers would reasonably expect disclosure of the Defect.

181.     Samsung had a duty to disclose the fact that the Refrigeration Defect existed after sale, but before the Defect manifested, because consumers would reasonably expect disclosure of the Defect.

182.     Samsung intentionally concealed and/or failed to disclose the problems with the Refrigerators for the purpose of inducing Plaintiffs and the Proposed Class to act thereon.

183.     Plaintiffs and the Proposed Class justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of the Refrigerators and/or replacement parts for the Refrigerators.

184.     As a direct and proximate cause of Samsung's misconduct, Plaintiffs and Proposed Class members have suffered actual damages in that they bought and own Refrigerators that contain an inherent defect and that have prematurely failed or are substantially certain to prematurely fail within and outside applicable warranty periods, they will be required to incur costs to repair and/or replace the defective components or the Refrigerators as a whole, and they will bear the cost of spoiled food and/or medicine.

- 41 -

185.     Samsung's conduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

186.     Samsung has acted with malice by engaging in conduct that was and is intended by Samsung to cause injury to the Plaintiffs and the Proposed Class.

187.     Samsung has committed fraud through its concealment of material facts known to Samsung with the intent to cause injury to the Plaintiffs and the Proposed Class.

188.     Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Samsung for actual and punitive damages for themselves and each member of the Proposed Class, plus attorneys' fees for the establishment of a common fund, interest, and cost.

## COUNT III

## BREACH OF IMPLIED WARRANTIES
### (On Behalf of the Proposed State Subclasses)

189.     The preceding paragraphs of this Complaint are incorporated by reference.  This claim alleges breaches of implied warranty under UCC § 2-314 as enacted, in whole or in substantial part, in the states that have abolished the defense of privity to this type of consumer lawsuit, specifically including Minnesota.

190.     Weske brings this claim individually and on behalf of Minnesota residents and the residents of other states which have adopted a version of UCC § 2-314 (or have caselaw interpreting the same) that will not allow Samsung to successfully assert the defense of privity.

191.     Frager brings a claim for tortious breach of implied warranty on behalf of herself and on behalf of Ohio residents and the residents of other states that recognize a claim for tortious breach of implied warranty.

192.     Plaintiffs and all Proposed Subclass members have been damaged by Samsung.

- 42 -

193.    At all times relevant hereto, Samsung was a seller of the Refrigerators.

194.    By placing the Refrigerators in the stream of commerce, Samsung impliedly warranted that the Refrigerators were of merchantable quality in that it would pass without objection in the trade, was fit for the ordinary purposes for which it was to be used, and conformed to the promises or affirmations of fact made on the container or label or as otherwise promoted, marketed and/or advertised.

195.    Samsung breached the implied warranty of merchantability at the time of sale because the Refrigerators would not pass without objection in the trade, were not fit for the ordinary purposes for which they were to be used, and did not conform to the implied promises or affirmations of fact made on the container or label or as otherwise promoted, marketed, and/or advertised.

196.    At all times relevant to this action, Samsung has breached its implied warranty of merchantability regarding the Refrigerators in violation of state implied warranty laws, including Minn.  Stat.  § 336.2-314.

197.    As a result of the breach of implied warranties, the Plaintiffs and the members of the State Subclasses they seek to represent have been directly and proximately damaged in the amount of the price they paid for the Refrigerators, and/or such incidental and consequential damages suffered thereby including, but not limited to spoiled food and/or medicine, in an aggregate amount to be proven at trial.

198.    Had the Defect that existed at the time of sale been known, the Refrigerators could not have been sold, or could not have been sold at the same price.

199.    Within a reasonable time after they knew or should have known of such breach, the Plaintiffs, on behalf of themselves and members of the State Subclasses they seek to

- 43 -

represent, placed Samsung on notice thereof.  Samsung has also been put on notice by the

Proposed Class as a whole by reason of its own knowledge of the Defect and, on information and

belief, by warranty claims of Proposed Class members.

200.    Any express limitation or negation of Samsung's implied warranties that the

Refrigerators were fit to perform their essential purpose, when such was not the case, would be

unreasonable and unconscionable and, accordingly, is unenforceable.

201.    Any limitation on the duration of the implied warranty to the duration of the

express warranty is unconscionable because Samsung knew, or was reckless in not knowing, of

the Refrigeration Defect, but did not disclose that Defect to Plaintiffs or members of the

Proposed State Subclasses.

## VIII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs on behalf of themselves and the Proposed Class, pray for

judgment against Samsung granting the following relief:

A.      An order certifying this case as a class action and appointing Plaintiffs to
represent the Class and Plaintiffs' counsel as Class counsel;

B.      Restitution and disgorgement of all amounts obtained by Samsung as a
result of its misconduct, together with interest thereon from the date of payment,
to the victims of such violations;

C.      All recoverable compensatory and other damages sustained by Plaintiffs
and the Proposed Class;

D.      Actual and/or statutory damages for injuries suffered by Plaintiffs and the
Proposed Class in the maximum amount permitted by applicable law;

E.      An order (1) requiring Samsung to immediately cease its wrongful
conduct as set forth above; (2) enjoining Samsung from continuing to conceal
material information and conduct business via the unlawful, unfair and deceptive
business acts and practices complained of herein; and (3) requiring Samsung to
refund to Plaintiffs and all members of the Proposed Class the funds necessary to
repair or replace the Refrigerators as appropriate;

F.      Statutory pre-judgment and post-judgment interest on the Class damages;

- 44 -

G.      Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

H.      Such other relief as the Court may deem just and proper.

## IX.    DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated:  September 23, 2013

**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**

By:      /s/ James E. Cecchi
          JAMES E.  CECCHI

James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ  07068
973.994.1700

Jonathan D. Selbin
Jason L.  Lichtman
Jeremy M. Glapion
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY  10013
212.355.9500

Kristen Law Sagafi
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94114
415.956.1000

- 45 -

J. Gordon Rudd, Jr.
David M.  Cialkowski
Adi Bharadwaj
**ZIMMERMAN REED, PLLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN  55402
612.341.0844

Christopher M. Placitella
Michael Coren
**COHEN PLACITELLA & ROTH PC**
2001 Market Street, Suite 2900
Philadelphia, PA  19103
215.567.3500

*Counsel for Plaintiffs*

## CERTIFICATION OF SERVICE

I hereby certify that, on September 23, 2013 copies of the forgoing Third Amended Class Action Complaint and supporting documents were served upon all counsel of record by electronic mail and notice of electronic filing.

I certify that the forgoing statements made by me are true.  I am aware that if any of the forgoing statements are willfully false, I am subject to punishment.

/s/ Lindsey H. Taylor
Lindsey H. Taylor