## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JEFF WESKE**, *et al.*,<br><br>             **Plaintiffs,**<br><br>     **v.**<br><br>**SAMSUNG ELECTRONICS, AMERICA, INC. & SAMSUNG ELECTRONICS, CO., LTD.**<br><br>             **Defendants.** | Civ. No. 2:10-4811 (WJM)<br><br><br>**OPINION** |

### WILLIAM J. MARTINI, U.S.D.J.:

The Plaintiffs in this putative class action purchased Samsung refrigerators that stopped cooling, allegedly because of a circuit board defect (the "Defect"). Plaintiffs allege that Samsung knew about the Defect but failed to disclose it. Defendants Samsung Electronics, America ("SEA") and Samsung Electronics, Co., Ltd ("SEC") (jointly "Samsung") now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Third Amended Complaint, which the Court refers to as the "TAC." There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Samsung's motion is **GRANTED IN PART**, and **DENIED IN PART**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    The Parties

There are two Defendants in this case: SEA and SEC. SEA is a New York corporation that manufactures and sells consumer appliances. TAC ¶ 73, ECF No. 100. SEC is a Korean corporation that conducts substantial business operations from SEA's New Jersey offices. *Id.* ¶ 74.

There are seven named Plaintiffs in this case: Jeff Weske, Jo Anna Frager, Daryl Myhre, Ralph Chermak, Jeff Polsean, Maureen Kean, and Beverly Burns. Weske is from

---

[1]    For purposes of the motion to dismiss, the Court accepts as true the allegations in the TAC.

Minnesota; Frager is from Ohio; Myhre is from Washington; Chermak and Polsean are from Illinois; and Keans and Burns are from California.[2]  TAC ¶¶ 13, 21, 30, 36, 47, 55.

### B.    The Refrigerators

The Plaintiffs purchased Samsung refrigerators (the "Refrigerators") in their home states.    *Id.*    Weske purchased a Samsung Side-by-Side Refrigerator (model # RS262BBWP) in December 2006; Frager purchased a Samsung French Door Refrigerator (model # RF266AASH) in February 2008; Myhre purchased a Samsung Side-by-Side Refrigerator (model # RS2630WW) in November 2007; Chermak purchased a Samsung Bottom Mount Refrigerator (model # RF265ABBP); Polsean purchased a Samsung Side-by-Side Refrigerator (model # RS267LBBP); and Kean purchased a Samsung French Door Refrigerator (model # RF266AERS).  *Id.* ¶¶ 13, 21, 30, 36, 47, 56.  The Refrigerators all came with a warranty.  *Id.* ¶ 98.  The warranty for each Refrigerator (the "Warranty") covers:

> manufacturing defects in materials and workmanship for a limited warranty period of:
> > One (1) Year Parts and Labor on Refrigerator
> > Five (5) Years Parts and Labor on Sealed Refrigeration System Only*
> > (*Compressor, evaporator, condenser, drier, connecting tubing)

Ex. A to Declaration of James O'Hara, ECF No. 107-2.  The Warranty also provides that:

> NO WARRANTIES WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, SHALL APPLY AFTER THE EXPRESS WARRANTY PERIODS STATED ABOVE . . . .

*Id.* (emphasis in original).

### C.    The Alleged Defect

Plaintiffs allege that their Refrigerators stopped cooling because of a circuit board defect.  TAC ¶ 6 ("While the Refrigeration Defect has caused hundreds of dollars of damage to each Plaintiff in parts, labor, and spoiled food, the Defect stems from a relatively

---

[2]      Kean and Burns are domestic partners, and they purchased their refrigerator together.  TAC ¶¶ 55-56.  Since their allegations are identical, the Court refers only to Kean in this opinion.

inexpensive part: a faulty circuit board inside the Refrigerators."); ¶ 84 ("Preliminary expert analysis has determined that the control board inside Samsung's Refrigerators was not designed and/or manufactured properly."); ¶ 172 ("Samsung knew or was reckless in not knowing at the time of sale that the Refrigerators contain a defective control board, which makes the Refrigerators substantially certain to fail well in advance of their anticipated useful life."); ¶ 173 ("Samsung knew or was reckless in not knowing prior to the time that the Defect manifested in any of Plaintiffs' Refrigerators that the Refrigerators contain a defective control board, which makes the Refrigerators substantially certain to fail well in advance of their anticipated useful life."). This Defect "caused the condenser. . . to develop an encasement of ice." *Id.* ¶ 85. When the condenser gets covered in ice, it stops dissipating heat, *id.* ¶ 86, and the Refrigerator stops cooling.

Depending on the Plaintiff, the loss of cooling occurred within months or years of purchase:

### Plaintiffs' Refrigerator Purchases

| Plaintiff | Time of Purchase | Time Defect Manifested | Time Samsung Notified |
|---|---|---|---|
| Jeff Weske | December 2006 | Spring 2009 | Fall 2009 |
| Jo Anna Frager | February 2008 | June 2010 | Never |
| Darryl Myhre | November 2007 | Before November 2008 | Before November 2008 |
| Ralph Chermak | September 2009 | March 2011 | March 2011 |
| Jeff Polsean | 2008 | October 2011 | October 2011 |
| Maureen Kean | August/September 2009 | November 2010 | December 2011 |

*Id.* ¶¶ 13-72.

In identifying a faulty circuit board as the source of the cooling problems, the TAC relies on the Declaration of Dr. Aris Silzars, who holds a Ph.D in electrical engineering. *Id.* ¶ 6 (citing Silzars Declaration ¶¶ 9-12, ECF No. 100-1). Dr. Silzars examined a Samsung refrigerator model that was not one of the models purchased by Plaintiffs. *Id.* ¶ 5. Dr. Silzars was informed by counsel that the refrigerator he examined would stop cooling because ice would form on the refrigerator's evaporation coils. *Id.* ¶ 7. Dr. Silzars was further informed that unplugging the refrigerator, allowing the ice to melt, and plugging the refrigerator back in would restore cooling function for a period of months. *Id.* ¶ 8. Dr. Silzars was further informed that the "owners of the refrigerators at issue here"—presumably Plaintiffs and putative class members—were able to restore cooling function with the same procedure. *Id.* ¶ 9.

Besides from examining a Samsung refrigerator, Dr. Silzars also reviewed service manuals for several Samsung refrigerators, including the model purchased by Myhre. *Id.*

¶ 4.  Dr. Silzars states that the service manuals describe a circuit board that controls the defrosting of the coils.  *Id.* ¶ 10.  Dr. Silzars explains that it has been "demonstrated repeatedly"—though he does not say how—that when the defrost cycle fails, and defrosting does not occur, the problem can be remedied by unplugging the unit, letting the ice melt, and plugging the unit back in.  *Id.* ¶ 10.  According to Dr. Silzars, unplugging the Refrigerators resets the circuit board, which allows the Refrigerators to operate normally again.  *Id.* ¶ 10.   Based on this remedial measure, Dr. Silzars concludes that the Refrigerators do not suffer from "mechanical issues such as a faulty compressor or low refrigerant level."  *Id.*

### D.      Samsung's Knowledge of the Alleged Defect

The TAC alleges that Samsung knew about the Defect but failed to disclose it.  For example, the TAC alleges that Mary Johnston called Samsung's customer service line in August 2006 to report cooling problems with her Refrigerator.  *Id.* ¶ 101.  The TAC further alleges that a Samsung authorized repair technician diagnosed a faulty control board in Johnston's Refrigerator and said that he would notify Samsung.  *Id.*  The TAC also alleges that a Samsung service person was dispatched to help Eugene Rata in August 2006.  *Id.*  The TAC alleges that the service person said that he would tell Samsung about frozen outer-exchange pipes in Rata's refrigerator.  *Id.*  Additionally, the TAC alleges that Starla Gilmore's Refrigerator stopped cooling because of ice-buildup.  *Id.* ¶ 102.  While the TAC claims that Gilmore had reported Refrigerator problems to Samsung in 2006 and/or 2007, it is unclear whether Gilmore reported problems that could be linked to the Defect.  *Id.*

The TAC further alleges that Samsung Authorized Service Centers were required to report in-warranty service to SEA.  *Id.* ¶ 99-100.  These reports, which allegedly put SEC on notice of the Defect, *id.* ¶ 104, included a "detailed description of the repair, the customer's complaint, the model and serial number of the product being serviced, and the type of product."  *Id.* ¶ 100.

Additionally, the TAC alleges that Samsung knew about the Defect based on a "sudden and disproportionate increase in certain part orders" for the Refrigerators.  *Id.* ¶ 107.  These parts orders were allegedly known to SEA and SEC.  *Id.*

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975);

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, under Federal Rule of Civil Procedure 8(a), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Additionally, Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b) essentially requires Plaintiffs to allege the who, what, when, where, and how elements to state a claim arising in fraud. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1423 (3d Cir. 1997). Where plaintiffs can demonstrate that specific information is in the exclusive control of the defendant, the Court relaxes the showing required under Rule 9(b). *See In re Craftmatic Secs. Litig.*, 890 F.2d 628, 645 (3d Cir. 1989). But Plaintiffs "must still allege facts suggesting fraudulent concealment." *Weske v. Samsung Elecs. Am., Inc.*, No. 10-4811, 2012 WL 833003, at *5 (D.N.J. Mar. 12, 2012) ("*Weske I*"). Furthermore, "[c]ollectivized allegations that generally allege fraud as against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed, do not satisfy Rule 9(b)." *See Hale v. Stryker Orthopaedics*, No. 8–337, 2009 WL 321579, at *6 (D.N.J. Feb. 9, 2009).

## III.   DISCUSSION

The TAC contains three counts. Count 1 asserts claims under the consumer fraud acts of each Plaintiff's home state (California, Illinois, Ohio, Minnesota, and Washington). Count 2 asserts a claim for fraudulent concealment/non-disclosure under New Jersey law. Count 3 asserts breach of implied warranty claims on behalf of Frager and Weske. Samsung moves to dismiss all counts.

**B.      Count 2: Fraudulent Concealment/Non-Disclosure**

In Count 2, Plaintiffs assert claims for fraudulent concealment/nondisclosure. Samsung moves to dismiss Count 2 on a host of grounds.  For present purposes, the Court need only address Samsung's argument that Plaintiffs have failed to plead reliance because they fail to allege that they received any communications from Samsung before they purchased their Refrigerators.  Rather than dispute Samsung's argument, Plaintiffs take the position that "there is little dispute" that they have pled reliance, and leave it at that.  Pls.' Br. at 16, ECF No. 111.  The Court finds that there is a substantial dispute about reliance. The Court sides with Samsung in that dispute.

As set forth in *Weske I*, the Court applies New Jersey law to Count 2.  *Weske I*, 2012 WL 833003, at *5.  Under New Jersey law, fraudulent concealment/non-disclosure has five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the other person; and (5) resulting damages." *Arcand v. Brother Intern. Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J. 2009) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)).  "The '[d]eliberate suppression of a material fact that should be disclosed' is viewed as 'equivalent to a material misrepresentation (i.e., an affirmative misrepresentation),' which will support a common law fraud action."  *Id.* (quoting *Winslow v. Corporate Express, Inc.*, 364 N.J. Super. 128, 139 (App. Div. 2003).

To prevail on a common law fraud claim under New Jersey law, a plaintiff must allege that he or she "actually received and considered the misstatement or omission, however indirectly uttered, before he or she completed the transaction."  *Kaufman v. i-State Corp.*, 165 N.J. 94, 108 (2000).  Here, Plaintiffs Weske, Frager, Chermak, Polsean, and Kean (everyone except for Myhre) make no allegation that they "actually received" communications from Samsung—or anyone else—before they purchased their Refrigerators.  Accordingly, their common law fraud claims fail.

Alone among the Plaintiffs, Myhre alleges that he researched Samsung's refrigerators online before he made his purchase.  TAC ¶ 30.  The TAC states that Myhre "purchased his Refrigerator in part because Samsung's refrigerators were represented as being reliable in these reviews."  *Id.*  Additionally, the TAC states that Myhre was told by a Best Buy salesperson that he was purchasing a "good refrigerator."  *Id.*  Noticeably absent from the TAC, however, is any allegation that Myhre received any communication from Samsung.

It is conceivable that Myhre could establish reliance under an indirect reliance theory.  "Indirect reliance allows a plaintiff to prove a fraud action when he or she heard a statement not from the party that defrauded him or her but from that party's agent or from someone to whom the party communicated the false statement with the intention that the victim hear it, rely on it, and act to his or her detriment."  *Kaufman*, 165 N.J. at 111.  Myhre

6

does not argue that indirect reliance applies here, and the Court will not make the argument for him.  Accordingly, the Court will **DISMISS** Count 2 **WITH PREJUDICE**.

**B.**     **Count 1: Consumer Fraud Acts**

Next, the Court turns to Count 1, which asserts violation of the consumer fraud acts of the Plaintiffs' home states (California, Illinois, Ohio, Minnesota, and Washington).

1.     Chermak and Polsean (Illinois law)

Chermak and Polsean assert claims under the Illinois Consumer Fraud Act ("ICFA").  In a prior opinion in this case, which the Court refers to as "*Weske II*," the Court addressed Samsung's motion to dismiss the Second Amended Complaint ("SAC").  The Court cited the Illinois Supreme Court's decision in *De Bouse v. Bayer* for the proposition that

> [a] plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause.

*Weske v. Samsung Elecs. Am. Inc.*, 934 F. Supp. 2d 698, 704 (D.N.J. 2013) (quoting *De Bouse v. Bayer*, 235 Ill.2d 544, 555 (2009)) ("*Weske II*").  Because Polsean and Chermak failed to plead in the SAC that they ever received a communication from Samsung, the Court dismissed their ICFA claims.  *Id.*  Like the SAC, the TAC makes no allegations that Polsean and Chermak ever received communications from Samsung before they purchased their Refrigerators.

Chermak and Polsean attempt to evade the reasoning of *Weske II* by pointing to two paragraphs in the TAC, paragraphs 160 and 167, which supposedly cure the deficiencies in the SAC.  The first paragraph, paragraph 160, states that Samsung made affirmative misrepresentations to "the Class Members."  TAC ¶ 160.  The second paragraph, paragraph 167, states that "the Plaintiffs and the members of the Subclasses relied (or should be presumed to have relied) upon Samsung's omissions in purchasing the refrigerators."  *Id.* ¶ 167.  But neither paragraph states that the specific Plaintiffs asserting ICFA claims, Polsean and Chermak, ever received a communication from Samsung.  Indeed, while the section of the TAC devoted exclusively to Myhre (TAC ¶¶ 30-35) describes the communications Myhre received before he purchased his Refrigerator,  the sections of the TAC devoted exclusively to Polsean (TAC ¶¶ 36-46) and Chermak (TAC ¶¶ 47-54) say nothing about any communications that Polsean and Chermak received before purchasing their Refrigerators.

Next, citing to pre-*De Bouse* caselaw from Illinois's Supreme Court, Chermak and Polsean argue that the Illinois Supreme Court has "found much weaker allegations [than the allegations in the TAC] to be sufficient to survive a motion to dismiss." Pls.' Br. at 30. But the operative pleading standards here are federal pleading standards, not state pleading standards. While some federal courts have denied motions to dismiss ICFA claims where plaintiffs suggested that they received communications from defendants, *see Stephens v. Gen. Nutrition Cos.*, No. 8-6926, 2009 WL 1437843, at *3 (N.D. Ill. May 21, 2009), other federal courts—including one in this District—have granted motions to dismiss ICFA claims where plaintiffs have failed to specifically plead that they received communications from defendants, *see, e.g.*, *Skeen v. BMW of North America, LLC*, No. 13-1531, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014); *Schwebe v. AGC Flat Glass North America, Inc.*, No. 12-9873, 2013 WL 2151551, at *2 (N.D. Ill. May 16, 2013); *Baker v. Home Depot USA, Inc.*, No. 11-6768, 2013 WL 271666, at *3 (N.D. Ill. Jan. 24, 2013). The Court is persuaded that the latter approach is correct. Accordingly, the Court will **DISMISS** Chermak and Polsean's ICFA claims **WITH PREJUDICE**.

### 2.  Kean (California law)

Kean asserts claims under the California Legal Remedies Act ("CLRA") and the California Unfair Competition Law ("UCL"). In *Weske II*, the Court addressed CLRA and UCL claims contained in the SAC. The Court began by recognizing that Kean's Refrigerator problems began after the Refrigerator's one-year warranty expired. *Weske II*, 934 F. Supp. 2d at 704. The Court explained that Kean could only recover for off-warranty problems if she pled a misrepresentation or omission concerning a safety issue. *Id.* at 704-05. Because the Court found that Kean had failed to plead a safety issue, the Court dismissed Kean's CLRA and UCL claims. *Id.* at 705.

Kean offers three reasons why the TAC has cured the defects in her UCL and CLRA claims. First, Kean argues that she has properly pled a generalized deceptive practice, as opposed to a fraud, and that she can recover for off-warranty problems under a generalized deceptive practice theory without regard to safety issues. Second, Kean argues that she has successfully pled that the Defect poses a safety problem. And third, Kean argues that the UCL and CLRA claims survive the motion to dismiss because the applicable warranty is a five-year warranty—not a one-year warranty—and because the Defect manifested within five years of purchase. None these arguments are persuasive.

The Court begins with Kean's first argument. Here, Kean argues that even if the Defect manifested itself when the Refrigerators were off-warranty, Kean has stated a UCL and CLRA claim because Kean is not alleging fraud, but rather a more generalized deceptive practice. However, Kean does not cite a single case stating that that the UCL and CLRA allow suits based on defects that (a) do not implicate safety, and (b) manifest themselves after a warranty expires. Furthermore, the Court's own research suggests that

there are no such cases.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) ("California federal courts have generally interpreted [California law] as holding that [a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.") (internal citations and quotations omitted).  Accordingly, Kean's first argument fails.

Next, Kean argues that she has stated a UCL and CLRA claim because the Defect implicates safety.  In *Weske II*, the Court did not expressly rule on the question, but the Court did express a reluctance to find that the Defect constituted a safety problem.  943 F. Supp. 2d at 705.  Kean argues that the Court should put off the question until summary judgment because they have met their burden to plead a "plausible prospect of a safety problem."  Pls.' Br. at 36 (citing *Grodzitsky v. Am. Honda Motor Co.*, No. 12-1142, 2013 WL 2631326, at *6 (C.D. Cal. June 12, 2013)).  The Court finds it proper to decide the question now.

As suggested in *Weske II*, the Court finds that there is no plausible prospect of a safety problem here.  The facts of this case differ markedly from cases in which California courts have recognized safety problems or the plausible prospect of a safety problem that would give rise to an off-warranty claim under the UCL and CLRA.  *See Grodzitsky v. Am. Honda Motor Co.*, No. 12-1142, 2013 WL 2631326, at *6 (C.D. Cal. June 12, 2013) (car window defect that could make it easier for passengers to eject from a car); *Ehrlich v. BMW of N. Am.*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) (windshield defect that could make it easier for passengers to eject from a car); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 970 n. 6 (N.D. Cal. 2008) (mechanical heart valve defect).  Accordingly, Kean's second argument fails.

Finally, Kean argues that regardless of whether the Defect posed a safety problem, the Defect is actionable under the UCL and CLRA because it manifested itself while Kean's Refrigerator was still under its five-year warranty.  Here, Kean points to paragraphs 85-86 of the TAC, which states that the Defect causes the condenser to ice over, thereby preventing it from dissipating heat and preventing the Refrigerator from cooling.  The argument that the Defect is a problem with the condenser (which is covered by the five-year warranty) is a complete reversal from Plaintiffs' prior argument that the applicable Warranty was a one-year warranty.  *See* Pls.' Memorandum in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint at 27 n.16, ECF No. 69 ("[T]he warranty in question is only one year."); Pls.' Memorandum in Opposition to Defendants' Motion to Dismiss to Complaint at 38-39, ECF No. 34 ("At bottom, Plaintiffs state a valid claim for breach of implied warranty under New Jersey law because they have properly alleged that Samsung's one year limitation of the implied warranty of merchantability was unconscionable."); *see also Weske II*, 934 F. Supp. 2d at 705 (applicable warranty is the one-year warranty).

More importantly, Kean's argument that the five-year warranty applies is inconsistent with the TAC, which clearly seeks to recover based on a breach of the one-year warranty.  As noted earlier, the Refrigerator Warranty protected against

> manufacturing defects in materials and workmanship for a limited warranty period of:
>> One (1) Year Parts and Labor on Refrigerator
>> Five (5) Years Parts and Labor on Sealed Refrigeration System Only*
>> (*Compressor, evaporator, condenser, drier, connecting tubing)

Ex. A to Declaration of James O'Hara.  The TAC specifically states that "[p]reliminary expert analysis has determined that the control board inside Samsung's Refrigerators was not designed and/or manufactured properly."  TAC ¶ 84; *see also id.* ¶¶ 6, 172, 173.  The TAC does not allege that the condenser is defective.  It alleges that a Defect in the control board causes the condenser to ice over.  *Id.* ¶ 85 ("This [the defective control board] causes the condenser . . . to develop an encasement of ice.").  Indeed, Dr. Silzars, concludes that while "the logic circuitry in the control module is causing the faulty operation," Silzars Declaration ¶ 11, "there are no mechanical issues such as a faulty compressor . . ."  *id* ¶ 10.  Accordingly, the one-year warranty governs.  Because Kean did not experience a loss of cooling within one year of purchase, Plaintiffs' third argument fails.  The Court will **DISMISS** Keans's UCL and CLRA claims **WITH PREJUDICE**.

> 4.    Myhre (Washington law) and Weske (Minnesota law)

Myhre asserts a claim under the Washington Consumer Protection Act ("WCPA"), RCW § 19.86.010, *et seq.*  Weske asserts claims under the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA"), Minn. Stat. § 325D.43, *et seq.* and the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. § 325F.68 *et seq.*  There is no dispute that Myhre and Weske's claims are subject to Rule 9(b).

Samsung makes four arguments in support of its motion to dismiss Myhre and Weske's claims.  First, Samsung argues that Myhre and Weske have failed to plead causation.  Second, Samsung argues that Myhre and Weske have failed to plead knowledge with the particularity required by Rule 9(b) and the plausibility required by Rule 8(a).  Third, Samsung argues that Myhre and Weske improperly rely on the Silzars Declaration, which fails to identify a defect in the Refrigerators.  Fourth, Samsung argues that Myhre and Weske have failed to satisfy Rule 9(b) requirements that plaintiffs plead the "who, what, where, when, why, and how" of the alleged fraud, and that plaintiffs distinguish between the various defendants.  The Court considers these arguments in turn.

a.   Causation

Samsung's argues that Myhre and Weske's claims fail for the same reason Chermak and Polsean's claims fail: because neither Myhre nor Weske received a communication from Samsung before making their purchases.  The Court is not persuaded.

"To prevail on a private CPA claim, a private plaintiff must show (1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered."  *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59, 73 (2007).  A plaintiff can establish causation in various ways, including by establishing reliance.  *Blough v. Shea Homes, Inc.*, No. 12-cv-1493, 2013 WL 6276450, at *8 (W.D. Wash. Dec. 4, 2013).   However, "Washington courts do not require a plaintiff to allege individual reliance on Defendants' conduct, *particularly where the non-disclosure of a material fact is alleged*."  *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1268 (W.D. Wash. 2009) (denying motion to dismiss WCPA claim) (emphasis added).  Also, in the class action context, Washington courts have recognized a presumption of reliance in omission-based WCPA claims where the plaintiff primarily alleges omissions.  *Grays Harbor Adventist Christian School v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007).

Here, Myhre pled that he received communications about his Refrigerator, but he fails to plead that he received any communications from Samsung.  While the Court has been unable to locate any Washington case that directly addresses whether Myhre can state a WCPA claim without pleading that he saw Samsung advertisements prior to his purchase, the Court finds a California decision construing the UCL and CLRA to be persuasive.  In *Clark v. LG Elecs.*, No. 13-485, 2013 WL 5816410, at *4 (S.D. Cal. Oct. 29, 2013), plaintiff asserted claims under the UCL and CLRA, arguing that a refrigerator manufacturer omitted to disclose the existence of defects in its refrigerator.  The defendant moved to dismiss, arguing that the plaintiff failed to plead reliance because he failed to allege that he received any communications from the defendant prior to purchase.  The plaintiff countered that reliance should be presumed when the omissions were material.  The *Clark* court ruled that the defendant's argument "defies common sense."  It went on to explain that

no refrigerator manufacturer would ever advertise its product to, in essence, consistently fail due to repeated clogging of the ice system, frequent problems with the cooling system necessitating control board rebooting, and periods of nonoperation.  Such advertising would be tantamount to an automobile manufacturer advertising its vehicle routinely stalls in freeway traffic, or a wireless telephone provider advertising a high rate of dropped calls. Such disclosures do not exist in the real world because they represent product or service failure.  Under the unusual circumstances pled in this case,

> reliance may be established by [the defendant's] alleged failure to disclose at the point of purchase the alleged defects which, if true, would seem to negate the inherent purpose of the product.

*Id.*  The Court finds that the WCPA does not, on the facts of this case, require Myhre to plead that he saw a communication from Samsung before he made his purchase.  This ruling does not, however, excuse Myhre from his ultimate burden to prove causation.

Next, the Court turns to Weske's claims under the MUDTPA and the MCFA.  These statutes require a plaintiff to demonstrate that a defendant "engaged in conduct prohibited by the statutes and that the plaintiff was damaged thereby."  *Ford Motor Credit Co. v. Majors*, A04-1468, 2005 WL 1021551, at *3 (Minn. Ct. App. May 3, 2005) (internal quotations and citations omitted).  "Although causation remains an element of the claim, a plaintiff need prove only a 'causal nexus' between his or her damages and the alleged wrongful conduct."  *Id.* (internal citation and quotation omitted).  Furthermore, "[t]he causal nexus may be established by direct or circumstantial evidence probative of the relationship between the claimed damages and the alleged wrongful conduct."  *Id.*  Though a causal nexus must ultimately be proven, most likely through reliance, "it is not necessary to plead individual consumer reliance on the defendant's wrongful conduct to state a claim for damages." *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13 (Minn. 2001); *see also Mooney v. Allianz Life Ins. Co. of N. Am.,* 6-545, 2009 WL 511572, at *2 (D. Minn. Feb. 26, 2009).  Here, the Court finds that Weske has set forth the required causal nexus by alleging that Samsung's failure to disclose the Defect played a causal role in his Refrigerator purchase.

### b.    Knowledge

Next, Samsung argues that Myhre's and Weske's allegation that Samsung knew about the Defect fails to satisfy the requirements of Rules 8(a) and 9(b).  The Court disagrees.  In a recent case, *Gray v. BMW of N. Am., LLC*, this Court held that plaintiffs sufficiently alleged knowledge of a defect based on the following:

> pre-release testing data, early consumer complaints about the defect to Defendant directly and its dealers, testing and investigations conducted in response to these complaints, replacement parts sales data, aggregate data about the convertible top defect from BMW's dealers, including high number of warranty reimbursement claims (contained in BMW's warranty database), and from other internal sources that are only accessible to BMW.

13-3417, 2014 WL 2208131, at *7 (D.N.J. May 28, 2014).  Here, Plaintiffs allege that Samsung knew about the Defect based on (1) complaints made to Samsung; (2) repairs by

authorized Samsung technicians who were required to provide information about their repairs to Samsung; (3) and a "sudden and disproportionate increase in certain part orders" for the Refrigerators.  TAC ¶¶ 99-107.  While these allegations are not as substantial as the allegations in *Gray*, the Court finds that they are sufficient to survive a motion to dismiss.

Additionally, Samsung argues that Myhre and Weske's consumer fraud act claims fail because neither Plaintiff has pled that Samsung knew with certainty that its Refrigerators had the Defect.  In support of its argument that Myhre and Weske need to plead knowledge with certainty, Samsung only cites cases construing the New Jersey Consumer Fraud Act.  *See* Pls.' Br. at 21.  Samsung does not cite a single case construing the statutes at issue here: the WCPA, the MUDTPA and the MCFA.  This is not surprising, as the Court's own research indicates that no such requirement exists under the the WCPA, the MUDTPA or the MCFA.

### c.    Silzars's Analysis

Next, Samsung argues the TAC fails to identify any defect in the Refrigerator.  Specifically, Samsung contends that the TAC's identification of a defect is deficient because it relies on an analysis from Dr. Silzars that is "wildly speculative and wanting in factual basis."  Samsung's Br. at 22, ECF No. 107-1.  It is true that Dr. Silzars did not examine a Refrigerator—or even a refrigerator model—owned by Plaintiffs.  It is true that Dr. Silzars did not review a manual for Weske's Refrigerator, although he apparently reviewed one for Myhre's Refrigerator.  And it is also true that the TAC does not explicitly allege that the other manuals Dr. Silzars reviewed were for Refrigerators that contained the same control board as the Refrigerators purchased by Myhre and Weske.  But Samsung fails to acknowledge that, based on his review and based on the information he received about ice in Samsung refrigerators that stopped cooling, Dr. Silzars concluded that "logic circuitry in the control module is causing the faulty operation."  Silzars Declaration ¶ 11.

This case is at the motion to dismiss stage.  For purposes of a motion to dismiss, Plaintiffs have sufficiently pled the existence of a control board defect.  Discovery will establish whether Plaintiffs' theory is right or wrong.

### d.    Additional Rule 9(b) Issues

Next, the Court considers Samsung's remaining arguments under Rule 9(b): that Plaintiffs have failed to plead with sufficient particularity and that Plaintiffs have failed to distinguish between the two Defendants, SEA and SEC.

First, Samsung argues that Plaintiffs failed to satisfy Rule 9(b) because they have failed to provide the requisite specificity as to the who, what, where, when, and how of the alleged fraud.  The Court is not persuaded.  Plaintiffs have alleged the "what" and "how" by alleging that Samsung concealed the Defect from potential customers.  *See Majdipour*

*v. Jaguar Land Rover North America LLC*, No. 12-7849, 2013 WL 5574626, at *15 (D.N.J. Oct. 9, 2013). They have also alleged the "when" by pleading when they purchased their Refrigerators. Plaintiffs have alleged the "who"—Samsung. *Id.* While Plaintiffs have provided little in the ways of allegations concerning which Samsung employees learned of the Defect, they have pled that Samsung employs a procedure whereby authorized service technicians report their calls to Samsung. This suggests that the individuals with alleged knowledge of the customer complaints—and perhaps the Defect—can be identified through discovery. Finally, while Plaintiffs say basically nothing about the "where" of the fraud given that they fail to identify specific advertisements or statements by Samsung, the Court finds that this failure to plead does not warrant dismissal. As the Court has previously explained, "plaintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim." *Feldman v. Mercedes–Benz USA, LLC*, No. 11-984, 2012 WL 6596830, at *10 (D.N.J. Dec.18, 2012).

Lastly, Samsung argues that Plaintiffs have failed to distinguish between the two Defendants, SEA and SEC. The Court finds that, for purposes of a motion to dismiss, Plaintiffs have sufficiently distinguished between the two Defendants. Paragraph 99 of the TAC alleges that Authorized Service Centers submitted warranty claims to SEA, and paragraph 104 specifies that this warranty repair data put SEA on notice. Paragraph 107 of the TAC imputes knowledge gleaned from replacement part orders to both SEA and SEC. Also, paragraphs 113 through 117 specify that complaints made directly to Samsung were made to SEA. Accordingly, the Court will **DENY** the motion to dismiss Myhre and Weske's consumer fraud act claims under Count 1.

### 5. Frager (Ohio law)

Finally, Frager asserts an individual claim, as well as a putative class action claim, under the Ohio Consumer Sales Practices Act ("OCSPA"). Samsung moves to dismiss Frager's individual claim, and it also moves to dismiss Frager's class action allegations. Samsung's arguments for dismissal of Frager's individual claim are identical to the arguments addressed in the previous section. Samsung's causation argument fails. While a plaintiff must plead proximate cause to state an OCSPA claim, "a showing of subjective reliance is probably not necessary to prove a violation of the OCSPA." *Butler v. Sterling, Inc.*, No. 98-3223, 2000 WL 353502, at *4 (6th Cir. Mar. 31, 2000); *see also Nessle v. Whirlpool Corp.*, 7-cv-3009, 2008 WL 2967703, at *3 (N.D. Ohio July 25, 2008) ("Plaintiff alleges Whirlpool failed to disclose the defect in the refrigerators, which resulted in injuries to her and other member of the Class. Therefore, Plaintiff has satisfied the minimal proximate cause requirement required to sustain her OSCPA claim at this time."). Accordingly, Samsung's causation argument fails with respect to Frager. Samsung's additional arguments fail for the reasons set forth in the previous section. Accordingly, the Court will **DENY** the motion to dismiss Frager's individual OCSPA claim.

Next, the Court turns to Frager's class allegations under OCSPA.  OCSPA permits class actions where a defendant "acted in the face of prior notice that its conduct was 'deceptive or unconscionable.'"  *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 6 (2006) (quoting O.R.C. § 1345.09(B)).  Notice can come in the form of a rule adopted by the Ohio Attorney General or a court decision made available for public inspection by the Ohio Attorney General.  *Id.* (citing O.R.C. 1345.05(A)(3) and 1345.05 (b)(2)).

In *Weske II*, the Court rejected Plaintiffs' argument that *Nessle v. Whirlpool Corp.*, No. 12-310, 2008 WL 2967703 (N.D. Ohio July 25, 2008) provided Defendants with the notice required to mount a class action challenge under OCSPA.  Plaintiffs now maintain that additional cases and statutes provided the required notice.

After the parties briefed the OCSPA notice issue, another judge in this District, the Honorable Kevin McNulty issued a published decision in an OCSPA case.  *Dzielak v. Whirlpool*, No. 12-89, --- F. Supp. 2d ----, 2014 WL 2758746, at *26 (D.N.J. June 16, 2014).  Judge McNulty reasoned that the notice issue was "better addressed" on a motion for class certification, and he declined to resolve the issue on a motion to dismiss. The Court agrees with Judge McNulty's approach.  Accordingly, the Court will **DENY** the motion to dismiss Frager's OCSPA class action claim.

## C.      Count 3: Breach of Implied Warranty

Count 3 is a breach of warranty claim.  Weske asserts a claim for breach of implied warranty under Minnesota law.  Frager asserts a claim for tortious breach of implied warranty under Ohio law.  Samsung moves to dismiss Weske and Frager's claims.

In their opposition brief—but not in the TAC—Plaintiffs assert an additional breach of warranty claim on behalf of Kean.  For the reasons set forth below, the Court will not allow Plaintiffs to effectively amend their pleading through an opposition brief.

### 1.      Weske

In Count III, Weske asserts a claim for breach of implied warranty.  First, Weske argues that his Refrigerator failed while it was still under warranty.  Second, Weske argues that he can recover under Minnesota law even if his Refrigerator failed when it was off-warranty.  Neither argument succeeds.

Weske's first argument fails.   As explained in in Section III.B.2, Weske's refrigerator failed after the applicable one-year warranty expired.

Weske's second argument also fails.  In his second argument, Weske takes the position that even if the applicable warranty is the one-year warranty, he can recover for off-warranty problems because the warranty was breached at the time of purchase.  In support of this argument, Weske appeals to Minnesota law—in spite of the fact that the Court has twice applied New Jersey law to Weske's breach of warranty claims.  *Weske II*,

934 F. Supp. 2d at 705; *Weske I*, 2012 WL 833003, at *6. Appealing to *Canon Techs, Inc. v. Sensus Metering Sys.*, 734 F. Supp. 753 (D. Minn. 2010), Weske argues that his claim survives under Minnesota law because Samsung's alleged breach—namely the installation of a defective control board—occurred at the time of purchase. But *Canon Techs.* is inapposite because it fails to address the particular limitation contained in the Warranty, which provides that "no warranties whether express or implied . . . shall apply after the express warranty periods . . . ." Ex. A. to Declaration of James O'Hara. Even crediting Weske's argument that the breach occurred at the time of purchase, it remains the case that Minnesota law allows parties to disclaim their implied warranties under certain conditions. Minn. Stat. § 336.2-314. Weske makes no argument that Samsung's implied warranty disclaimer was ineffective. As Samsung disclaimed its Warranty on the control board after the one-year point, and as the Defect manifested itself in Weske's Refrigerator after the one-year point, Weske's breach of implied warranty claim fails. *See Daigle v. Ford Motor Co.*, No. 9-3214, 2012 WL 3113854, at *3 (D. Minn. July 31, 2012) (recognizing that implied warranty claim based on latent defect would fail where implied warranty was limited to the time period covered by a written warranty and where a defect manifested itself outside of that time period). Accordingly, the Court will **DISMISS** Weske's breach of implied warranty claim **WITH PREJUDICE**.

2.     Frager

Frager asserts a claim for tortious breach of warranty under Ohio law. In *Weske II*, Samsung argued that Frager's warranty claim should be dismissed based on the economic loss doctrine. The Court rejected that argument. Samsung now argues that Frager's claim fails for an additional reason: Frager does not allege that she would have considered her Refrigerator to be unfit for its ordinary use since her Refrigerator outlasted its Warranty. The Court agrees.

To state a claim for tortious breach of implied warranty under Ohio law, a plaintiff must allege: "(1) a defect existed in a defendant's product that made it unfit for its ordinary, intended use; (2) the defect existed at the time the product left the defendant's possession; and (3) the defect was the proximate cause of the plaintiff's injuries." *In re Porsche Cars North America, Inc.*, 880 F. Supp. 2d 801, 867 (S.D. Ohio 2012).

Frager's Refrigerator failed within two years of purchase. Without citing to any caselaw, Frager maintains her Refrigerator was unfit for its ordinary, intended use because "the average life expectancy of a refrigerator is 14 years." Pls.' Br. at 43. Defendant counters by arguing that products are not unfit for their ordinary, intended use if they outlive their warranty. While Defendant does not cite any Ohio cases, it does cite cases from a variety of jurisdictions that support its argument. Samsung's Br. at 48 (citing *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (Cal. App. 2006) ("The only expectation buyers could have had about the F22 engine was that it would function

16

properly for the length of Honda's express warranty, and it did.")).  Moreover, a United States District Judge in the Southern District of Ohio noted recently in dictum that he was not "persuaded that Ohio courts would recognize an implied warranty in tort claim where there is a valid, enforceable written warranty."  *Risner v. Regal Marine Industries*, No. 11-191, --- F. Supp. 2d ----, 2014 WL 1270986, at *31 (S.D. Ohio Mar. 27, 2014).  Plaintiffs make no argument here that Samsung's Warranty was unenforceable.  Accordingly, the Court will **DISMISS** Frager's claim for tortious breach of warranty **WITH PREJUDICE**.

3.      Kean

Last, the Court turns to Kean.  Plaintiffs argue in their opposition brief that Kean has stated a claim for breach of implied warranty.  Plaintiffs are incorrect: Kean has not pled a breach of implied warranty claim in the TAC, and she is not permitted to assert such a claim through an opposition brief.  *Bell v. City of Philadelphia*, 275 Fed. Appx. 157, 161 (3d Cir. 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (internal quotations omitted).

Count III of the TAC is captioned "Breach of Implied Warranties: On Behalf of the Proposed State Subclasses."  Count III of the TAC identifies by name both Frager and Weske; it does not mention Kean.  *See* TAC ¶ 190 ("Weske brings this claim individually and on behalf of Minnesota residents and the residents of other states which have adopted a version of UCC § 2-314 (or have caselaw interpreting the same) that will not allow Samsung to successfully assert the defense of privity."); ¶ 191 ("Frager brings a claim for tortious breach of implied warranty on behalf of herself and on behalf of Ohio residents and the residents of other state that recognize a claim for tortious breach of implied warranty.").

Plaintiffs' also argue that the TAC asserts a breach of warranty claim on Kean's behalf because Count III is pled "on behalf of the proposed state subclasses," and because Kean is the named plaintiff for the putative California subclass.  If Plaintiffs were right, there would be no need to identify Frager and Weske by name in the body of Count III.

At no point in this case prior to their opposition brief have Plaintiffs asserted a breach of warranty claim on behalf of Kean.  Like the TAC, Count III of the SAC mentions only Frager and Weske.  SAC ¶¶ 162-163.  Accordingly, in *Weske II* the Court explained that "Count III asserts a claim for breach of warranty under Minnesota law and a claim for tortious breach of warranty under Ohio law."  *Weske II*, 943 F. Supp. 2d at 705.  Until now, Plaintiffs did not object to this description of Count II.  Plaintiffs argue that they had no need to address Kean's alleged warranty claim in *Weske II* because Samsung only moved to dismiss the warranty claims asserted by Frager and Weske.  This argument fails to persuade.  If Kean was actually asserting a breach of warranty claim all along, Plaintiffs would have addressed it in *Weske II*—without prompting from Samsung—just as they address it now without prompting from Samsung.

Because it is plain that Kean has not pled a breach of warranty claim, there is no breach of warranty claim to dismiss.  At an earlier stage of this litigation, Kean might have requested leave to amend her Complaint to add a breach of warranty claim.  She chose not to.  At this late stage, the Court will decline Plaintiffs' request to allow a Fourth Amended Complaint so that Kean may plead a breach of warranty.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend is properly denied based on undue delay); *see also White v. Taylor*, No. 10-5485, 2014 WL 1428545, at *3 (D.N.J. Apr. 14, 2014) (denying leave to amend based on undue delay where case pending for more than three years).

## IV.    CONCLUSION

For the reasons stated in this Opinion, Samsung's motion is **GRANTED IN PART** and **DENIED IN PART**.  Counts 1 and 3 are **DISMISSED WITH PREJUDICE**.  With respect to Count 2, Chermak, Polsean, Kean, and Burns's claims are **DISMISSED WITH PREJUDICE**, and Myhre, Weske, and Frager's claims survive.  An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 26, 2014**